1

JOHN BALAZS, Bar # 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone:     (916) 447-9299
Facsimile:     (916) 557-1118
Email: john@balazslaw.com

NING YE, NY Attorney Registration #4033585
Law Office of Ning Ye
3626A Union Street, Suite 3F
Flushing, NY 11354
Telephone:     (718) 308-6626
Facsimile:     (718) 228-5816
Email:          ynyale@aol.com
*Pro Hac Vice Application To Be Filed*

GREGORY S. SMITH, DC Bar #472802
Law Offices of Gregory S. Smith
913 East Capitol Street, S.E.
Washington, D.C. 20003
Telephone:     (202) 460-3381
Facsimile:     (877) 809-9113
Email: gregsmithlaw@verizon.net
*Pro Hac Vice Application To Be Filed*

Attorneys for Plaintiff
SUN GROUP U.S.A. HARMONY CITY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN GROUP U.S.A. HARMONY CITY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CRRC CORPORATION LTD., d/b/a China Railway Rolling Stock Corporation, <br><br> CRRC MA CORPORATION, <br><br> CRRC SIFANG AMERICA, INC., and <br><br> CHINA RAILWAY INTERNATIONAL U.S.A. COMPANY, LTD., <br><br> Defendants. | No. <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

NOW COMES Plaintiff SUN GROUP U.S.A. HARMONY CITY, INC., and for its

Complaint against Defendants CRRC CORPORATION LTD., d/b/a China Railway Rolling

Stock Corporation, CRRC MA CORPORATION, CRRC SIFANG AMERICA, INC., and CHINA RAILWAY INTERNATIONAL U.S.A. CO., LTD., in this case involving multi-million and multi-billion dollar rail car bids in the United States, alleges and states as follows:

### PARTIES

1.   Plaintiff Sun Group U.S.A. Harmony City, Inc. ("Sun Group USA"), is a California corporation, with its principal place of business located at 1523 O'Farrell Street, San Francisco, California 94115.

2.   Defendant CRRC Corporation Ltd., d/b/a China Railway Rolling Stock Corporation, is a foreign corporation formally organized in China, and more recently listed on both the Shanghai Stock Exchange and Hong Kong Stock Exchange, based upon approvals by the China Securities Regulatory Commission.  CRRC Corporation Ltd.'s principal place of business is located at No. 16 West 4th – Ring Mid Road, Haidian District, Beijing 100036 China.  CRRC Corporation Ltd. may be properly served by delivering a copy of the Summons and this Complaint on the registered agents for service of process of CRRC Corporation Ltd.'s "general managers" as defined under California law, including Defendants CRRC MA Corporation and CRRC Sifang America, Inc., each of which is a CRRC Corporation Ltd. domestic subsidiary, and CRRC ZELC North America, Inc., a CRRC Corporation Ltd. domestic subsidiary that is incorporated in Delaware and registered as a foreign corporation actively doing business in California.  Service on CRRC ZELC North America, Inc. may be properly performed by delivering a copy of the Summons and Complaint to CRRC ZELC North America, Inc.'s California registered agent for service of process, National Corporate Research, Ltd., located at 1325 J Street, Suite 1550, Sacramento, CA  95814 and/or 600 Wilshire Blvd., Suite 980, Los Angeles, CA  90017, and/or its Delaware registered agent for service of process, National Corporate Research, Ltd., 850 New Burton Road, Suite 201, Dover, DE  19904.

3.   Defendant CRRC MA Corporation ("CRRC MA") is a private, for-profit domestic corporation organized under the laws of the State of Massachusetts, with its principal place of business located at 100 Summer Street, Suite 1603, Boston, MA  02110.  CRRC MA is a direct or indirect international subsidiary of CRRC Corporation Ltd., and/or its predecessor entity, China CNR Corporation, Ltd. ("CNR").  CRRC MA was previously named CNR MA Corporation, until its name was formally changed on November 17, 2015.  CRRC MA may be properly served by delivering a copy of the Summons and Complaint to its registered agent for service of process, CT Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110.

4.   Defendant CRRC Sifang America, Inc. ("CRRC Sifang") is a private, for-profit domestic corporation organized under the laws of the State of Illinois, with its principal place of business located at 300 N. LaSalle, Ste. 2240, Chicago, IL  60654.  CRRC Sifang is a direct or indirect international subsidiary of CRRC Corporation Ltd., and was previously known as CSR America, Inc., until its name was formally changed on April 16, 2016.  CRRC Sifang may be properly served by delivering a copy of the Summons and Complaint to its registered agent for service of process, C T Corporation System, 208 So. LaSalle St., Suite 814, Chicago, IL  60604.

5.   Defendant China Railway International U.S.A. Company, Ltd. ("CRI") is a private, for-profit domestic limited-liability company now organized under the laws of the State of Delaware, with its principal executive offices located at 1221 Ave. of the Americas, 20th Fl., New York, NY 10020.  CRI is an international subsidiary of China Railway, a Chinese state-owned enterprise established under the management of the central government of the People's Republic of China.  CRI was established to extend China Railway's operations and influence into the territory of the United States of America ("U.S.").  CRI is actively registered with California's Secretary of State as a foreign corporation doing business in California.  CRI may be properly served by delivering a copy of the Summons and Complaint in this case to its California registered agent for service of

process, Corporation Service Company, d/b/a CSC - Lawyers Incorporating Service, 2710

Gateway Oaks Drive, Suite 150 N., Sacramento, CA 95833, and/or its Delaware registered agent

for service of process, Corporation Service Company, 2711 Centerville Rd., Suite 400,

Wilmington, DE 19808.

## JURISDICTION AND VENUE

6.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332,

based on diversity of citizenship.  This is a civil action in which the matter in controversy exceeds

the sum or value of $75,000 exclusive of interest and costs, between Plaintiff Sun Group USA, a

California Corporation, and each of the Defendants, each of which are either citizens or subjects

of a foreign state or a state other than California.

7.   This Court has personal jurisdiction over each of the Defendants, pursuant to California's

long-arm statute, Cal. Code Civ. Proc. § 410.10.  Specific jurisdiction exists, since the

Defendants' specific contacts and actions within this forum give rise to the instant claims.  In

addition, general jurisdiction also exists herein, based on the Defendants' activities in this forum

that are substantial, continuous and systematic.  Defendant CRI (as well as CRRC ZELC North

America, Inc.) have registered as foreign corporations doing business in the State of California,

and many activities in this case involve activities occurring or contemplated in California.

8.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of

the events or omissions giving rise to this claim occurred in this judicial district, and/or a

substantial part of property that is the subject of this action is situated in this judicial district,

and/or because the Defendants are corporations subject to the personal jurisdiction of this Court

with respect to this action at the time it is commenced.

## INTRADISTRICT ASSIGNMENT

9.   Pursuant to Civil L.R. 3-2(c), this case should be assigned to the San Francisco Division

of this Court because the action arises in San Francisco County.

**BACKGROUND AND FACTS**

10. Plaintiff Sun Group USA is a California corporation, owned by United States citizens, involved in cutting-edge engineering technologies and the development of zero- and low-emission and zero- and low-pollution energy, including high-speed rail, and all rolling stock technology development, consultation and manufacturing services.

11. Defendant CRRC Corporation Ltd., d/b/a China Railway Rolling Stock Corporation, is the largest supplier of rail transit equipment in the world, with 46 subsidiaries and 186,963 employees worldwide. CRRC Corporation Ltd.'s subsidiaries and related companies have included not only Defendants CRRC MA and CRRC Sifang, as well as CRRC ZELC, but also China CNR Corporation, Ltd., CNR MA Corporation, Tangshan Railway Vehicle Co., Ltd., and China CSR Corporation Ltd., whose roles are described more fully below. CRRC Corporation Ltd.'s main businesses include the design, manufacture, sale, lease and services for railway rolling stock, electric multiple unit (EMU) trains, and urban transit vehicles. CRRC Corporation Ltd. is involved in the construction and maintenance of China's state-owned railroad network and infrastructure, plus the manufacture and distribution of railroad transportation equipment such as locomotives and railway cars ("rolling stock"), including conventional and super-conducting magnetic high-speed fleets, for domestic and international sale. On information and belief, CRRC Corporation Ltd. is a part of China's multi-billion dollar railroad industry monopoly, with its own company profile specifically citing its manufactured products as "an important business card to show China's development achievements to the world."

12. In or about September 2010, Plaintiff Sun Group USA was engaged by Defendant CRRC Corporation Ltd., through its predecessor entities (hereinafter collectively referred to as "CRRC"), to provide full-scale, multi-faceted services, and to act as an exclusive agent promoting

China's rail services in the U.S.  Since at least 2010-11, CRRC engaged in extensive, ongoing efforts to entice, persuade, urge, and induce Sun Group USA to assist in promoting China's rail business, including in high-speed rail business projects inside the U.S.  During this time, CRRC extensively drew upon Sun Group USA's professional expertise and good will, and induced and benefitted (and continues to benefit) from the substantial financial, political and technical resources Sun Group USA advanced and invested on CRRC's behalf, following Sun Group USA's retention as CRRC's exclusive agent for China's efforts to sell and market its high-speed rail service inside the U.S.

13. On November 15, 2011, an "Exclusive Sales Representation Agreement" was signed between Sun Group USA and Tangshan Railway Vehicle Co., Ltd. ("TRC") – a subsidiary company of China CNR Corporation, Ltd. ("CNR"), which itself is a predecessor entity of CRRC Corporation Ltd.  This 2011 Agreement noted how already, "SUN GROUP is in the business of soliciting sales of TRC High Speed Train for California of United States of America customers," and then stated that "TRC is willing to use the services of SUN GROUP as an exclusive sales representative to solicit sale of the Project issued by California State."  TRC, in this 2011 contract, then reaffirmed on multiple occasions that it was agreeing that Sun Group USA would serve as the exclusive sales and marketing agent in the U.S., including on California's multi-billion dollar high-speed rail project:

- "TRC hereby appoints SUN GROUP as its exclusive sales representative in the United States of America for California State owned Projects."

- "TRC hereby grants to SUN GROUP the exclusive rights for sales, marketing, development and promotion of California State-owned Project of the United States of America ('Territory' defined in Section 3)."

- "TRC grants exclusive sales rights to SUN GROUP for the high speed trains of California High Speed Train Project.  Any TRC clients inquiries for this project in the United States of America shall be directed to SUN GROUP."

- "The territory of exclusive rights for this project granted by TRC to SUN group is the

1    United States of America."

2  While the Agreement provided that "SUN GROUP will at all times on its own cost (includes but

3  not limited to advertisement cost, communication cost, labor cost) make marketing policies

4  independently to promote the sale of TRC Products under this project through the territory," it

5  specified that, in return, and "[i]n consideration of its services, SUN GROUP shall receive a

6  commission principle to 6% of any direct order with the direct order by SUN GROUP and

7  registered by TRC under this project during the validity period of this Agreement," with future

8  commission adjustments also possible "to reach the requirement of the project budget."  This

9  2011 Agreement was "valid and effective for two (2) years," but thereafter "the agreement will be

10  renewed as required to be completed."  By the 2011 Agreement's own terms, it was also

11  expressly made "binding upon … successors in interest of each party."

12

13      14. After entering into this Exclusive Sales Representation Agreement in 2011, Sun Group

14  USA diligently performed its commitments as agreed, and successfully engaged in a series of

15  activities designed to benefit and promote CRRC's rail service and its high-speed rail bidding

16  prospects.  Sun Group USA invested extensive financial, political and personal resources and

17  capital, all in good faith performance, as contemplated under this 2011 Agreement.  In addition to

18  its substantial background work and technical support over the course of the ensuing years, Sun

19  Group USA's more public efforts after the signing of this contract included, but were not limited

20  to, the following activities:

21

22  • Preparation and submission of an initial Expression of Interest, followed by two
        formal presentations by Sun Group USA, with TRC then acknowledged by the
        California High Speed Rail Project Committee on September 13, 2011 as a company
        qualified to bid;

23  • Participation in an April 2012 cyber network team visit with U.S. Senator Dianne
        Feinstein to Beijing, China, where California's high-speed rail project was discussed,
        and personal delivery of letters of support from Senator Feinstein to high-ranking
        Chinese officials;

- Invited attendance at a White House meeting during September 2012 to discuss U.S. high-speed rail projects, where Sun Group USA leadership met with Committee members plus the U.S. Secretary of Transportation and Members of Congress, including U.S. Senators Dianne Feinstein and Barbara Boxer, and U.S. Speaker of the House Nancy Pelosi, to discuss TRC's interests;

- Involvement in December 2012's Big City Investment Forum chaired by U.S. Ambassador Gary Locke in China, attended by California and San Francisco government officials and the San Francisco Bay Area High-Speed Rail China Investment Group, and leading a delegation's visit to TRC itself on behalf of California's and San Francisco's governments;

- Development of a Confidential California High-Speed Rail Strategy Plan, on or about December 29, 2012, designed to overcome potential concerns that could arise after a 2011 rail accident in China, and laying out methods to successfully advance China's U.S. rail bids;

- Meeting with Oakland's mayor on January 3, 2013 to discuss advanced technology development and promotion of high-speed rail service, and presentation of China high-speed train models to Oakland's mayor and a variety of California government officials;

- Arranging and accompanying California Governor Jerry Brown's visit to China during his publicized April 2013 ride on the high-speed train from Beijing to Shanghai, after which Gov. Brown spoke highly of China's high-speed rail technology and service, and later indicated to Chinese Premier Li Keqiang a willingness to cooperate with China on California's high-speed rail project;

- California Gov. Brown's selection in June 2013 of Sun Group USA President Jonathan Sun to serve on the California-China Advisory Group, designed to promote and deepen California's business relationships with China, shortly after Gov. Brown's meeting with Chinese President Xi Jinping in southern California.

- Coordinating a Shandong Province delegation's visit to San Francisco in June 2013, to set up a science and technology park in support of the California High-Speed Rail Project; and

- Meeting with former Mexican President Vicente Fox in September 2013, to discuss how he might be a helpful resource in Sun Group USA's efforts to promote China's high-speed rail.

Plaintiff's achievements received appreciation and acclaim from its contracting partner, TRC.

15. On October 18, 2013, the parties' earlier agreement was supplemented with another contract ("Cooperation Agreement"), again entered into between Sun Group USA and TRC. This 2013 Cooperation Agreement again noted how "SUN GROUP is in the business of soliciting

sales of TRC High Speed Train for California of United States of America customers," and reiterated that "TRC is willing to use the services of SUN GROUP as an exclusive sales representative to solicit sale of the Project issued by California State," then confirming again that "TRC hereby appoints SUN GROUP as its exclusive sales representative in the United States of America for California State owned Projects to promote the sales of and to solicit orders for TRC's Products."  The Cooperation Agreement also specified more broadly that "[t]he territory of exclusive rights for this project granted by TRC to SUN group is the United States of America."

16. Sun Group USA then followed up with preparation and submission of an additional Expression of Interest in the California project, and on November 7, 2013, the California High Speed Rail Authority acknowledged receipt and advised Sun Group USA of when it expected to release a Request for Proposal for the Project.  Sun Group USA also performed additional work in support of the project, expending resources not only behind the scenes with technical support and efforts to secure project financing, but also through public relations activities that included, among other particulars, working with Tsinghua University, which in December 2013 wrote to California Gov. Jerry Brown, noting its willingness to work with Chinese rail enterprises and to support Sun Group USA, and later, when Tsinghua University, following additional meetings, further agreed to provide American students with scholarship and course opportunities on high-speed train manufacturing, management and services.

17. On March 17, 2014, a separate, new company, CNR MA, was incorporated as a domestic, for-profit corporation in the State of Massachusetts, with its principal place of business in Boston, as a joint venture of CNR and China Changchun Railway Vehicles.  As previously noted, CNR at the time was also the parent company of TRC.

18. In late April 2014, during a meeting in New York with Sun Group USA, CNR executive

Yu Wenping specifically asked Sun Group USA to assist CNR as a partner in advancing the bidding efforts of CNR MA's joint venture in Massachusetts.

19. On April 26, 2014, a new Cooperation Agreement was signed, between Sun Group USA and CNR itself, which confirmed that Sun Group USA and CNR's "sub company tangshan railway vehicle co., LTD has a good basis of cooperation in California high-speed rail projects," since at least 2011.  This 2014 Cooperation Agreement, signed on CNR's behalf by Yu Wenping, noted how "Sun Group USA as a long term business in the United States, in the past two years, through their own efforts" had been able to "get [the] California senior governor's high recognition," and CNR was then described as China's "rail transportation equipment manufacturing leading enterprise[]," with products "very compatible for California high-speed rail projects."  As a result, and "[i]n view of the above cooperation basis and the conditions of the complementary advantages," and "[i]n order to ensure the cooperation between Sun Group USA and CNR in participating [in] the California high-speed rail project to win the project smoothly, according to the relevant provisions of the state," the parties codified that they had "reached the following consensus":

- First, prior to the bidding fee, all fees would belong to each party, but thereafter Sun Group USA would "get 6% to 10% of the contract price."

- Second, while it was agreed that the "scope of cooperation" applied only to the California high-speed rail, the parties also codified that "Sun Group USA already worked with Mexican and Canadian governments and related departments for many years, and CNR would like to broade[n] its market in North America," and in light of this, "the two sides agreed [to] working together in United States, Mexico and Canada as exclusive strategic partners," and to "combine both parties resource[s] and play a better role."

- Third, in order "to ensure" that the project would "meet the needs of 'buy American,' the two parties agreed after winning the bidding, CNR will build its factor[y] in California," with Sun Group USA placed "in charge of all the communication with all the government an[d] PR, such as finding factory location in California."

- Fourth, this Cooperation Agreement was to remain in effect until "three years after the project started," and after those three years if the project was "postponed to end if it is still in process."

Unlike the previous agreements that Sun Group USA had entered into with TRC, the 2014 Cooperation Agreement did not specify any choice of law, and notably, contained no arbitration requirement.  This 2014 Cooperation Agreement was executed by Sun Group USA and CNR representatives in New York, New York.  The contract specified that it could "be revised if both parties agree."

20. Shortly after this 2014 Cooperation Agreement was signed, codifying CNR and Sun Group USA's agreement to become "exclusive strategic partners," CNR on May 11-12, 2014 sent a delegation to California, at the invitation of Sun Group USA.  CNR's delegation included not only Yu Weiping, but also CNR's President, Mr. Xi Guohua.  In a speech given during this visit, at an event organized by Sun Group USA with California government officials, Mr. Xi noted:

> Ladies and gentlemen, friends of the "Friends of Harmony," my thanks to the Sun Group for their participation, help and joining us in the United States to participate in the California high-speed rail bidding.  We will plan to set up factories in the San Francisco area to support localization and provide employment opportunities.  145 years ago, China exported coolies, laborers, today we will export technology and capital.

> Thank you to the friends from Federal government, the state government, city government, working together with the Sun Group to continue to support our participation in the bidding process.  We will also provide all of our products in the United States, including different speed products, which shall be prioritized in California….

21. Later, on May 26, 2014, in response to a later operations report from Sun Group USA, Mr. Xi noted that "CNR will make all efforts to fully support you to engage in the project for the next step….  I have directed Chief Engineer Mr. Lu to support your work.  Thanks, Xi Guohua."

22. Also in May 2014, CNR officials met with Sun Group USA leaders in San Francisco, California to discuss cooperation, to participate in meetings that Sun Group USA had arranged with federal, state and local government officials, and to visit a future manufacturing site. Throughout July-October 2014, CNR and Sun Group USA officials then continued to meet and

work together as partners on a planned bid arising from California's anticipated Request for Proposal.

23. Sun Group USA also continued to assist CNR with technical and other work as promised, related to California's anticipated $68-$72 billion high-speed rail project. On October 22, 2014 Sun Group USA submitted a final Expression of Interest for California's $68-$72 billion high-speed rail project, on behalf of CNR.

24. A few days before Sun Group USA made this California submission on CNR's behalf, however, it was publicly announced that the Massachusetts Department of Transportation had awarded a $566.6 million contract to CNR MA, a CNR subsidiary, to provide trains to the Massachusetts Bay Transit Authority. This Massachusetts award was China's first major rail contract in North America.

25. Shortly after Sun Group USA's submission of CNR's final California Expression of Interest on October 22, 2014, Sun Group USA also began learning through press reports that a competing submission had been made by another Chinese rail company, China CSR Corporation, Ltd. ("CSR"). Press speculation suggested that CSR, and not CNR, might now be getting advanced as China's primary bid for California's $68-72 billion high-speed rail project.

26. On October 30, 2014, Sun Group USA received the California authorities' confirmation that Sun Group USA's submission "was reviewed and met the requirements," and that it would be "invited to bid when the Request for Proposal is released." California thus accredited the Sun Group USA team's competence to submit bidding proposals on behalf of, and for the benefit of, CNR, now approved by California as one of only eight officially-recognized potential bidders. That night, Sun Group USA officials joined a reception with the China High Speed Rail Business Delegation and representatives of the San Francisco Bay Area Council and California High Speed Rail Authority.

27. Despite Sun Group USA's good-faith continuing efforts to promote China's rail service in the U.S., however, CNR's reciprocal cooperation dried up.  When follow-up communications failed to elicit a needed reply, Sun Group USA President Jonathan Sun on November 9, 2014 personally traveled to China with a team to deliver a set of important documents to CNR officials, urging CNR to perform its obligations under the 2014 Cooperation Agreement, so that CNR's required bid submissions could be perfected and advanced.

28. By December 30, 2014, the underlying reason for CNR's lack of cooperation with Sun Group USA became evident.  On that date, it was publicly announced that CNR and CSR – which had once been parts of a single company until their split in 2000 – would now be merged again, into a single company, CRRC Corporation, Ltd. – a conglomerate valued at $26 billion, which would own approximately 90% of all rolling stock in China's rail network, overseen and under the control of the State Council of the People's Republic of China.  All existing contracts of CNR and CSR, nationally and internationally, were announced as being transferred into CRRC, which meant that CRRC inherited and assumed not only the rights but also the legal obligations of CNR, including all its duties owed to Sun Group USA under the 2014 Cooperation Agreement.

29. Sun Group USA continued to perform its side of the contract.  In April 2015, Sun Group USA's expenditures of time and resources in support of this effort achieved a remarkable, notable success:  After years of Sun Group USA's efforts, the City Council of Vallejo, California unanimously passed a bill to allocate 250 acres of land from an abandoned naval base, at a nominal price, for the purpose of supporting an industrial plant that CRRC could use for high-speed rail manufacturing, using available zero-emission technologies such as solar and air power, thus potentially creating thousands of jobs in California and also facilitating CRRC's ability to comply with "buy American" requirements.

30. During this period of time, however, CRRC recruited several Sun Group USA personnel,

and hired away at least two key leaders working for Sun Group USA.  On information and belief, CRRC also thereby obtained Sun Group USA's internal strategy plans and other confidential and proprietary information.

31. In September 2015, CRRC broke ground on a new rail car manufacturing plant in Springfield, Massachusetts, with CRRC Vice President Yu Weiping describing how CRRC planned to double its overseas contracted sales to $15 billion in the next five years, and calling the U.S. "a huge market."  Yu Weiping also announced that this new facility in Springfield would double as CRRC's U.S. headquarters for seeking additional U.S. business.  CNR MA Corporation, Ltd. eventually changed its corporate name to CRRC MA Corporation Ltd.

32. On March 9, 2016, CRRC was awarded a second U.S. contract, when the City of Chicago, Illinois agreed to buy up to 846 new Chicago Transit Authority metro cars, for $1.3 billion.  This bid too had been submitted and advanced by CRRC through a predecessor entity, CSR Sifang America JV.  On information and belief, CRRC's Chicago contract is now owned by Defendant CRRC Sifang.  CRRC advanced this Chicago bid at a time after it became subject to the 2014 Cooperation Agreement.

33. CRRC thus has entered into various contracts using several business partners, including its own newly-established subsidiary companies established for that purpose – without adequate notice to, consent or authorization from Sun Group USA – in order to bid on rail systems in the U.S., in Massachusetts and Illinois, plus other locations, notwithstanding the 2014 Cooperation Agreement.

34. Despite these activities, CRRC privately continued to reassure Sun Group USA of its plans to keep working with Sun Group USA after all, at least in California, in an attempt to lull Sun Group USA into believing the parties' relationship and contract might continue to be honored, and to induce Sun Group USA to continue promoting and supporting CRRC's efforts to

win rail business in the U.S.  During an official visit to the U.S. in July 2016, for example, Xi Guohua, now CRRC's President, personally appeared and spoke at a California event organized by Sun Group USA, and met with invited senior government officials, publicly commending Sun Group USA for its help in promoting China's high-speed rail and rolling stock business, and calling Sun Group USA CRRC's "partner."

35. Behind the scenes, however, CRRC increasingly stopped cooperating as pledged under the 2014 Cooperation Agreement.  After New York City announced a $27 billion Metropolitan Transportation Authority (MTA) five-year capital program on July 18, 2016, Sun Group USA in the months that followed sought to advance the process of submitting a bid on CRRC's behalf, but received insufficient participation and support.  On multiple occasions, Sun Group USA reached out to CRRC, sending New York's bid requirements.  With bid deadlines approaching, Sun Group USA contacted CRRC directly.

36. On September 27, 2016, CRRC's representative responded to this inquiry from Sun Group USA by removing any remaining doubts about CRRC's decision to fully breach the 2014 Cooperation Agreement.  After first noting that "Mr. Xi [CRRC's President] thank you for your company's support," CRRC Director Zhang Xin replied to Sun Group USA's request for cooperation in advancing CRRC's New York rail project bid by revealing that "we have identified and determined a project partner, and we will work with that partner to participate in that project.  So it is very regrettable that we can not cooperate with you in this project."  CRRC's response then went further, revealing for the first time clearly that CRRC also planned to fully cut out Sun Group USA from all California projects as well:  "The California High Speed Rail project mentioned in Article 4 is now progressing steadily under the unified leadership of the China Railway company, and the tender for the supply of vehicles is also carried out under the unified coordination of the China Railway company's branch international company and the CR

USA company.  So we regret that we cannot cooperate with you in this project."  CRRC's message then concluded as follows:

> Thank you for your valuable information, since we have conducted a long period of pre-tracking and have already done a lot of work and investment with our partners.  So very sorry, cannot work with you, please understand….

The message offered up only a vague, unspecified prospect that perhaps, because "[t]he US rail market is very large, I believe we will have the opportunity to cooperate [in the future].  Thank you!"

37. The China Railway, or "CR," mentioned in CRRC's September 27, 2016 email is a Chinese state-owned enterprise established under the management of the central government of the People's Republic of China.  The "CR USA company" referenced is China Railway International U.S.A., Co., Ltd, or "CRI."  Shortly after its formation on August 13, 2015 as a domestic for-profit corporation in the State of Nevada, CRI had entered into a joint venture agreement with XpressWest Media LLC, a subsidiary of the Marnell Companies LLC – a conglomerate well known to be actively engaged in the casino and gambling business – to pursue high-speed railway service between Las Vegas, NV and Los Angeles, CA, without the consent, authorization or even knowledge of Sun Group USA.  The stated value of this project was estimated at between $5 billion and $12.7 billion, although XpressWest later dropped out.  On April 13, 2016, Defendant CRI was then incorporated in the State of Delaware, and remains active; on May 6, 2016, CRI also separately registered with California's Secretary of State as a foreign corporation seeking to do business in California, with CRI describing its "Type of Business" as "Infrastructure development and any other business activities permitted by law."

38. On March 16, 2016, CRRC ZELC North America, Inc. had also been registered as a domestic for-profit corporation in the State of Delaware.   On June 24, 2016, CRRC ZELC North America, Inc. further registered in California as a foreign corporation engaged in the business of

construction and engineering management and consulting.  CRRC Zhuzhou Electric Locomotive Co., Ltd., one of CRRC's largest subsidiaries based in Zhuzhou/Haidan Province, is known to have produced over 8000 locomotives and is actively engaged in procurement and bid efforts internationally, including various rolling stock bids in Europe.

39. Defendant CRRC Corporation Ltd., through its own actions and the actions of the other Defendants named herein, has continued and is still continuing to pursue its goal of expansion into the U.S., in defiance of Sun Group USA's contractual and other rights and expectations. Defendants have established liaison offices and/or engaged in significant business operations in numerous areas of the U.S., including at least Massachusetts, Chicago, New York, and California, while cutting Sun Group USA out of its activities and all contingent rewards now that those benefits are approaching fruition.

40. CRRC has also pursued other rail rolling stock contracts from other jurisdictions within the U.S., in violation the 2014 Cooperation Agreement and its duties owed to Sun Group USA. In March 2017, for example, CRRC received a $137.5 million contract from the City of Philadelphia, to provide rail rolling stock (45 rail cars) to the Southeastern Pennsylvania Transportation Authority, or SEPTA.  Sun Group USA was never consulted, and was excluded from, CRRC's bidding process with SEPTA.

41. In addition, CRRC and its subsidiaries have pursued rail contracts from jurisdictions even within California itself, in clear violation of the 2014 Cooperation Agreement and duties owed to Sun Group USA.  On December 22, 2016, for example, the Los Angeles County Metropolitan Transit Authority awarded CRRC a $178 million contract to deliver rail cars to be built at CRRC MA's manufacturing plant in Springfield, Massachusetts.  On March 27, 2017, it was also announced that CRRC received a contract to provide up to 64 subway cars to Los Angeles, at a cost as high as $647 million.  CRRC also appears to have submitted another bid to sell rolling

stock to the City of San Francisco.  Sun Group USA has been excluded from all of CRRC's recent bidding efforts in California.

42. Through its actions, the Defendants have also undermined Sun Group USA's credibility and relationships with government officials, materially damaged Sun Group USA's business reputation, and interfered with Sun Group USA's right to participate in the mutual benefits previously agreed, by directly interacting with and pursuing bids and regulatory approvals separately and on their own in various regions, and cutting out Sun Group USA from planning, coordination and participation, all without any intention to reward or compensate Sun Group USA for its many years of support and services, thus knowingly and maliciously interfering with Sun Group USA's contract and other rights.

43. Upon information and belief, CRRC has also engaged in similar tactics in other countries – contracting with local partners to assist in obtaining regulatory approvals with promises of payouts at the end in the form of a percentage of the deal once closed, but then withdrawing from the arrangement once that bidding process approaches closure, while also warning its partners – just as Sun Group USA was warned here – that any complaint will be met with retaliation in the form of forever poisoning any participation in future Chinese rail deals.  CRRC, in truth, never had any real intention of paying Sun Group USA 6-10% of any U.S. rail bid secured, as the contract contemplated.  Based on CRRC's activities in this case, and its apparent pattern and practice as revealed elsewhere, Plaintiff Sun Group USA hereby alleges bad faith, intentional misconduct and fraud in the inducement.

44. Efforts to resolve this matter amicably with CRRC have proven fruitless.  Despite its years of sacrifice and service spent in hiring technical and other staff, in expending political capital with senior government officials at all levels, in monitoring and complying with various bid protocols, in creating and organizing events, and in spending vast amounts to cover costs and

expenses, plus thousands of hours of labor, all in an effort to promote CRRC and China's rail rolling stock generally, particularly in California, Sun Group USA to date has been paid nothing at all, and has received no offer of fair compensation from CRRC whatsoever.  Accordingly, this lawsuit is now being filed.

## CLAIMS FOR RELIEF

### Count One – Breach of Contract
**(Against Defendant CRRC Corporation Ltd.)**

45. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

46. Plaintiff Sun Group USA entered into a binding contract, specifically the 2014 Cooperation Agreement with CRRC Corporation Ltd.'s predecessor-in-interest CNR, in which the contracting parties agreed to work together in the U.S., Mexico and Canada as "exclusive strategic partners" – an understanding that continued and expanded the relationship that had already existed for several years between Sun Group USA and TRC, a subsidiary of CNR – in return for Sun Group USA receiving a percentage commission on the price of any U.S. rail contract secured.

47. CNR thereafter was merged into CRRC Corporation Ltd., which thereby inherited the legal rights and obligations of CNR, including those set forth in the 2014 Cooperation Agreement.

48. Plaintiff Sun Group USA performed its obligations as required under the 2014 Cooperation Agreement.

49. Despite Sun Group USA's performance, Defendant CRRC Corporation Ltd. has failed to perform its obligations as required under that same contract, and has also taken affirmative actions in direct violation of its obligations owed under the 2014 Cooperation Agreement, in material breach of said contract.  CRRC Corporation Ltd.'s actions in this regard have included,

but are not limited to, pursuing and obtaining various rail contracts with municipalities and other government entities inside the U.S., without Sun Group USA's consent or participation.

50. CRRC Corporation Ltd.'s contracts that it has secured without Sun Group USA's participation have included a $566.6 million contract with the Massachusetts Transit Authority, a $1.3 billion contract with the Chicago Transit Authority, a $137.5 million contract with Philadelphia's SEPTA, and a $647 million contract with Los Angeles County Metropolitan Transit Authority.  Despite the fact that these massive rail contracts in the U.S. were awarded during the three-year initial term of the 2014 Cooperation Agreement, CRRC Corporation Ltd. has not paid Sun Group USA 6% of this contract price as agreed, or any commission at all, and instead has refused to pay Sun Group USA anything.

51. CRRC also continues to seek additional multi-billion dollar rail contracts inside the U.S., while cutting out Sun Group USA from any cooperation or participation in the ongoing bids that it is presently pursuing – including a $27 billion project for next-generation New York subway trains, and California's $68-$72 billion high-speed rail project bidding.

52. As a direct and proximate cause of Defendant CRRC Corporation Ltd.'s breach of contract, Plaintiff Sun Group USA has incurred substantial losses and damages, including lost commissions and future commissions, lost opportunities to participate in and secure additional rail contracts in the U.S. from which it could receive commissions, substantial damage to Plaintiff's credibility in dealing with government contracting authorities who have been told by Defendants that Sun Group USA is no longer a partner of China's rail bids, and attendant loss of good will and damage to Sun Group USA's business reputation generally.

53. Plaintiff does not assert herein any claim for breach of contract under either of its 2011 or 2013 agreements, and limits this claim to breach of contract under the 2014 Cooperation Agreement only.

**Wherefore,** judgment should be entered against Defendant CRRC Corporation Ltd. and in favor of Plaintiff Sun Group USA for breach of contract, with relief awarded as set forth below.

**Count Two – Fraud in the Inducement**
**(Against Defendant CRRC Corporation Ltd.)**

54. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

55. At the time when the 2014 Cooperation Agreement was executed, and at the time when CRRC Corporation Ltd.'s predecessor, CNR, was securing contractual benefits, including substantial up-front seed investments by Sun Group USA in return for a promise to pay Sun Group USA a commission of 6-10% on future high-speed rail and other contracts jointly secured in the U.S., CRRC/CNR knew that it had no intention of ever paying Sun Group USA any such commission, and in fact was making this commitment in bad faith, and with fraudulent intent to induce Sun Group USA to enter into this contract and continue to supply its benefits, as it had done since 2010-11, to promote China's rail service in the U.S.

56. CRRC's historical actions in dealing with other similarly-situated contractual partners in other countries also appear, on information and belief, to evince a pattern and practice of collecting the benefits and then abandoning its partners as bidding completion nears, plus threatened retaliation in the form of blacklisting threats to its partners on future Chinese high-speed rail work if they complain.

57. CRRC's representations in promising to pay such commissions, and its failure to disclose its true intentions, pattern and practice, represent intentional and material false statements and omissions, which reasonably had the effect of inducing Sun Group USA to enter into the 2014 Cooperation Agreement, and to perform and expend substantial resources to benefit CRRC under the terms of that Agreement.

58. As a direct and proximate cause of Defendant CRRC's fraudulent inducement, Plaintiff

Sun Group USA entered into the 2014 Cooperation Agreement and performed thereunder, causing it to incur losses and damages, including lost commissions and future commissions, lost opportunities to participate in and secure other rail contracts in the U.S. from which it could receive commissions, substantial damage to Plaintiff's credibility in dealing with government contracting authorities who have been told by Defendants that Sun Group USA is not a partner of China's rail service, and attendant loss of good will and damage to Sun Group USA's business reputation generally.

**Wherefore,** judgment should be entered against Defendant CRRC Corporation Ltd. and in favor of Plaintiff Sun Group USA for fraud in the inducement, with relief awarded as set forth below.

### Count Three – Implied Contract, Quasi-Contract and Ratification
**(Against Defendant CRRC Corporation Ltd.)**

59. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though set forth fully herein.

60. Plaintiff Sun Group USA furnished specific services as required to TRC, CNR and their successor entities, including to CRRC Corporation Ltd., with a reasonable expectation of being compensated if CNR and its successor entities, including CRRC Corporation Ltd., breached or failed to meet these expectations.

61. CRRC and its predecessor entities, including CNR and TRC, knowingly accepted the aforementioned services provided by Sun Group USA, and obtained a direct benefit through that acceptance.

62. The benefits CRRC and its predecessor entities received are unfair where Sun Group USA itself has received no compensation whatsoever for its extensive services provided over a period of years.

63. Because Plaintiff Sun Group USA also had acted on behalf of CRRC and its predecessor

entities, and CRRC later learned of Sun Group USA's conduct after it had occurred, and then

approved of Sun Group USA's conduct, CRRC Corporation Ltd. has also engaged in ratification.

**Wherefore,** judgment should be entered against Defendant CRRC Corporation Ltd. and in

favor of Plaintiff Sun Group USA, based on implied contract, quasi-contract, and/or ratification,

with relief awarded as set forth below.

<u>**Count Four – Promissory Estoppel**</u>
**(Against Defendant CRRC Corporation Ltd.)**

64. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as

though fully set forth herein.

65. CRRC Corporation Ltd., through its predecessors CNR and TRC, and also through its

own independent representations and statements of support made by its President and other high-

ranking officers, employees and agents, made clear and unambiguous promises to Sun Group

USA, including that in return for Sun Group USA's advancement of time, expenses, and other

resources designed to advance China's prospects for high-speed rail contracts in the U.S., it

would fully support Sun Group USA, and that Sun Group USA would receive exclusive rights in

California and in the U.S., Mexico and Canada, the ability to participate in and influence such

bidding, and 6-10% commissions on anticipated multi-million and multi-billion dollar contracts

for rail rolling stock, including an anticipated $68-$72 billion project being bid by California's

High Speed Rail Authority.

66. Sun Group USA relied on these promises it received, and its reliance was both reasonable

and foreseeable to CRRC Corporation Ltd. and its predecessors, officers, employees and agents,

who knew or should have known that Sun Group USA was expending enormous resources on

CRRC's behalf.

67. Sun Group USA was substantially injured by its reliance on the aforementioned promises,

incurring substantial losses that include far in excess of $75,000 in expenses paid out-of-pocket,

excluding interest, plus thousands of hours of time by Sun Group USA's executives and employees whose salaries were paid during a lengthy period of time that now exceeds 6-7 years, all as part of a single-minded effort by Sun Group USA to promote China's rail service in the U.S. and advance this exclusive opportunity to secure the identified commissions and other benefits as promised.

**Wherefore,** judgment should be entered against Defendant CRRC Corporation Ltd. and in favor of Plaintiff Sun Group USA based on promissory estoppel, with relief awarded as set forth below.

### Count Five – Tortious Interference With Contractual Relations
**(Against Defendants CRRC MA, CRRC Sifang, and CRI)**

68. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

69. The 2014 Cooperation Agreement has been a valid contract since its execution on or about April 26, 2014, between Sun Group USA and CRRC Corporation Ltd.'s predecessor-in-interest, CNR.

70. Defendants CRRC MA, and CRRC Sifang, as subsidiaries and affiliated entities of CRRC Corporation Ltd., at all relevant times knew of and were aware of this 2014 Cooperation Agreement.  CRRC MA, in fact, was previously known as CNR MA, and was originally established under a joint venture that included CNR – the entity which signed the 2014 Cooperation Agreement with Sun Group USA.

71. Defendant CRI at all relevant times also knew of and was aware of this 2014 Cooperation Agreement.  As described in CRRC's September 27, 2016 email, CRI coordinated with China Railway as its "CR USA company" to decide that rail cars would be provided through sources that no longer included Sun Group USA's involvement, notwithstanding the 2014 Cooperation Agreement.

72. Defendants CRRC MA, CRRC Sifang, and CRI each intended to disrupt the performance of this contract by CRRC, including but not limited to by inhibiting CRRC's conferral to Sun Group USA of the exclusive rights in the U.S. to which Sun Group USA was entitled.

73. Defendants CRRC MA, CRRC Sifang, and CRI also disrupted the contract's required performance, including its exclusivity clause as noted, by acting as substitutes for Sun Group USA in CRRC's U.S. bidding proposals, and/or enlisting other third parties to act in that capacity in Sun Group USA's stead, and/or failing to honor Sun Group USA's exclusive role when interacting with relevant governmental authorities.

74. The conduct of each of Defendants CRRC MA, CRRC Sifang, and CRI was a substantial factor in directly and proximately causing Plaintiff Sun Group USA to incur losses and damages, including lost commissions and future commissions, lost opportunities to participate in and secure additional rail contracts in the U.S., substantial damage to Plaintiff's credibility in dealing with government contracting authorities who have been told by Defendants that Sun Group USA is not a partner of China's rail bids, and attendant loss of good will and damage to Sun Group USA's business reputation generally.

**Wherefore,** judgment should be entered against Defendants CRRC MA, CRRC Sifang, and CRI and each of them, in favor of Plaintiff Sun Group USA, for tortious interference with contractual relations, with related relief awarded as set forth below.

### Count Six – Unjust Enrichment
#### (Against All Defendants)

75. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

76. The Defendants have received a variety of benefits, including a $566.6 contract awarded by the Massachusetts Transit Authority, a $1.3 billion contract awarded by the Chicago Transit Authority, a $137.5 million contract awarded by Philadelphia's SEPTA, and a $647 million

contract from the Los Angeles County Metropolitan Transit Authority.  Additionally, Defendants may secure additional, far larger future contracts with government agencies in the U.S., including New York City's rail project estimated to be worth approximately $27 billion, and California's high-speed rail project, estimated at $68-72 billion.

77. It would be unjust for Defendants to retain all of these benefits at the expense of Sun Group USA, which is being paid nothing at all, despite Sun Group USA's exclusive rights, and Sun Group USA's extensive performance and expenses, including thousands of hours of work provided over many years, all of which materially advanced Defendants' ability to achieve these successes in the U.S.

**Wherefore,** judgment should be entered against all of the Defendants and each of them, in favor of Plaintiff Sun Group USA, for unjust enrichment, with relief awarded as set forth below.

### Count Seven – Violation of California's Unfair Competition Laws
**(Business & Professions Code § 17200 et seq.)**
**(Against All Defendants)**

78. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

79. The actions of the Defendants as specified constitute unfair competition under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., in that the Defendants have engaged in one or more (a) unlawful business acts or practices, (b) unfair business acts and practices, and/or (c) fraudulent business acts and practices, as defined in Cal. Bus. & Prof. Code § 17200.

80. The harms caused by the conduct of the Defendants to Sun Group USA, also outweigh the benefits, if any, that their conduct may have.  Defendants' actions include systematic, repetitive breaches of the 2014 Cooperation Agreement.  Defendants' actions and representations were also of a type likely to deceive Sun Group USA, and those with whom it interacted.

**Wherefore,** judgment should be entered against the Defendants and in favor of Plaintiff Sun Group USA for violation of California's Unfair Competition Law, with relief awarded as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment against both Defendants and each of them, jointly and severally, as follows:

A.    Actual damages in favor of Plaintiff Sun Group USA, consisting of its commissions earned but unpaid to date, in an amount of at least $159,066,000 – representing $33.996 million (6% of $566.6 million) + $78 million (6% of $1.3 billion) + $8.25 million (6% of 137.5 million) + $38.82 million (6% of $647 million) – as well as Plaintiff's lost opportunity costs and reputational damages, and such other and appropriate amounts as may be determined by a jury or this Court according to the proof as established at trial;

B.    Consequential damages in favor of Plaintiff Sun Group USA in an amount equal to lost future commissions equivalent to at least 6% on each of New York's $27 billion project and California's $68-72 billion project, or such other and appropriate amount as may be determined by a jury or this Court according to the proof as established at trial;

C.    Punitive or exemplary damages in an appropriate amount as may be determined by a jury or this Court, according to the proof as established at trial;

D.    In the event that one or more of the above remedies are determined to be unavailable, equitable relief in the form of restitution and/or disgorgement to prevent Defendants' unjust enrichment, and/or other equitable relief in the form of quantum meruit or otherwise, to make Plaintiff whole for its many years spent

1   performing work and advancing substantial expenses on behalf of CRRC and its

2   predecessor entities;

3   E.   Injunctive relief in the form of an Order of Specific Performance, compelling

4   Defendants to honor the exclusive agency agreements in favor of Sun Group USA,

5   and barring the Defendants or their subsidiaries or affiliates from making any

6   additional rail bids inside the U.S. without Sun Group USA's knowledge and

7   consent, and barring the Defendants from any further participation in any current

8   or future rail bids or contracts inside the U.S., unless CRRC Corporation Ltd. fully

9   honors its obligations under the 2014 Cooperation Agreement, or until further

10   order from this Court; and

11   F.   Pre- and post-judgment interest, as well as all costs of this action, and such other

12   and further relief as this Court may deem just and appropriate.

*A jury trial is respectfully requested on all counts so triable.*

This 19th day of April, 2017.

Respectfully submitted,

/s/ John Balazs
John Balazs

/s/ Gregory S. Smith
Gregory S. Smith
*Pro Hac Vice Application To Be Filed*

/s/ Ning Ye
Ning Ye
*Pro Hac Vice Application To Be Filed*

Counsel for Plaintiff
SUN GROUP U.S.A. HARMONY CITY, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FILER'S ATTESTATION**

I, John Balazs, am the ECF user whose identification and password are being used to file this COMPLAINT.  Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.

Dated:  April 19, 2017

/s/ John Balazs
JOHN BALAZS