JOHN BALAZS, Bar # 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone:     (916) 447-9299
Facsimile:     (916) 557-1118
Email: john@balazslaw.com

NING YE, NY Attorney Registration #4033585
Law Office of Ning Ye
13511 38th Ave., #1A
Flushing, NY 11354
Telephone:     (718) 308-6626
Facsimile:     (718) 228-5816
Email:          ynyale@aol.com
*Admitted Pro Hac Vice*

GREGORY S. SMITH, DC Bar #472802
Law Offices of Gregory S. Smith
913 East Capitol Street, S.E.
Washington, D.C. 20003
Telephone:     (202) 460-3381
Facsimile:     (877) 809-9113
Email: gregsmithlaw@verizon.net
*Admitted Pro Hac Vice*

Attorneys for Plaintiff
SUN GROUP U.S.A. HARMONY CITY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN GROUP U.S.A. HARMONY CITY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CRRC CORPORATION LTD., *et al.*,<br><br>Defendants. | No. 17-cv-02191-JSC<br><br>**PLAINTIFF'S OPPOSITION AND MEMORANDUM AGAINST DEFENDANT CHINA RAILWAY INTERNATIONAL U.S.A. COMPANY, LTD.'S MOTION TO DISMISS THE COMPLAINT**<br><br>**Motion Hearing:  July 27, 2017, 9:00 a.m. Courtroom F, 15th Floor, before U.S. Magistrate Judge Jacqueline Scott Corley** |

**NOTICE OF PLAINTIFF'S OPPOSITION**

Plaintiff Sun Group U.S.A. Harmony City, Inc. ("Sun Group") opposes the motion to dismiss filed by Defendant China Railway International U.S.A. Company, Ltd. ("CRI"), because the Complaint satisfies all pertinent requirements of the Federal Rules of Civil Procedure.  This Opposition is based on the attached Memorandum, all other papers on file in this action, and such other and further evidence or argument as this Court may allow.  A Proposed Order is attached.

1

# TABLE OF CONTENTS

I. OVERVIEW ............................................................................................................... 1

II. ARGUMENT .......................................................................................................... 3

A.     Legal Standard for Rule 12(b)(6) Motions to Dismiss........................................ 3

B.     Sun Group USA's Tortious Interference Claim Against CRI............................ 4

C.     Sun Group USA's Unjust Enrichment Claim Against CRI .............................. 8

D.     Sun Group's Unfair Competition Law Claim Against CRI ............................ 12

III.  CONCLUSION ..................................................................................................... 18

1

**TABLE OF AUTHORITIES**

2

**CASES** **PAGE**

3

*Alta Bates Summit Med. Ctr. v. United of Omaha Life Inc. Co.*, 2009 U.S. Dist. LEXIS 2707 (N.D. Cal. Jan. 8, 2009) ..................................................................................... 16

4

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 3,4

6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 4

7

*Blackman-Baham v. Kelly*, 2017 U.S. Dist. LEXIS 24175 (N.D. Cal. Feb. 21, 2017).................. 4

8

*Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 973 P.2d 527, 83 Cal. Rptr. 546 (1999) ............................................................. 13,14,15

9

*Concorde Equity II, LLC v. Miller*, 732 F. Supp. 2d 990 (N.D. Cal. 2010) ..................... 9

10

*CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099 (9th Cir. 2007)...................... 14

11

*Epstein v. Wash. Energy Co.*, 83 F.3d 1136 (9th Cir. 1996).......................................... 3

12

*Geier v. Davis*, 2017 U.S. Dist. LEXIS 44785 (N.D. Cal. Mar. 27, 2017)..................... 3

13

*Ghirardo v. Antonioli*, 14 Cal. 4th 39, 924 P.2d 996, 57 Cal. Rptr. 2d 687 (1996)......................... 9

14

*Grant v. California Bench Co.*, 76 Cal. App. 2d 706, 173 P.2d 817 (1946)............................. 17

15

*Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116 (9th Cir. 2008) ........................... 3

16

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 246 P.2d 877, 120 Cal. Rptr. 741 (2011).. 16,17

17

*Lectodryer v. SeoulBank*, 77 Cal. App. 4th 723, 91 Cal. Rptr. 2d 881 (2000) ............................ 9

18

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc) ................................................. 4

19

*Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008)......................... 3

20

*Nicolosi Distributing, Inc. v. BMW of N. Am., LLC*, 2011 U.S. Dist. LEXIS 14586 (N.D. Cal. 2011)................................................................................................. 13,14,15

21

22

*Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006)...................................... 10

23

*Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 55 Cal. Rptr. 818 (1996)......................................... 13

24

*Payne v. United California Bank*, 23 Cal. App. 3d 850, 100 Cal. Rptr. 672 (1972) ................... 17

25

*People v. Dollar Rent-A-Car Systems, Inc.*, 211 Cal. App. 3d 119, 259 Cal. Rptr. 191 (1989)................................................................................................. 13,14,16

26

*Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 80 Cal. Rptr. 3d 316 (2008) ............. 9,12

27

*Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 58 Cal. Rptr. 89 (1996) .............. 15,16

28

*Reeves v. Hanlon*, 33 Cal. 4th 1140, 95 P.3d 513, 17 Cal. Rptr. 3d 289 (2004)......................... 5,7

*Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990) ............................................................ 8

*Saunders v. Superior Court*, 27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994)......................... 13

*Siegel v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*, 2011 U.S. Dist. LEXIS 105151 (N.D. Cal. Sept. 15, 2011)....................................................................... 9,10

*Sprint Nextel Corp. v. Welch*, 2014 U.S. Dist. LEXIS 2119 (E.D. Cal. Jan. 8, 2014).............. 9,10

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987)............................................................ 4

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099 (C.D. Cal. 2001)......... 17

*Western P.R. Corp. v. Western P.R. Co.*, 206 F.2d 495 (9th Cir. 1953) ....................................... 10

*Wilder v. JPMorgan Chase Bank, N.A.*, 2009 U.S. App. LEXIS 124242 (C.D. Cal. Nov. 25, 2009) ............................................................................................................................. 9,10

*Young v. Bank of California*, 88 Cal. App. 2d 184 (1948)........................................................... 11

## STATUTES & RULES

Cal. Bus. & Prof. Code § 17200 *et seq.* ............................................................................... 12,17

Fed. R. Civ. P. 9(b) ...................................................................................................................... 16

Fed. R. Civ. P. 12(b)(6)......................................................................................................3,4,5,6,7,17

**MEMORANDUM OF LAW IN OPPOSITION**

NOW COMES Plaintiff SUN GROUP U.S.A. HARMONY CITY, INC., by and through undersigned counsel, and files this Memorandum of Law in Opposition to Defendant China Railway International U.S.A. Company, Ltd. ("CRI")'s Motion to Dismiss Plaintiff's Complaint.

### I.   OVERVIEW

CRI begins by attempting to antiseptically reduce Plaintiff's allegations against Defendant CRI to items it admits are merely "bullet points." CRI Mem. at 2.  Removing all context, CRI broadly asserts that its own "bullet points" (composed by CRI, not Plaintiff) do not fairly support Plaintiffs' claims for relief; from this, CRI then says a dismissal "with prejudice" must issue.

A closer look at the Complaint's *actual* allegations, however, including key Paragraph 36 – the *language* of which remarkably *never once appears anywhere* in CRI's Motion to Dismiss or its entire Memorandum of Law – demonstrates otherwise.

In most tortious interference-type cases, the allegations of interference with contract are merely *indirect* – e.g., that a third party (such as CRI) intentionally acted indirectly to *induce* one of the contracting parties (such as CRRC) to breach.  Here, by contract, the interference is *direct*. Paragraph 36 alleges that Director Zhang Xin of CRRC, on September 27, 2016, emailed Sun Group that CRRC "cannot work with you, please understand," because CRRC had "already done a lot of work and investment with our partners."  In this regard, and with "respect to the California High Speed Rail project mentioned in article 4," CRRC's Director specifically advised that CRRC's efforts were "now progressing steadily under the unified leadership of the China Railway company."  Stating further, CRRC then explained the reason for its decision to breach:

> the tender for the supply of vehicles is also carried out under the unified coordination of the China Railway company's branch international company and the CR USA company.  So we regret that we cannot cooperate with you in this project.

This "CR USA company" is obviously CRI, as Paragraph 37 specifically alleges.  And in contrast

to CRI's "bullet points," which wrongly assert that Paragraph 36 is limited to a description of how CRI is "named as a source for rail cars," Paragraph 36 goes well beyond a mere discussion of CRI's handling of the "supply of vehicles" – it describes CRI's role in "*the tender for* the supply of vehicles" – i.e., CRRC's *bid*.  CRI's omission of this key language in its Motion to Dismiss robs the Complaint of context, and ignores CRRC's direct admission of CRI's involvement in the "unified coordination" of CRRC's own bidding process, which is why CRRC says it "cannot cooperate" with Sun Group, and "cannot work with you, please understand."

Plaintiff's alleged facts showing tortious interference by CRI are direct, and likely may surprise U.S. regulators now considering bids received from CRRC – ostensibly a private Chinese company with private subsidiaries – as much as it then surprised Sun Group, which had been working in good faith to promote CRRC's U.S. bids.  Coming on the heels of a December 30, 2014 announced merger of China North Rail and China South Rail into a single company "which would own approximately 90% of all rolling stock in China's rail network," *see* Complaint ¶ 28 (additional context which CRI's Motion to Dismiss also wholly ignores), these revelations by CRRC itself, admitting that CRRC's own activities had been being placed under the "unified leadership" and/or "unified coordination" of state-owned China Railway and its subsidiaries, including CRI, is frankly stunning.  Paragraph 36 reveals that CRI was not merely trying to indirectly "induce" CRRC in this context – instead, it suggests CRI and its China Railway parents were exercising direct control over CRRC's activities.  And *immediately after* describing this "unified coordination" of CRRC activities, and specifically referencing CRI as "the CR US company," CRRC then also acknowledged a direct link between this and CRRC's breach of Sun Group's contract: "*So* we regret that we cannot cooperate with you in this project."  Frankly, it is almost difficult to imagine a more direct factual allegation of tortious interference with contract than this – an admission coming directly from the party (CRRC) that did the breaching, which

even closed with an apology ("So very sorry, cannot work with you, please understand") for these events that CRRC tried to suggest somehow placed this decision beyond its control.

## II.    ARGUMENT

### A.  Legal Standard for Rule 12(b)(6) Motions to Dismiss

Under Fed. R. Civ. P. 12(b)(6), "dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008).  In the instant case, of the three claims filed against Defendant CRI (Counts Five-Seven), CRI disputes only Plaintiff's Unjust Enrichment claim (Count Six) as a cognizable legal theory; its motion to dismiss Counts Five and Seven is based solely on its contention that Plaintiff's pleaded facts are inadequate.  With respect to such challenges, this Court must "accept factual allegations in the complaint as true and [also] construe the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Geier v. Davis*, 2017 U.S. Dist. LEXIS 44785 at *2 (N.D. Cal. Mar. 27, 2017).  While a Complaint must allege "more than a sheer possibility that a defendant has acted unlawfully," this standard of facial plausibility is not a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This evaluation is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  While mere "conclusory allegations of law and *unwarranted* inferences are insufficient to defeat a motion to dismiss," *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (emphasis added); *accord Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"), "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  The pertinent question is whether the Complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  At bottom, "[t]he issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) (quoted in *Geier*, *supra*, at *2).  "Generally, a claimant's burden at the pleading stage is relatively light." *Blackman-Baham v. Kelly*, 2017 U.S. Dist. LEXIS 24175, at *26 (N.D. Cal. Feb. 21, 2017).[1]

### B.  Sun Group USA's Tortious Interference Claim Against CRI

Examining Counts Five-Seven, CRI first says on Count Five that "Sun Has Not Alleged that CRI Took Any Intentional Action to Interfere with Sun's Contract."  CRI is incorrect.

Paragraph 72 specifically states that "CRI … intended to disrupt the performance of this contract by CRRC, including … by inhibiting CRRC's conferral to Sun Group USA of the exclusive rights in the U.S. to which Sun Group USA was entitled."  Paragraph 73 further states that "CRI also disrupted the contract's required performance, including its exclusivity clause as noted, by acting as substitutes for Sun Group USA in CRRC's U.S. bidding proposals, and/or enlisting other third parties to act in that capacity in Sun Group's stead, and/or failing to honor Sun Group USA's exclusive role when interacting with relevant government authorities."

CRI does reference these paragraphs, but breezing past Rule 12(b)(6)'s paradigm in which a Complaint's allegations are generally to be accepted as true, CRI then tries to wish them away, baldly stating without authority that "[t]hese allegations do not hold any weight," because "Sun cannot allege that CRI had any obligation to abide by the terms of the alleged contract between

---

[1] Even if this Complaint did not satisfy Rule 12(b)(6), and CRI's motion is granted based on inadequately pleaded facts, this Court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

4

Sun and another defendant."  This argument, suggesting that CRI's liability here is somehow tied

to CRI's own linkage to the contract, conflicts with black-letter tortious interference law, as

verified in one of the very cases CRI cites.  *See Reeves v. Hanlon*, 33 Cal. 4th 1140, 95 P.3d 513,

17 Cal. Rptr. 3d 289 (2004) ("in California, the law is settled that 'a stranger to a contract may be

liable in tort for intentionally interfering with the performance of a contract.'").

 Plaintiff here has alleged directly and specifically that CRI "intended to disrupt the

performance of this contract by CRRC."  And CRI's suggestion that Plaintiff somehow failed to

identify any intentional activities by CRI ignores Paragraph 36, in which CRRC itself admitted

that, on the California High Speed Rail Project, "*the tender for* the supply of vehicles is also

carried out under the *unified coordination* of the China Railway company's branch international

company and the *CR USA* company.  *So* we regret *we cannot cooperate with you in this project*."[2]

 How is this email not a specific factual allegation of intentional interference by CRI?

Intentionality by CRI is *inherent in the very notion* of "unified coordination."  Can it even fairly

be argued that an act of "unified coordination" is *unintentional*?  And even if it might somehow

be theoretically possible for a party to engage in "unintentional unified coordination," surely that

combination would not be the norm.  Plaintiff has at least set forth a "reasonable inference" that

CRI engaged in intentional conduct here, particularly when construed (as Rule 12(b)(6) requires)

in the "light most favorable to the non-moving party," and when CRRC's description of this

"unified coordination" is not untethered from the causation set forth in the very next line of that

---

[2] CRI attempts to minimize this statement as coming from "*another defendant's* employee."  CRI
Mem. at 4 (emphasis in original).  To be clear, this was no mere "employee" – it was CRRC's
Director, who also conveyed the CRRC's President's message.  And with respect to its source
being CRRC (the breaching party) rather than CRI, no court has ever held that a Complaint
cannot proceed without an admission from each party opponent – nor should it, particularly
*before discovery even begins*.  Our civil justice system would fundamentally diminish if our
courts were to close their doors through this type of threshold requirement at the outset of a case.

same email message: "*So* we regret that we cannot cooperate with you in this project."[3]

Additionally, this conclusion is substantially bolstered by the tenor and tone of CRRC's email itself, as quoted in Paragraph 36.  When its context is considered and embraced, rather than improperly ignored as CRI asks of this Court, one sees that CRRC's email message seems to be attempting to convey a sense of regret (with even a specific "thank you" from CRRC's President himself) – expressing recognition and appreciation for Sun Group's "company support" and "valuable information."  Inherent in CRRC's open apology ("So very sorry, cannot work with you, please understand") is the notion that CRRC itself believed it was being controlled, or at least significantly influenced, by outside powers larger than itself – the cited forces of "unified leadership" and "unified coordination" consisting of China's state-owned China Railway "and the CR US company."  While to be clear, Plaintiff does not agree that CRRC lacked the ability to honor its own contract with Sun Group (and is suing CRRC for breach of contract accordingly), the context of this email further supports the notion that CRI intentionally interfered, particularly when Plaintiff is given the benefit of all reasonable inferences, as Rule 12(b)(6) requires.

This also is not a situation in which CRRC and China Railway, and their respective subsidiaries, are completely unrelated entities – instead, the pleadings in this very case confirm a

_____

[3] The Motion to Dismiss' contention that the Complaint failed to allege that CRI's conduct "was the procuring cause" of CRRC's breach is therefore also incorrect.  *See also* Complaint ¶ 73 ("CRI…disrupted the contract's required performance"); ¶ 74 ("conduct of…CRI was a substantial factor in directly and proximately causing" Plaintiff's losses).  Similarly unpersuasive is CRI's bald claim that "[t]o state a claim for tortious interference, Sun Group must prove that the alleged contract would otherwise have been performed."  Of course, at this Rule 12(b)(6) stage, Plaintiff need not "prove" anything.  More importantly, this Complaint specifically does cite CRRC's expressions of regret at this breach, plus past contractual performance that had been sustained over a period of *years* (and even through two contract renewals).  Indeed, the *very reason given* by CRRC for its breach is the China Railway entities' new "coordination" – even while it was *affirmatively thanking* Sun Group for all its past efforts and help.  This Court cannot rule as a matter of law that this contract surely would not have continued absent CRI's tortious interference, especially when all reasonable inferences are construed in Plaintiff's' favor.

link.  While this Court's ability to look beyond the pleadings at this early Rule 12(b)(6) stage is necessarily limited, this Court can properly take judicial notice of filed pleadings.  Defendants' own Disclosure Statement (Docket #19) reveals that at least one CRRC entity (CRRC Qingdao Sifang Co., Ltd.) is an "[i]nterested party having a financial interest in Defendant CRI."[4]

This Court can also fairly consider the Complaint's allegations of CRI's own high-speed rail efforts only a year earlier.  Contrary to CRI's Motion's suggestion that Plaintiff's allegations about CRI's 2015 joint venture had nothing to do with California high-speed rail, Paragraph 37 specifically notes how CRI's agreement with XpressWest Media, a subsidiary of the Marnell casino conglomerate, involved efforts "to pursue *high-speed railway service* between Las Vegas, NV *and Los Angeles, CA*."  To the extent CRI is suggesting from this interest it showed in the multi-billion dollar California high-speed rail market that it was a "competitor" of Sun Group USA, that in no way affords CRI a privilege to interfere with existing contracts under California law.  *Reeves v. Hinton*, 33 Cal. 4th at 1149 ("the privilege of competition is inapplicable to interference with an existing contract unless the contract is terminable at will").  On the other hand, Paragraph 37's allegations reveal a clear motive for CRI to want to engage in efforts to induce CRRC to eliminate Sun Group USA's continued participation in this market.

When all of these alleged facts are considered, dismissing CRI from this case would be manifestly unjust, and even create an "empty chair" scenario:  CRRC should not be able to claim to a jury (if it *merely persists in the same story* it relayed in its September 27, 2016 email to Plaintiff) that it essentially had no choice but to breach this contract, but with all of the interfering

---

[4] This is not a case, as CRI suggests, in which Plaintiff is somehow seeking to "expand its contract to cover every rail entity with a connection to China, or every rail entity in which the Chinese government has an interest."  CRI Mem. at 2.  Plaintiff has sued a total of one (1) entity outside of the CRRC family.  And Plaintiff sued that one company, CRI, because CRRC itself admitted CRI's involvement in a "unified coordination" that led to the breach of this contract.

parties onto which CRRC might attempt to shift the blame completely absented from the trial.

Plaintiff's Complaint specifically alleges that a valid contract existed, *e.g.,* Complaint ¶¶ 19 & 46, which is why CRRC is being sued for breach of the 2014 Cooperation Agreement.  It alleges that "CRI at all relevant times … knew of and was aware of this 2014 Cooperation Agreement."  *Id.* ¶ 70.  It alleges that CRI "*coordinated* with China Railway as its 'CR USA company' *to decide that* rail cars would be provided through sources *that no longer included Sun Group USA's involvement,* notwithstanding the 2014 Cooperation Agreement."  *Id.* ¶ 71.  It alleges that "CRI … intended to disrupt the performance of this contract by CRRC," *id.* ¶ 72, and further pleads facts coming from the breaching entity itself, verifying the allegations that CRRC was interfered with, not only in general terms but even as *quoted* above.  *Id.* ¶ 36.  The Complaint also alleges resulting damages that suffice under California's tortious interference law, as one of CRI's own cited cases verifies.  *Compare Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990) (awarding "damage to "business and professional reputation") *with* Complaint ¶ 74 (citing, among other injuries, "damage to Sun Group USA's business reputation").  *See also* Complaint ¶¶ 42, 74.  Because the Complaint alleges facts against CRI sufficient to support the five elements of a tortious interference claim under California law,[5] CRI's motion to be dismissed from Count Five should be denied.

### C.  Sun Group USA's Unjust Enrichment Claim Against CRI

With respect to CRI's efforts to dismiss Plaintiff's unjust enrichment claim in Count Six,

---

[5] CRI's Memorandum aggressively claims there are *six* independent elements of a tortious interference claim, but its assertion is belied by the very case CRI cites in support of this contention.  *See Robi*, 918 F.2d at 1442 & n.4 ("five elements").  That is not the only example of defense overreach.  CRI's Proposed Order presents language so overbroad (discussing "fraud-based claims" – plural) that if signed by this Court, it would actually result in the dismissal of all of Plaintiff's fraud-related claims – even as to other claims and defendants not presently before this Court on the instant motion.  The Proposed Order also baldly asks this Court to declare that the Complaint "cannot be amended to remedy [CRI's asserted] deficiencies" – even though CRI's filings provide this Court with no basis whatsoever for such a conclusion.

CRI begins with an aggressive, one-sided presentation of the substantive law, describing for this Court only those "cases [which] have held that 'unjust enrichment' is not an independent cause of action in California, but rather a form of relief."  CRI Mem. at 6-7.

The *whole* truth is that the most can be said about California law on this issue is that it is disputed – and clearly is *not* settled in CRI's favor.  Numerous opinions issued by California's federal courts have expressly recognized that this legal issue remains unresolved.  *E.g., Sprint Nextel Corp. v. Welch*, 2014 U.S. Dist. LEXIS 2119, at *11 (E.D. Cal. Jan. 8, 2014) ("There is a split in authority among California courts over whether 'unjust enrichment' is regarded as a cause of action."); *Siegel v. AU Optronics Corp (In re TFT-LCD (Flat Panel) Antitrust Litig.)*, 2011 U.S. Dist. LEXIS 105151, at *20 (N.D. Cal. Sept. 15, 2011) ("Both parties agree that California courts are split on the question whether unjust enrichment is a viable cause of action under California law."); *Concorde Equity II, LLC v. Miller*, 732 F. Supp. 2d 990, 1001 (N.D. Cal. 2010) ("There is a split of authority in California as to whether a claim for unjust enrichment is recognized as an independent cause of action."); *Wilder v. JPMorgan Chase Bank, N.A.*, 2009 U.S. App. LEXIS 124242 (C. D. Cal. Nov. 25, 2009) ("California courts have provided conflicting direction as to whether a separate cause of action exists for unjust enrichment.").  *See also Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593, 80 Cal. Rptr. 3d 316 (2008) (recognizing unjust enrichment cause of action); *Lectodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (2000) (unjust enrichment claim consists of "receipt of a benefit and the unjust retention of the benefit at the expense of another"); *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50, 924 P.2d 996, 57 Cal. Rptr. 2d 687 (1996) (plaintiffs may state a claim for unjust enrichment particularly when their claim seeks restitution where other remedies are inadequate).

In *Siegel, supra*, Judge Illston of this District denied a motion to dismiss the plaintiff's unjust enrichment claim, despite defense arguments similar to those made here, asserting that no

such cause of action exists under California law.  In reviewing the case law underlying this "split", Judge Illston noted how even "[m]any of the courts that have rejected 'unjust enrichment' claims have nonetheless indicated that the claims could proceed under a different title," *id.* at *21, and further noted how "many of the cases defendants rely on [to argue that no independent claim exists] involved plaintiffs that had failed to plead any cognizable claim for relief whatsoever." *Id.* at *22-23.  Those cases were distinct from ones in which "plaintiffs have invoked a valid theory of recovery," because "[i]n such circumstances, courts have generally allowed claims for 'unjust enrichment' to proceed, regardless of the precise label assigned to the cause of action." *Id.* at *23.  Accordingly, Judge Illston denied the defendants' motion to dismiss Siegel's separately-pleaded unjust enrichment claim.  *Accord Sprint Nextel Corp.*, *supra* at *13 ("the Court finds that Plaintiffs' complaint states a cognizable unjust enrichment/restitution claim").  *See also Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006) (courts holding that no cause of action exists for unjust enrichment have focused on semantic arguments; cause of action can be understood as a proper and valid cause of action for restitution).

In light of these decisions, including at least two within this District that have allowed such claims to proceed, this Court should issue a similar ruling here.  And that is particularly true since the Ninth Circuit itself, in *Western P.R. Corp. v. Western P.R. Co.*, 206 F.2d 495 (9th Cir. 1953), opined that such a claim appears implicit in the common law.  *See id.* at 498 ("It is of course true that the California courts, in common with authorities generally, recognize a cause of action based on unjust enrichment.").  *Accord Wilder*, *supra* at *14 ("the weight of authority indicates that California law recognizes a cause of action for unjust enrichment/restitution").

In this case, Sun Group has alleged that CRI and the other Defendants have received a variety of benefits, including not only existing bid contracts in hand, but also additional, far larger bid contracts with government agencies in the U.S. that they may secure.  Complaint ¶ 76.  Even

at present, CRI has also received a clear business benefit because it is freer to pursue its cited, demonstrated interest in California high-speed rail projects, advancing its goal of "Infrastructure development," Complaint ¶ 37, now that its "coordination" within CRRC effectively cleared Sun Group USA off the playing field.  Even if that present benefit to CRI may not (yet) rise to the level of the multi-million dollar bid contracts that the CRRC Defendants have already secured, it is nevertheless a business benefit to CRI that a jury can both find and value.  And as noted, the CR and CRRC families are also interconnected; it has now been revealed that at least one CRRC entity even has a material financial interest in CRI.  Given these facts, it is unjust for CRI to swoop in and reap high-speed rail benefits and related rewards at these late stages of the bidding process now that bounties are at hand, vis-à-vis Sun Group USA, which has toiled away in these vineyards for many years, and yet has received *absolutely nothing*, despite its exclusive rights.

As a fall-back argument, CRI also seeks a dismissal here because it says Plaintiff's claim must also show that CRI's unjust benefits were derived from the Plaintiff itself, rather than from CRI's own misdeeds.  But CRI's description of *Young v. Bank of California*, 88 Cal. App. 2d 184, 187 (1948), as "providing that a plaintiff has no right to sue on a theory of unjust enrichment where the plaintiff did not confer a benefit on the defendant" once again embellishes the law. *Young* never said that at all; that case involved an appeal on a wholly unrelated issue: dismissal under the statute of frauds.  Young tried to raise on appeal certain equitable challenges to this statute of frauds defense, and the court then declared that a "principle" of unjust enrichment appeared to run through many of the cases he cited, before rejecting his challenge.  *Young* never held that all unjust enrichment claims must allege that a plaintiff directly conferred a benefit on a defendant, nor *could* it even have said this, since no unjust enrichment cause of action appears to have even been before the court in *Young*.  CRI's attempt to rely on this rarely-cited California intermediate court decision that is now almost 70 years old is telling.  More than six decades later,

when a California appellate court *actually did* address unjust enrichment claims, it specified only two elements: (1) the receipt of a benefit and (2) the unjust retention of the benefit at the expense of another. *See Peterson*, *supra*. *See also* CRI Mem. at 7 (citing other cases referencing these same two elements). *Peterson* and these other cases established no requirement that a plaintiff must also show that he directly conferred the benefit on the defendant. And such a requirement would also be inconsistent with the notion of unjust enrichment as a claim arising in equity, rather than an action at law: Formalistic rules specifying *how* a defendant may have come to be unjustly enriched should not logically inhibit an equity court's ability to do "complete justice."

Even if that were not so, because CRI itself was involved in the "unified coordination" of CRRC's efforts to advance CRRC's projects, Complaint ¶ 36, CRI in that process has necessarily been a beneficiary of Plaintiff's years of background work, "all of which materially advanced Defendants' ability to achieve these successes in the U.S." Complaint ¶ 77. Sun Group has adequately pleaded an unjust enrichment claim against CRI, and it should be allowed to proceed.

### D. Sun Group USA's Unfair Competition Law Claim Against CRI

Finally, CRI moves to dismiss Count Seven's claim that CRI violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* Once again, however, CRI's arguments for dismissal are based on an incorrect presentation of the prevailing law, and they again omit a key opinion emanating from the U.S. Court of Appeals for the Ninth Circuit. Accordingly, CRI's dismissal from Count Seven is unwarranted.

In evaluating Plaintiff's UCL claim, this Court should begin with first principles. In contrast to California's Unfair Practices Act, which is often specific but has broader remedies, the UCL has only limited remedies – but also a much broader reach. The UCL encompasses any "unlawful," "unfair" or "fraudulent" business act or practice. The UCL's scope has been characterized by California's courts as "sweeping, embracing anything that can properly be called

a business practice and that at the same time is forbidden by law." *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180, 973 P.2d 527, 83 Cal. Rptr. 546 (1999) (citations omitted).

With respect to the first of the UCL's three prongs – which covers "unlawful" business acts or practices – CRI begins by saying that "[a] claim based on this prong incorporates some other, separate civil or criminal law," and then aggressively attempts to suggest that Plaintiff's Complaint must tether its UCL claim to a particular statute – CRI even specifically asserts that "the operative pleading must allege how the practice violated the 'borrowed' law by 'stat[ing] with reasonable particularity the facts supporting the *statutory* elements of the violation.'" (emphasis added). CRI's statement is wrong.  As its own cited *Cal-Tech* case explains, the UCL "does more than just borrow."  20 Cal. 4th at 180.  Nothing "prohibit[s] an action under the unfair competition law merely because some other statute on the subject does not, itself, provide for the action or prohibit the challenged conduct."  *Id.* at 182-83.  And *Cal-Tech* also made quite clear that Section 17200 "undeniably establishes only a wide standard to guide courts of equity … evidently conclud[ing] that a less inclusive standard would not be adequate."  *Id.* at 181.

With respect to the UCL's "unlawful" prong specifically, a number of courts have squarely held that its scope extends beyond "unlawfulness" as defined in statutes alone.  *E.g., Nicolosi Distributing, Inc. v. BMW of N. Am., LLC*, 2011 U.S. Dist. LEXIS 14586, at *12 (N.D. Cal. 2011) ("the 'unlawful' practices prohibited are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, *or court-made*.") (emphasis added); *Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 55 Cal. Rptr. 818 (1996) (same); *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994) (same).  This specific reference to "court-made" unlawfulness – conspicuously omitted in CRI's Memorandum – clearly includes business torts such as tortious interference with contract.  *Accord People v. Dollar Rent-A-Car*

*Systems, Inc.*, 211 Cal. App. 3d 119, 259 Cal. Rptr. 191 (1989) (Section 17200 is broadly interpreted to bar all ongoing wrongful business activities in any context in which they appear).

Even if this conclusion somehow might be unclear as a general principle, it has become crystal clear in practice.  Both the Ninth Circuit and Judge Illston of this Court have already made this finding *specifically* – declaring that tortious interference with contract is a recognized "unlawful" practice under the UCL.  *See CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099, 1107 (9th Cir. 2007) ("We conclude that CRST adequately alleged that Werner violated the UCL because CRST adequately alleged that Werner engaged in an 'unlawful' business act or practice that allegedly harmed CRST, namely, intentional interference with CRST's employment contracts."); *Nicolosi Distributing, Inc.,* 2011 U.S. Dist. LEXIS 14586, at *12 (N.D. Cal. 2011) ("the Ninth Circuit has recognized that tortious behavior such as intentional interference with a contract qualifies as the type of activity proscribed by the UCL").

Only by ignoring Plaintiff's tortious interference claim against CRI, and then raising an obvious straw-man argument that "Sun's UCL claim appears to be based solely on allegations of another defendant's alleged breach of contract," can CRI avoid this clear line of authority and the direct impact of these cases.  Stated simply, dismissal of Count Seven against CRI here would constitute reversible error.  *See CRST*, 479 F.3d at 1107 ("We need go no further to conclude that the district court must be reversed on its dismissal of Count III.").

The UCL's prongs are written in the disjunctive, so Plaintiff's allegations of CRI's tortious interference alone suffice to state a valid UCL claim against CRI, and avoid dismissal.  Nevertheless, with respect to CRI's "unfair" business acts and practices, that too is adequately alleged in this Complaint.  On this prong, CRI's citation of the governing legal authority includes an ellipse – which omits the following italicized language from the actual quotation in the *Cal-Tech* opinion: "the word 'unfair' in that section means conduct that threatens an incipient

violation of an antitrust law, *or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law,* or otherwise significantly threatens or harms competition." In other words, Plaintiff need not show that CRI violated the law as noted, but need merely show CRI actions whose "policy or spirit" is "comparable" to such violations.[6]

Here, even with respect to anti-competitiveness, this Complaint alleges that "[o]n information and belief, CRRC Corporation Ltd. is a part of China's multi-billion dollar railroad industry monopoly," Complaint ¶ 11, and further describes anti-competitive behavior arising from the consolidation of CNR and CSR, which resulted in 90% of all rolling stock in China's rail network being overseen and under the control of the State Council of the People's Republic of China, Complaint ¶ 28, followed by the China Railway entities' "unified coordination" at CRRC which directly led to Plaintiff's exclusion. To suggest that these anti-competitive developments would be of no interest to California and other regulators ignores their potential effect on consumers arising from a consolidated Chinese rolling stock market. And as for CRI's suggestion that Sun Group's own exclusive contract with CRRC was itself somehow so inherently anti-competitive that it necessarily prevents this UCL claim from even proceeding, CRI's argument again is precluded by the case law. In the *Nicolosi Distributing* decision authored by Judge Illston, she specifically noted how the plaintiff in that case had similarly alleged interference with "an exclusive paint supply agreement with non-party German Motors," 2011 U.S. Dist. LEXIS 14586, at *1-2, yet despite that "exclusive" contract, she allowed the plaintiff's UCL claim to proceed.[7]

---

[6] The UCL's scope is actually broader than tort law. *See Cal-Tech*, 20 Cal 4th at 181 n.9 ("to state a claim under the act one need not plead and prove the elements of a tort") (citations omitted).

[7] Count Seven's "fraud" prong is focused on CRRC Corporation Ltd., which is sued in Plaintiff's Fraud in the Inducement claim (Count Two). Nevertheless, CRI is also wrong in claiming that UCL fraud allegations must meet the same heightened pleading standards as other fraud claims. The UCL's "fraud" prong is not like common-law fraud; a violation can be shown even if no one was actually deceived, relied on the fraudulent practice, or sustained any damage. *Podolsky v.*

Plaintiff's UCL claim has been adequately pleaded, and dismissal of Count Seven would be inappropriate.  While CRI cites *Alta Bates Summit Med. Ctr. v. United of Omaha Life Ins. Co.* for the proposition that dismissal is warranted whenever the Complaint itself fails to specify the UCL prong asserted against each specific defendant, *Alta Bates* did not say that.  The court in *Alta Bates* was presented with a motion to dismiss, and it then simply lamented that, even "[i]n *response* Plaintiff do[es] not clarify which specific rubric under which their [UCL] claim falls." *Id.* at 9 (emphasis added).  Even in that context, where the Court literally could not discern any viable UCL claim at all, even in a "Second Amended" Complaint, it still granted the Plaintiff leave to amend.  CRI's suggestion here that this Court must dismiss Sun Group's UCL claim, despite its clarifications provided above, and even "with prejudice," should be squarely rejected.

CRI's suggestion that Plaintiff lacks UCL "standing" is similarly unavailing.  *Compare Dollar Rent-A-Car*, 211 Cal. App. 3d at 129 (UCL is designed to protect consumers "as well as to protect competitors") *with* CRI Mem. at 9 (describing UCL precedent it says should apply "when a *competitor* brings an unfair competition claim") (emphasis in original).  CRI's argument that the Complaint does not allege economic injury against CRI is once again premised on a straw-man argument that CRI is not liable for "contract damages," CRI Mem. at 11, ignoring the economic injury that its tortious interference caused Plaintiff.  The key case that CRI cites is *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322, 246 P.2d 877, 120 Cal. Rptr. 741 (2011), but that case *reversed* the California Court of Appeals, after calling its view of the UCL's "lost money or property" requirement "underinclusive as to the economic injuries that might qualify."  51 Cal. 4th at 332.  *Kwikset* made very clear that the UCL's economic injury requirement is "not a substantial or insurmountable hurdle," and that even "an identifiable trifle" of economic injury suffices to

---

*First Healthcare Corp.*, 50 Cal. App. 4th 632, 58 Cal. Rptr. 89 (1996).  Because actual fraud and deception are not elements of a UCL claim, Fed. R. Civ. P. 9(b)'s standard is inapposite.

establish UCL standing.  *Id.* at 324-25 & n.7.  Among *Kwikset*'s referenced examples of the "innumerable ways in which economic injury from unfair competition may be shown" are claims that a Plaintiff simply had "a present or future property interest diminished," or that it may "be deprived of money or property to which [it] has a cognizable claim."  *Id.* at 323.  Those are the same sorts of injuries already included in this Complaint.  *E.g.,* Complaint at p. 27 ("commissions earned but unpaid"); *id.* ("lost opportunity costs"); *id.* ("reputational damages"); *id.* at p. 27-28 (uncompensated "years spent performing work and advancing substantial expenses").

   Whether a business act or practice constitutes unfair competition under Cal. Bus. & Prof. Code ¶ 17200 is a question of fact.  *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1117 (C.D. Cal. 2001); *Payne v. United California Bank*, 23 Cal. App. 3d 850, 856, 100 Cal. Rptr. 672 (1972).  *Accord Grant v. California Bench Co.*, 76 Cal. App. 2d 706, 173 P.2d 817 (1946) (unfair competition is question of fact).  In this Rule 12(b)(6) context, where the Complaint's pleaded facts, and all reasonable inferences arising therefrom, must be construed in the light most favorable to Plaintiff as the non-moving party, this Court cannot properly dismiss CRI from Count Seven, especially given the broadly-interpreted scope of California's UCL.

### III.   CONCLUSION

   Plaintiff respectfully requests that this Court deny CRI's motion seeking its dismissal from Counts Five-Seven of the Complaint.

   This 14th day of June, 2017.

                               Respectfully submitted,

                                 ___/s/ John Balazs_____
                                 John Balazs

                                 __/s/ Gregory S. Smith_____
                                 Gregory S. Smith

                                 __/s/ Ning Ye_____
                                 Ning Ye
                                 *Counsel for Plaintiff Sun Group USA, LLC*

17

1   JOHN BALAZS, Bar # 157287              NING YE, NY Attorney Registration #4033585
    916 2nd Street, Suite F                13511 38th Ave., #1A
2   Sacramento, CA 95814                   Flushing, NY 11354
    Telephone:    (916) 447-9299           Telephone:    (718) 308-6626
3   Facsimile:    (916) 557-1118           Facsimile:    (718) 228-5816
    Email: john@balazslaw.com              Email:        ynyale@aol.com
4                                          *Admitted Pro Hac Vice*

5   GREGORY S. SMITH, DC Bar #472802
    913 East Capitol Street, S.E.
6   Washington, D.C. 20003
    Telephone:    (202) 460-3381
7   Facsimile:    (877) 809-9113
    Email: gregsmithlaw@verizon.net
8   *Admitted Pro Hac Vice*

9   Attorneys for Plaintiff
    SUN GROUP U.S.A. HARMONY CITY, INC.

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13

14  SUN GROUP U.S.A. HARMONY CITY,         No. 17-cv-02191-JSC
    INC.,
15                                         **[PROPOSED] ORDER DENYING
                    Plaintiff,             DEFENDANT CHINA RAILWAY
16                                         INTERNATIONAL U.S.A. COMPANY,
         v.                                LTD.'S MOTION TO DISMISS**
17
    CRRC CORPORATION LTD., *et al.*,       **Motion Hearing:  July 27, 2017, 9:00 a.m.
18                                         Courtroom F, 15th Floor, before U.S.
                    Defendants.            Magistrate Judge Jacqueline Scott Corley**
19

20

21                           **[PROPOSED] ORDER**

22         The motion of Defendant China Railway International U.S.A. Company, Ltd. ("CRI") to
    dismiss the claims against it in Plaintiff's Complaint was regularly set for a hearing at the date,
23  time and place set forth above.

24         The Parties having appeared by their respective counsel of record, and this Court having
    considered the papers filed in support of and in opposition to the motion, Defendant CRI's motion
25  is hereby **DENIED**.  Defendant CRI shall Answer the Complaint by _____, 2017.

26         **IT IS SO ORDERED.**

27  Dated:_____    _____
                                     The Honorable Jacqueline Scott Corley
28                                   United States Magistrate Judge

                                     18