Colin H. Murray (159142)
  colin.murray@bakermckenzie.com
Teresa H. Michaud (296329)
  teresa.michaud@bakermckenzie.com
Alexander G. Davis (287840)
  alexander.davis@bakermckenzie.com
Anne M. Kelts (298710)
  anne.kelts@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111-3802
Telephone: +1 415 576 3000
Facsimile: +1 415 576 3099

Attorneys for Defendants
CRRC CORPORATION LTD., CRRC MA CORPORATION, CRRC QINGDAO SIFANG CO., LTD., CHINA RAILWAY INTERNATIONAL CO., LTD. and CHINA RAILWAY INTERNATIONAL U.S.A. CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SUN GROUP U.S.A. HARMONY CITY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CRRC CORPORATION LTD., <br><br> CRRC MA CORPORATION, <br><br> CRRC QINGDAO SIFANG CO., LTD., <br><br> CHINA RAILWAY INTERNATIONAL CO., LTD., and <br><br> CHINA RAILWAY INTERNATIONAL U.S.A. CO., LTD., <br><br> Defendants. | **Case No.  3:17-cv-02191-SK** <br><br> **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT CRRC CORPORATION LTD.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> Date:     April 2, 2018 <br> Time:     9:30 a.m. <br> Crtrm:    A, 15th Floor <br> Judge:    Magistrate Judge Sallie Kim <br> Trial Date: None set |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. These Diverse and Dispersed Entities Are Not A Single Enterprise ......................... 2

        1. Sun's Legal Conclusions Must Be Disregarded ............................................. 3

        2. Common Directors or Officers and Oversight by A Corporate Parent Are Insufficient to Establish Unity Of Interest ................................. 4

        3. Sun's Veil Piercing Argument Also Fails To Allege Any Facts To Establish Fraud Regarding the Corporate Form .............................................. 6

        4. Sun's Conclusory Allegations of Conspiracy Are Insufficient ...................... 7

    B. CRRC Breached No Enforceable Contractual Obligations ........................................ 7

        1. Sun's Failure to Plausibly Allege Alter Ego Liability Precludes it From Establishing a Breach of the 2014 Cooperation Agreement Based on the Conduct of Entities other than CRRC ......................................... 7

        2. The 2014 Cooperation Agreement Does Not Obligate CRRC to Submit Bids for the CHSR Project .................................................................. 8

        3. Sun's Breach of Contract Theory Based On Its "Priority and Non-Exclusive" Rights Fundamentally Misunderstands the Nature of a Third Party Bidding Agent's Alleged Right of First Refusal ...................... 10

        4. Sun Has Failed to Allege a Plausible Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing ................................................... 11

        5. Sun Has Alleged No Cognizable Damages Because CRRC Did Not Win Any CHSR Project Bids and the Agreement's Three-Year Term Has Expired .................................................................................................. 12

    C. Sun's Additional Claims Against CRRC Must Be Dismissed ................................. 13

        1. Sun's Quasi-Contract Claims for Unjust Enrichment and Promissory Estoppel Fail As a Matter of Law In Light of the Parties' 2014 Cooperation Agreement .............................................................................. 13

        2. The Declaratory Judgment Claim Is Duplicative ......................................... 14

III. CONCLUSION .................................................................................................................. 15

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

i

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# **TABLE OF AUTHORITIES**

## **CASES**

**Page Nos.**

*Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*,
    7 Cal. 4th 503 (1994) ................................................................................................................ 7

*AREI II Cases*,
    216 Cal. App. 4th 1004, 1022 (2013) ....................................................................................... 7

*Assoc. Vendors, Inc. v. Oakland Meat Co.*,
    210 Cal. App.2d 825 (1962) ...................................................................................................... 6

*Bionghi v. Metro. Water Dist.*,
    70 Cal. App. 4th 1358 (1999) .................................................................................................... 2

*Brahmana v. Lembo*,
    No. C-09-00106 RMW, 2010 U.S. Dist. LEXIS 24784
    (N.D. Cal. March 27, 2010) ...................................................................................................... 6

*Brennan v. Concord EFS, Inc.*,
    369 F. Supp. 2d 1127 (N.D. Cal. 2005) .................................................................................... 3

*Cal. Ref. Co. v. Producers Ref. Corp.*,
    25 Cal. App. 2d 104 (1938) ...................................................................................................... 9

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ..................................................................................................... 5

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) .................................................................................................................. 2

*Galang v. Wells Fargo Bank, N.A.*,
    No. 16-cv-03468-HSG, 2017 U.S. Dist. LEXIS 50789 (N.D. Cal. Apr. 3, 2017) ................... 11

*Gressett v. Contra Costa Cnty.*, No. C-12-3798 EMC,
    2013 U.S. Dist. LEXIS 70667 (N.D. Cal. May 17, 2013) ......................................................... 7

*Hickory Travel Sys., Inc. v. TUI AG*,
    213 F.R.D. 547 (N.D. Cal. 2003) ............................................................................................... 5

*IndyMac Bank, F.S.B. v. Aryana/Olive Grove Land Dev., Ltd. Liab. Co.*,
    No. EDCV 12-01494 ................................................................................................................. 9

*Kapu Gems v. Diamond Imps., Inc.*,
    No. 15-cv-03531-MMC, 2016 U.S. Dist. LEXIS 107091
    (N.D. Cal. Aug. 12, 2016) .......................................................................................................... 6

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Klein v. Chevron U.S.A.*, Inc.,
    202 Cal. App. 4th 1342, 1388 (2012) ................................................................................. 13

*Laks v. Coast Fed. Sav. & Loan Ass'n*,
    60 Cal. App. 3d 885 (1976) ................................................................................................ 14

*Long v. Postorivo*,
    No. C 07-01547 CRB, 2007 U.S. Dist. LEXIS 78386 (N.D. Cal. 2007) ........................... 3

*Macom Tech. Solutions Holdings, Inc. v. Infineon Techs. AG*,
    No. 2:16-CV-02859, 2016 U.S. Dist. LEXIS 152155 (C.D. Cal. 2016) ...................... 3, 4, 5

*Mesler v. Bragg Mgmt. Co.*,
    39 Cal.3d 290 (1985) ............................................................................................................. 2

*Nordberg v. Trilegiant Corp.*,
    445 F. Supp. 2d 1082 (N.D. Cal. 2006) ............................................................................... 3

*Patmont Motor Werks v. Gateway Marine*,
    NO. C 96-2703 TEH, 1997 U.S. Dist. LEXIS 20877 (N.D. Cal. Dec. 17, 1997) ............. 9

*Qwest Communs. Corp. v. Herakles, LLC*,
    No. 2:07-cv-00393-MCE-KJM, 2008 U.S. Dist. LEXIS 22154
    (N.D. Cal. March 20, 2008) ................................................................................................. 3

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) .............................................................................................. 2

*Sonora Diamond v. Superior Court*,
    83 Cal. App. 4th 523 (2000) ............................................................................................. 2, 4

*Spencer v. DHI Mortg. Co.*,
    642 F. Supp. 2d 1153 (E.D. Cal. 2009) ............................................................................. 11

*United States v. Best Foods*,
    524 U.S. 51 (1998) ............................................................................................................. 2, 4

iii

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

## I. INTRODUCTION

In dismissing Sun's first complaint, Judge Corley directed Plaintiff Sun Group USA ("Sun") to draft an amended complaint based on the express rights and obligations in its claimed 2014 Cooperation Agreement with Defendant CRRC Corporation Ltd. ("CRRC"), not one based on the absent terms Sun *wished* existed.[1]

Sun's Opposition to CRRC's Motion (Dkt. 77) demonstrates that Judge Corley's message has gone unheeded. Sun asks the Court to allow its First Amended Complaint ("FAC") to proceed by recognizing alleged "implied" (*i.e.*, unwritten) obligations, ignoring inconvenient express contract terms, and imputing the acts of non-contracting parties to CRRC through the disfavored doctrine of "single enterprise" liability. Based on these legal contortions (among others), Sun advances an interpretation of the 2014 Cooperation Agreement in which Sun, for its promise to do nothing in particular, is guaranteed to collect at least 6% commissions on all North American rail contracts won by any tangentially related, Chinese-government-owned manufacturer for decades to come.

Neither the law, nor the facts alleged, nor common sense supports Sun's position. No contract term requires CRRC to submit any bids for the California High Speed Rail Project ("CHSR Project"). Sun's theory that CRRC has an "implied obligation" to do so is contrary to California contract law, and if accepted would fundamentally transform the nature of the parties' agreement by requiring CRRC to submit bids for practically *every* rail-related project in California. This CRRC never agreed to do.

Moreover, no express term in the agreement governs the conduct of CRRC's distinct corporate affiliates such as CRRC MA or Qingdao Sifang. Their actions are therefore irrelevant to assessing the validity of claims against CRRC. Sun cannot argue otherwise because its FAC failed to allege facts to give rise to even a plausible basis for alter ego liability.

Finally, no express term in the 2014 Cooperation Agreement requires CRRC to give Sun "priority and non-exclusive" rights on other North American rail project bids *unless and until* CRRC chooses not to use its own resources and engages a third-party bidding agent like Sun in connection

---

[1] As the Court is likely aware, one day after CRRC filed its Motion to Dismiss Sun's First Amended Complaint, Sun added to its already extensive counsel list two additional attorneys from the one law firm whose appearance would result in Judge Corley's automatic recusal. (Dkt. 66-68).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

with those projects (which Sun does not allege CRRC to have done). Contrary to Sun's suggestion, this is not an unjust or even atypical contract arrangement—it is one in which the agent bears the risk of an unsuccessful bid (or no bid) in exchange for the enjoying the upside of a successful one.

Accordingly, the Court should enforce the terms of the 2014 Cooperation Agreement as written, refuse to impose new, unwritten obligations on CRRC, and grant the Motion to dismiss Sun's First Amended Complaint.

## II. ARGUMENT

### A. These Diverse and Dispersed Entities Are Not A Single Enterprise

Sun's claims against CRRC are based nearly entirely on the actions of other corporate entities. This lawsuit thus hinges in large part on Sun's (doomed) effort to pierce the corporate veil and impute to CRRC the acts of the other entities Sun has sued.[2] Sun's allegations, however, do not meet the high burden required to allow a court to disregard "the general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Best Foods*, 524 U.S. 51, 61 (1998); *see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."). California law incorporates this fundamental rule to allow veil piercing only in exceptional circumstances upon a finding of "an abuse of the corporate privilege." *Sonora Diamond v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). Sun does not allege any facts to even suggest that such abuse has occurred here.

To meet its high burden, Sun must plead facts to establish both (i) a unity of interest and ownership such that the separate corporate personalities no longer exist and (ii) that failure to respect the separate corporate status "would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). "[T]he corporate form will be disregarded only in **narrowly defined** circumstances and only when the ends of justice so require." *Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290, 301 (1985) (emphasis added).

---

[2] These co-defendants include CRRC MA Corporation ("CRRC MA") and CRRC Qingdao Sifang Co. Ltd. ("Qingdao Sifang").

2

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

### 1. Sun's Legal Conclusions Must Be Disregarded

Sun's first response in support of its attempt to treat multiple distinct entities as one is to shirk its responsibility to plead *facts* supporting corporate veil piercing by arguing that it has pled the necessary legal *conclusions*. Opp. at 12;[3] *see also* Opp. at 13, 15 (quoting FAC ¶¶ 63, 64). Oddly, Sun suggests that it need not allege facts to establish its veil piercing or conspiracy arguments because "these are not causes of action, but evidentiary constructs—descriptions of some ways Plaintiff intends to prove its claims" and that CRRC's attack on the FAC's conclusory veil piercing allegations should have been brought as a motion to strike. Opp. at 12.

This is incorrect. *Twombly*, *Iqbal*, and their progeny instruct that legal conclusions are not enough—Sun must allege "underlying facts" that, if true, are sufficient to pierce the corporate veil. "'Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff **must allege specific facts supporting both of the elements of alter ego liability.**" *Macom Tech. Solutions Holdings, Inc. v. Infineon Techs. AG*, No. 2:16-CV-02859 (PLAx), 2016 U.S. Dist. LEXIS 152155, at *41-*42 (C.D. Cal. 2016) (quoting *Gerritsen v. Warner Bros. Entm't, Inc.*, 112 F. Supp. 3d 1011, 1942 (C.D. Cal. 2015) (emphasis added); *See also, e.g.*, *Qwest Communs. Corp. v. Herakles, LLC*, No. 2:07-cv-00393-MCE-KJM, 2008 U.S. Dist. LEXIS 22154, at *11 (N.D. Cal. March 20, 2008) ("Conclusory allegations are not sufficient to support an alter ego finding.").

Many courts have dismissed insufficiently plead alter ego allegations like those here. *See Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1102 (N.D. Cal. 2006) (granting motion to dismiss alter ego-based claim alleging "routine control" by parent entity); *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005) (granting motion to dismiss alter ego theory based on allegations of "dominion and control"); *Long v. Postorivo*, No. C 07-01547 CRB, 2007 U.S. Dist. LEXIS 78386, at *4-*5 (N.D. Cal. 2007) (granting motion to dismiss alter ego theory based on allegations of "close coordination"). This Court should do the same and reject Sun's conclusory

---

[3] Sun quotes an apparent typo in CRRC's Motion to Dismiss to suggest that CRRC admitted that Sun's veil piercing allegations were-well plead. *See* Opp. at 12. For the avoidance of doubt, CRRC confirms that this was merely an obvious and inadvertent omission of the word "not" in its brief and apologizes to the Court for the confusion. *Compare* Motion to Dismiss filed by CRRC MA *et al.* at 9 ("This bare recitation of the legal standard does ***not*** suffice under federal pleading standards.") (emphasis added). Sun's citation to this typographical error should be disregarded.

3

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

allegations.

### 2. Common Directors or Officers and Oversight by A Corporate Parent Are Insufficient to Establish Unity Of Interest

The few facts that Sun does offer are insufficient to allege the required unity of interest. The only facts Sun alleges are that (a) "CRRC MA serves as CRRC Group's North America 'regional branch'", (b) two directors of CRRC MA also served as directors of CRRC (although it is not clear if they even served at the same time), (c) CRRC MA is a joint venture owned primarily by and assisted and authorized by CRRC, and (d) CRRC MA submitted CRRC's financial statements as part of CRRC MA's bid to the Massachusetts Bay Transportation Authority ("MBTA"). *See* Opp. at 13-15.[4]

Sun faces a high burden to allege facts demonstrating a unity of interest. *Macom*, 2016 U.S. Dist. LEXIS 152155, at *41. Indeed, the Supreme Court has explained unambiguously that allegations mirroring Sun's are insufficient: "it cannot be enough . . . that **dual officers and directors made policy decisions and supervised activities** [of the subsidiary]." *Best Foods*, 524 U.S. at 70 (emphasis added). "In the Ninth Circuit, evidence showing only 'an **active parent corporation involved directly in decision-making** about its subsidiaries' holdings, but each entity observe[s] all of the corporate formalities necessary to maintain corporate separateness' is not enough to demonstrate unity of interest." *Macom*, 2016 U.S. Dist. LEXIS 152155, at *41-*42 (quoting *Ranza*, 793 F.3d at 1073) (emphasis added). California law is similarly clear: "[a]s a practical matter, the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect **taken over the performance of the subsidiary's day-to-day operations** in carrying out that policy." *Sonora Diamond*, 83 Cal. App. 4th at 542 (emphasis added).

Accordingly, courts have rejected veil piercing allegations even where the degree of parent

---

[4] Sun's assertion that "CRRC admits that it was CRRC, *not CRRC MA*, that actually bid on the Massachusetts Bay Transit Authority Project" is wrong. Opp. at 2 & n.1. For the avoidance of doubt, CRRC did not and does not admit that CRRC submitted the bid for the MBTA project (nor does Sun allege this). CRRC inadvertently failed to include "MA" in the quoted statement from Sun, which should read "Sun's alleged work relating to CRRC *MA's* bid to the MBTA . . . ." *Compare* Opp. at 2 n.1 (citing CRRC Mot. at 21 n.18).

4

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

corporation control was much more extensive than the standard corporate relationship between CRRC and its affiliates alleged in the FAC. "The Ninth Circuit has also found no alter ego relationship 'where the parent company guaranteed loans for the subsidiary, reviewed and approved major decisions, placed several of its directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions.'" *Macom*, 2016 U.S. Dist. LEXIS 152155, at *42 (quoting *Doe v. Unocal Corp.* 248 F.3d 915, 928 (9th Cir. 2001)); *accord Hickory Travel Sys., Inc. v. TUI AG*, 213 F.R.D. 547, 554 (N.D. Cal. 2003). This Court should do the same.

Most directly, Sun does not allege that CRRC disregarded any corporate formalities. To the contrary, Sun specifically alleges that corporate formalities *were followed* by CRRC formally issuing and providing to the MBTA "[b]oard minutes authorizing the CRRC MA joint venture and authorizing and directing CRRC MA agents to take all actions necessary to complete the Massachusetts proposal." FAC ¶ 71. Sun also expressly alleges that CRRC, CRRC MA, Qingdao Sifang, CRI, and CRI USA are each separate corporate entities. FAC ¶¶ 2-6. Because Sun's own allegations make clear that these entities are separate and that the corporate form was respected, Sun's few factual allegations of common ownership, dual officers and directors, and involvement by CRRC in the decision-making of CRRC MA and/or Qingdao Sifang are insufficient for disregarding the corporate form.

Finally, Sun's allegation that CRRC submitted its own financial statements as part of CRRC MA's bid for the MBTA does not save its case. "[C]onsolidating the activities of a subsidiary into the parent's reports is a common business practice [and] is not enough … to justify the conclusion that [the parent corporation] would perform the activities of its subsidiaries were they unavailable to act as its 'representative'." *Doe v. Unocal Corp.,* 248 F.3d 915, 929 (9th Cir. 2001). The allegation of a reference to CRRC MA as a "regional branch" is similarly unavailing. *See Hickory*, 213 F.R.D. at 554 (concluding that a parent corporation's reference to subsidiaries as divisions and not separate companies, reports of the subsidiaries' earnings in annual statements, boasts of corporate integration, and decisions about restructuring the business of some of those subsidiaries "***even in combination***, do not suffice to make a prima facie case of alter ego relationships") (emphasis added). As in these cases, Sun's alter ego allegations in its FAC are legally insufficient.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

5

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

### 3. Sun's Veil Piercing Argument Also Fails To Allege Any Facts To Establish Fraud Regarding the Corporate Form

Even had Sun adequately alleged a unity of interest (which it has not), it still could not pierce the corporate veil because the FAC fails to allege facts to support a finding that "honoring the corporate shell would promote a fraud or injustice." *Brahmana v. Lembo*, No. C-09-00106 RMW, 2010 U.S. Dist. LEXIS 24784, at *19 (N.D. Cal. March 27, 2010) (granting motion to dismiss claims based on veil piercing allegations). This would require a showing, not present here, of "some conduct amounting to bad faith." *Kapu Gems v. Diamond Imps., Inc.,* No. 15-cv-03531-MMC, 2016 U.S. Dist. LEXIS 107091, at *11-*12 (N.D. Cal. Aug. 12, 2016) (citing *Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App.2d 825, 842 (1962)).

There are no allegations that the corporate form has been used to defraud creditors. There are no allegations that CRRC MA and Qingdao Sifang were undercapitalized. And there are no allegations that CRRC, CRRC MA, and Qingdao Sifang commingled funds or failed to keep separate books and records. Instead, Sun merely offers the legal conclusion in its Opposition that "an inequitable result would occur if the acts in question are treated as those of one corporation alone" because Sun would be unable to succeed on its meritless claims if it could not impute the actions of CRRC MA and Qingdao Sifang to CRRC. Opp. at 15.

As explained above, this unsupported legal conclusion (which relies on circular logic) is insufficient. Without alleging any *facts* demonstrating that CRRC used these entities as mere shells to defraud creditors, Sun's attempt to pierce the corporate veil must fail. *See, e.g., Kapu Gems*, 2016 U.S. Dist. LEXIS 107091, at *11-*12 (dismissing claims premised on piercing corporate veil and rejecting argument that it would be inequitable to prevent plaintiff from recovering against alleged alter egos where plaintiff did not allege bad faith); *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 842 (1962) ("[I]t is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof of an 'inequitable result.'"); *Brahmana*, 2010 U.S. Dist. LEXIS 24784, at *19 (dismissing claims based on alter ego where the complaint did not "contain factual allegations showing that honoring the corporate shell would promote fraud or injustice"). Sun's claims against CRRC must

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

6

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

rise and fall based on the actions of CRRC alone.

### 4. Sun's Conclusory Allegations of Conspiracy Are Insufficient

Sun's conspiracy theory is equally flawed. As with the alter ego claims, Sun's conclusion that a conspiracy exists must be disregarded because the FAC's allegations do not contain "the character and type of facts and circumstances upon which [Sun relies] to establish the conspiracy." *AREI II Cases*, 216 Cal. App. 4th 1004, 1022 (2013); *see also*, *e.g., Gressett v. Contra Costa Cnty.*, No. C-12-3798 EMC, 2013 U.S. Dist. LEXIS 70667, at *44 (N.D. Cal. May 17, 2013) ("After *Twombly* and *Iqbal*, a complaint may not simply conclude that a conspiracy existed, but rather must plead facts from which the existence of a conspiracy may reasonably be inferred.").

Indeed, the only facts purportedly supporting the conspiracy claim are insufficient as a matter of law. Sun alleges that "many of these entities (CRRC, CRRC Sifang, and CRI) were members of at least two Chinese High Speed Rail 'teams' where CRI was designated as the leader." Opp. at 16. Sun also claims, "on information and belief" that CRI and CRRC were, respectively, "the 'railway company headquarters' international company'" and the "US company" referenced in CRRC's September 27, 2016 email allegedly suggesting that "these entities now essentially controlled CHSRP bidding." Opp. at 16 (quoting FAC ¶ 56). Even if true, this cannot save Sun's conspiracy claim because a civil conspiracy requires, among other things, an agreement to conspire and specific, wrongful overt acts in furtherance of that purpose. *E.g.*, *Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal. 4th 503, 511 (1994). Merely acting as a team to submit bids for the CHSR Project is neither illegal, nor improper, nor wrongful. Quite the contrary, this is a standard and widely-used business practice. Sun's conspiracy claim, like its attempt to pierce the corporate veil, must be dismissed. CRRC (and the other entities) must be judged on their individual actions alone.

### B. CRRC Breached No Enforceable Contractual Obligations

#### 1. Sun's Failure to Plausibly Allege Alter Ego Liability Precludes it From Establishing a Breach of the 2014 Cooperation Agreement Based on the Conduct of Entities other than CRRC

The only parties to the 2014 Cooperation Agreement are CRRC's predecessor, CNR Company Ltd., and Sun. For the reasons expressed in the opening Motion and further clarified in

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

7

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Part II.A, above, Sun has failed to plausibly allege facts to allow the Court to impute the actions of other entities such as Qingdao Sifang or CRRC MA to CRRC for purposes of assessing its performance of the 2014 Cooperation Agreement. For example, CRRC MA's bid on the MBTA project can have no bearing on CRRC's liability under the 2014 Cooperation Agreement. Thus, the Court should grant the Motion to dismiss the FAC's claims asserted against CRRC—Counts One, Two, Three, Seven, and Eight—to the extent they are based on the actions of entities other than CRRC itself.

### 2. The 2014 Cooperation Agreement Does Not Obligate CRRC to Submit Bids for the CHSR Project

Sun's breach of contract and anticipatory breach claims fail because they proceed from a faulty premise. Notwithstanding Sun's claim to the contrary, the 2014 Cooperation Agreement does not contain an affirmative obligation by CRRC to submit bids for the CHSR Project. To be sure, the parties *could* have drafted such an agreement, but they did not. Instead, the agreement simply provides that, *if* CRRC submits such a bid, *then* Sun will be its exclusive bidding agent. This contingency in turn creates the *possibility* of generating cooperation earnings should the efforts result in an *actual* contract award. The FAC makes clear that CRRC submitted no such bids. And the agreement's three-year term has now expired. Thus, CRRC has not breached the agreement, cannot do so in the future, and Sun has not suffered any damages.

Implicitly recognizing this dilemma, the Opposition now for the first time asks the Court to read into the parties' agreement a new "implied obligation" emanating from language in the preamble to the 2014 Cooperation Agreement stating that "the Parties hereby reach the following consensus in order to ensure successful bidding for the California High Speed Rail Project." Opp. 16:18-24. This language, self-evidently, does not create an affirmative obligation on the part of CRRC to submit CHSR Project bids. Instead, it is merely an expression of what the parties *hoped* would happen (i.e., a successful bid).

There is no legal basis to read new affirmative obligations into the parties' agreement. California law is clear that the Court's role is limited only to "ascertain[ing] and declar[ing] what is in terms or in substance contained therein, **not to insert what has been omitted**" based on one

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

8

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

party's self-serving allegations. *IndyMac Bank, F.S.B. v. Aryana/Olive Grove Land Dev., Ltd. Liab. Co.*, No. EDCV 12-01494 VAP (DTBx), 2013 U.S. Dist. LEXIS 201377, at *13 (C.D. Cal. Sep. 4, 2013) (quoting CAL. CODE CIV. PROC. § 1858) (emphasis added). The Court should reject Sun's request to "insert what has been omitted" into the 2014 Cooperation Agreement.

Moreover, California courts have long rejected attempts to infer binding contractual obligations from generalized statements in the "whereas" clauses of contract preambles like the one on which Sun relies. For example, where a contract set forth a party's "desire[] to have . . . oil . . . refined in [the counterparty's] refinery," the court held that such language did not constitute a "promise or agreement to furnish . . . oil to be refined," because such an alleged obligation was "too indefinite and uncertain" to be enforced. *Cal. Ref. Co. v. Producers Ref. Corp.*, 25 Cal. App. 2d 104, 106 (1938). The court observed that it would have been "very easy to have expressed th[e] promise in a direct statement . . . [but that n]o such agreement appear[ed] in the instrument." *Id.* More recently, a court in this district rejected a breach of contract claim arising out of language in the preamble of the parties' contract, noting that such language was not part of "an actual covenant to which [the defendant] agreed to be bound." *Patmont Motor Werks v. Gateway Marine*, NO. C 96-2703 TEH, 1997 U.S. Dist. LEXIS 20877, at *16 (N.D. Cal. Dec. 17, 1997). So too here. The preamble statement was a mere wish or expectation—not a contractual commitment.

In addition to being contrary to law, Sun's interpretation is also entirely unworkable. It has no limiting principle were the Court to attempt to apply the "implied obligation" in practice. As the Opposition itself claims, there are many government contracts bearing some connection to the CHSR Project. Opp. 8:1-3. But the FAC does not explain *which* opportunities CRRC is allegedly obligated to pursue under its apparent implied obligations. Is it *all* Requests For Proposal announced on the CHSR Project website? Is it only those relating to the actual high speed line between San Francisco and Los Angeles? Or does CRRC's alleged implied obligation also cover the expanded routes connecting Sacramento and San Diego? Much like the alleged obligation that was "too indefinite and uncertain" in *California Refining Co.*, Sun's "implied obligation" theory provides no method for answering basic questions about how to apply and enforce such this supposed duty. Instead, Sun's interpretation gives it an unreasonable and open-ended claim to payment effectively for any project

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

9

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

related in any way to trains in California for which CRRC chooses not to submit a bid.

Finally, Sun's argument has no basis in economic reality. As Sun would have it, by signing the 2014 Cooperation Agreement, CRRC implicitly bound itself to bid on any and all available CHSR rail projects—even those for which it has not interest or no realistic shot at winning or performing—all for the apparent purpose of increasing Sun's chances of reaping windfall cooperation earnings. All the while, Sun is not required to do *anything at all* under the 2014 Cooperation Agreement to support CRRC's bidding efforts. This makes no sense. The Court should reject Sun's "implied obligation" theory of contract breach and grant the Motion to dismiss the First and Second Counts of the FAC.

### 3. Sun's Breach of Contract Theory Based On Its "Priority and Non-Exclusive" Rights Fundamentally Misunderstands the Nature of a Third Party Bidding Agent's Alleged Right of First Refusal

The Opposition asks the Court to interpret paragraph 3 of the 2014 Cooperation Agreement as providing Sun with an agent's "right of first refusal" to participate in all rail bids submitted by CRRC to North America transportation agencies. Opp. 9-12. CRRC does not concede that the parties' agreement provides Sun with such a right. However, even accepting Sun's premise for purposes of this Motion, Sun's understanding of its alleged first refusal rights is unreasonable and should be rejected as a basis for claiming a breach of the 2014 Cooperation Agreement.

Sun defines a "right of first refusal" as follows: "whenever an opportunity is refused by the first party owning that right, a second party is then allowed to become a partner." Opp. 11 n.8 (emphasis omitted). As this definition makes clear, a right of first refusal is triggered only when there is an "opportunity" to refuse in the first place. The opportunity in this case is to act as CRRC's third-party bidding agent. However, if CRRC has no need for third-party services in connection with a particular rail bid, then there is no opportunity CRRC has to offer, and therefore nothing for Sun to refuse. This reading is further supported by the *express* language entitling CRRC to rely on its own "respective resources" with respect to non-CHSR Project bids in North America. 2014 Cooperation Agreement ¶ 3. As the FAC does not allege that CRRC used any *other* third-party bidding agents in connection with any such bids, there is no basis on which to conclude that Sun has plausibly alleged a breach of paragraph 3 of the 2014 Cooperation Agreement to support its breach

10

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

of contract and related claims.

### 4. Sun Has Failed to Allege a Plausible Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Sun's cause of action for breach of the implied covenant of good faith and fair dealing must be dismissed because Sun has failed to plausibly allege that CRRC breached any terms of the parties' 2014 Cooperation Agreement as written. The "implied covenant of good faith and fair dealing is limited **to assuring compliance with the express terms of the contract**, and cannot be extended to create obligations not contemplated by the contract." *Spencer v. DHI Mortg. Co.*, 642 F. Supp. 2d 1153, 1165 (E.D. Cal. 2009) (emphasis added); *see also Galang v. Wells Fargo Bank, N.A.*, No. 16-cv-03468-HSG, 2017 U.S. Dist. LEXIS 50789, at *13 (N.D. Cal. Apr. 3, 2017) ('[T]o state a claim for breach of the implied covenant of good faith and fair dealing, Plaintiff must identify the specific contractual provision that Defendant frustrated."). The covenant creates no independently enforceable rights, but is instead limited to instances where one contracting party claims that the other has unfairly frustrated its right to receive "the benefits of the agreement actually made." *Id.*

As explained above, and as Sun has never disputed, the 2014 Cooperation Agreement does not require Sun to do anything at all to support a bid by CRRC for the CHSR Project. In exchange for its promise to do nothing, the benefit of Sun's bargain was limited to the chance of reaping an enormous windfall *if* CRRC submitted a successful bid during a specific three-year window and *if* that bid was successful. Likewise, and again as Sun has never disputed, the 2014 Cooperation Agreement does not require Sun to do anything with respect to non-CHSR Project bids in North America. In exchange for this promise to do nothing, the benefit of Sun's bargain was limited— under Sun's alleged right of first refusal theory—to ensuring that CRRC would turn to it before any other *third-party* bidding agent during a specific three-year window. None of CRRC's alleged conduct violated the "express terms" of the 2014 Cooperation Agreement, nor did it unfairly deprive Sun of its limited bargained-for benefits. This is sufficient to grant the Motion to dismiss Count Three of the FAC.

Finally, the Opposition makes clear that Sun's implied covenant claim is based on the same alleged conduct that supports its breach of contract claims. As such, Sun's claim is superfluous and

11

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

the Court may disregard it as a matter of law. *See Bionghi v. Metro. Water Dist.*, 70 Cal. App. 4th 1358, 1370 (1999) ("[I]f the plaintiff's allegations of breach of the covenant of good faith do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.") (citation omitted).

> 5. **Sun Has Alleged No Cognizable Damages Because CRRC Did Not Win Any CHSR Project Bids and the Agreement's Three-Year Term Has Expired**

Just as it failed to allege any conduct by CRRC that constituted a breach of the 2014 Cooperation Agreement *as written*, Sun has likewise failed to allege that it suffered any damages. The Opposition's arguments to the contrary should be rejected for the following reasons.

First, even accepting for purposes of this Motion that the "Early Train Operator" contract referenced in CRRC's Request for Judicial Notice is only one of many CHSR Project contracts, Sun fails to acknowledge that its alleged exclusivity rights under the 2014 Cooperation Agreement (including its opportunity to reap cooperation earnings from successful CRRC bids) have long since expired. The parties' agreement remained in effect for "a period of three years starting from the first day of work on the Project." 2014 Cooperation Agreement ¶ 5. The FAC alleges that CRRC and Sun met in San Francisco, California on May 11, 2014 to participate in meetings arranged by Sun with various government officials regarding the CHSR Project. FAC ¶ 36. Thus, with "work" beginning *at the latest* on May 11, 2014, the 2014 Cooperation Agreement expired on May 11, 2017.[5] The FAC does not allege that CRRC successfully bid on—or even failed to bid on—any

---

[5] Paragraph 5 further states that "if the Project has not been completed upon expiration of the three-year term, the term shall continue until the Project ends." 2014 Cooperation Agreement ¶ 5. While the term "Project" is undefined, the *only* reasonable interpretation is that it refers to any CHSR Project bids by CRRC which are *currently pending* at the expiration of the three year term. Because there were no such pending bids on May 11, 2017, the agreement expired. Sun cannot credibly argue that the term "Project" refers *generally* to the California High Speed Rail Project as a whole because to do so would lead to absurd results. The California High Speed Rail Project involves an 800-mile high speed rail line from Sacramento to San Diego, with 24 stations. There is no timeline that even estimates when this entire project will "end[]." Phase I is not expected to be completed until at earliest 2029. There is no reasonable basis to infer that the parties somehow agreed that the three-year contract duration would actually be extended for decades into the 21st century, nor does the FAC contain such an allegation.

Moreover, interpreting "Project" broadly would doom Sun's claims from the outset by stripping it of *any* contractual rights. As noted above, the three-year term began to run from the "first day of work

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

12

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

CHSR Project contracts during this three-year period other than the Early Train Operator contract. Thus, Sun's claim that it may be contractually entitled to cooperation earnings for *future* CHSR Project contracts has no merit.

Second, Sun offers no authority to support its claim that it can recover *in contract* for benefits conferred on CRRC even though the parties' agreement specifically states that Sun would "bear its respective expenses." 2014 Cooperation Agreement ¶ 1. Such a theory, if cognizable at all, would necessarily sound in quasi-contract. But quasi-contract claims cannot proceed where, as here, Sun alleges that the parties' relationship is governed by an enforceable agreement. *See, e.g.*, *Klein v. Chevron U.S.A.*, Inc., 202 Cal. App. 4th 1342, 1388 (2012) ("A plaintiff may not . . . **pursue** or recover on a quasi-contract claim if the parties have an enforceable agreement . . . .") (emphasis added).

C. **Sun's Additional Claims Against CRRC Must Be Dismissed**

1. **Sun's Quasi-Contract Claims for Unjust Enrichment and Promissory Estoppel Fail As a Matter of Law In Light of the Parties' 2014 Cooperation Agreement**

Sun cannot maintain quasi-contract claims given that the 2014 Cooperation Agreement is alleged to govern the parties' relationship with respect to the subject matter alleged in the FAC. *Klein*, 202 Cal. App. 4th at 1388. This is sufficient to grant the Motion to dismiss Counts Seven and Eight of the FAC. *See also* CRRC's Mot. to Dismiss (Dkt. 64) at 17-21 (setting forth additional legal grounds in support of motion to dismiss unjust enrichment and promissory estoppel causes of action).

Further, Sun's promissory estoppel claim fails to satisfy its burden to identify any *unambiguous* promise made by CRRC to Sun. Indeed, the Opposition effectively concedes that the phrase "priority and non-exclusive partners" in the 2014 Cooperation Agreement is ambiguous given the two interpretations offered by the parties in this litigation. Opp. 10:5-7. None of the cases cited in the Opposition supports Sun's assertion that a party can maintain a promissory estoppel claim

---

on the Project." The FAC alleges that Sun had performed "work" on CHSR Project since at least 2011. FAC ¶ 27. Under this reading, the 2014 Cooperation Agreement would have expired more than a decade *before* it was executed. To avoid these results, the term "Project" must refer to any CHSR Project bids actually made by CRRC which were *currently pending* at the expiration of the three year term. There are no such bids alleged in the FAC.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

13

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

while at the same time acknowledging that the alleged promise at issue is ambiguous. *See* Opp. 23:19-24:9.  Similarly, Sun's claim that CRRC promised to submit bids on all CHSR Project contracts during the three-year term of the 2014 Cooperation Agreement is inherently ambiguous, as it rests on a theory of an "implied obligation" deriving from general language in the agreement's preamble that contains no such promise.  *See* Opp. 17:9-12; *See Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 891-93 (1976) (affirming dismissal of promissory estoppel claim where contract terms did not demonstrate a clearly ascertainable promise and were contingent on further negotiations and actions of third party).  For these separate reasons, Count Eight should be dismissed as a matter of law.

### 2. The Declaratory Judgment Claim Is Duplicative

As explained in CRRC's opening motion, Sun's Ninth Cause of Action for declaratory relief should be dismissed because it is not an independent cause of action under California law and is duplicative of the substantive claims for relief set forth in the FAC.  CRRC's Mot. to Dismiss (Dkt. 64) at 21.

The Opposition nevertheless claims that two aspects of its declaratory relief claim will not necessarily be resolved by Sun's other causes of action.  This contention has no merit.  The first aspect is whether Sun is entitled to at least 6% commission of any future bids awarded to CRRC for North American rail contracts.  Opp. 25.  Sun has sought such future commissions as consequential damages arising out of its breach of contract and intentional interference claims.  *See* FAC, Prayer for Relief ¶ B.  Thus, the Court will have to confront and resolve this issue, including the date of expiration of the 2014 Cooperation Agreement, in resolving Sun's substantive claims (to the extent they can survive the instant motions to dismiss).

The second aspect—whether a declaratory judgment rendered by this Court would be binding on CRRC and its successors and assigns—should be rejected out of hand because it describes nothing more than an empty tautology: according to Sun, its declaratory judgment claim presents a novel issue of its enforceability because enforceability issues must be addressed in rendering a declaratory judgment.  This issue has nothing to do with the 2014 Cooperation Agreement or any of the parties' substantive claims and defenses in this litigation.  As Sun's circular logic cannot salvage

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

14

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

its otherwise duplicative and legally improper declaratory relief claim, the Court should dismiss Count Nine of the FAC.

### III.   CONCLUSION

For the foregoing reasons, Defendant CRRC respectfully requests that the Court grant this motion, dismiss all claims against it with prejudice, and award any and all other appropriate relief.

Dated: February 16, 2018                          **BAKER & McKENZIE LLP**

By:  /s/ Teresa H. Michaud
         Teresa H. Michaud
Attorneys for Defendants
CRRC CORPORATION LTD., CRRC MA CORPORATION, CRRC QINGDAO SIFANG CO., LTD., CHINA RAILWAY INTERNATIONAL CO., LTD. and CHINA RAILWAY INTERNATIONAL U.S.A. CO., LTD.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

15

Case No. 3:17-cv-02191-SK
REPLY MEMO IN SUPPORT OF DEF CRRC CORP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT