UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN GROUP U.S.A. HARMONY CITY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CRRC CORPORATION LTD, <br><br> Defendant. | Case No. 17-cv-02191-SK <br><br> **ORDER REGARDING APPLICATION OF HAGUE CONVENTION** <br><br> Regarding Docket Nos. 132, 135, 144 |

Defendant CRRC Corporation Ltd ("Defendant") argues that Plaintiff Sun Group U.S. A. Harmony City, Inc. ("Plaintiff") must submit its request for documents located in China in accordance with the procedures proscribed by the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"). Plaintiff argues that Defendant must provide documents pursuant to the Federal Rules of Civil Procedure and that the Hague Convention does not apply here.[1]

The Court may regulate the conduct of discovery and require the use of the Hague Convention procedures. *See St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1160 (D. Or. 2015) (citing *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987)); *see also Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 1928184, at *1 (N.D. Cal. Mar. 27, 2015) ("When a conflict exists between the discovery authorized under the Federal Rules of Civil Procedure and sovereign interests implicated by such discovery, a court may direct parties to conduct discovery under the Hague Convention. . . ."). In determining whether to require a party to follow the Hague Convention protocol to obtain

---

[1] The Court GRANTS Plaintiff's and Defendant's requests to file additional evidence and briefs. (Dkt. Nos. 135, 144.)

discovery requires "scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective." *Aerospatiale*, 482 U.S. at 544.

The parties agree that the determination of whether to require the application of the Hague Convention procedures involves a two-step inquiry. First, Defendant must prove that Chinese law bars it from producing the discovery that Plaintiff seeks. *EFG Bank AG v. AXA Equitable Life Ins. Co.*, 2018 WL 1918627, at *1 (S.D.N.Y. Apr. 20, 2018). Second, Defendant must demonstrate that the particular facts of this case, including the sovereign interests at stake, warrant the requiring the application of the Hague Convention. *Aérospatiale*, 482 U.S. at 544.

**A.    Whether Chinese Law Prohibits Defendant from Providing Documents Located in the People's Republic of China.**

Defendant argues that Article 277 of the Chinese Civil Procedure Law bars it from collecting and producing documents located in the People's Republic of China ("PRC" or "China") unless it complies with the procedures under the Hague Convention.

Article 277 provides the following:

> Request for and to provide judicial assistance shall be made through channels prescribed by international treaties concluded or acceded to by the People's Republic of China; or in the absence of such a treaty, shall be made through diplomatic channels.
>
> A foreign embassy or consulate to the People's Republic of China may serve process on and investigate and collect evidence from its citizens but shall not violate the laws of the People's Republic of China and shall not take compulsory measures.
>
> Except for the circumstances in the preceding paragraph, no foreign authority or individual shall, without permission from the competent authorities of the People's Republic of China, serve process or conduct investigation and collection of evidence within the territory of the People's Republic of China.

(Dkt. 132-12 (Declaration of Xiaoyi Chen), ¶ 5.) Defendant's Legal Expert, Jinhua Wei, is a lawyer who has practiced law in the PRC since 2004, and he opines that parties requesting evidence for civil litigation in the United States must proceed through the Hague Convention procedures for documents located in the PRC and no person, organization or institution may provide evidence at his, her or its own volition for use in civil proceedings abroad. (Dkt 132-13 (Declaration of Jinhua Wei), ¶¶ 1, 8(b). 8(c).) Wei explains that Article 277 prohibits foreign

2

entities or individuals from serving documents, investigating and/or conducting discovery in the PRC. (*Id.*, ¶ 10.)[2] Defendant states that because the Chinese government has a controlling ownership interest in Defendant, Defendant does not have the discretion to violate Chinese law. (Dkt. 132-12, ¶ 4.)

Defendant wrote to the Chinese Ministry of Justice and asked the following question:

> Since you are the central organ designated by China under the Hague Evidence Convention, CRRC would like to learn from your office that whether [*sic*] CRRC can directly produce the above-mentioned CRRC's documents located in the territories of China to the U.S. Court and [Plaintiff] Sun Group without abiding by the stipulated path(s) in the Hague Evidence Convention?

(Dkt. 134-2 (Reply Declaration of Teresa H. Michaud, Ex. A).) In response, the International Legal Cooperation Center of the People's Republic of China Ministry of Justice stated in a letter dated August 16, 2019:

> As provided by the Civil Procedure Law of the People's Republic of China, any foreign judicial department(s) under international treaties to collect evidence within Chinese territories shall be conducted through channels prescribed by the rules of the international treaty . . . .

(Dkt. 132-2 (Declaration of Teresa H. Michaud, Ex. A.).) The letter further states that

> When a foreign country intends to propound discovery in the PRC, it shall submit its request to the Ministry of Justice of the People's Republic of China through the channels in accordance to the rules set forth in the Evidence Convention.

(*Id.*)

Plaintiff argues that Defendant has not demonstrated that Article 277 bars the production of documents located in China. Instead, Plaintiff contents that Article 277 merely prohibits non-Chinese persons from physically performing tasks in China. Plaintiff submits a declaration from its expert, Donald J. Lewis, a professor of Chinese and Hong Kong law. (Dkt. 133-2.) Lewis states that Defendant's voluntary compliance with a discovery order does not implicate or violate

---

[2] An attorney practicing law in the PRC submitted a declaration in another case, *Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 249 (S.D.N.Y. 2010), in which the attorney opined that pursuant to Article 263, the former identical version of Article 277, complying with a discovery request to produce documents located in the PRC would violate China's Civil Procedure Law.

3

Article 277. (Dkt. 133-2, ¶ 7.) Plaintiff does not submit any evidence to address or contest the letter from the Chinese Ministry of Justice.

In light of Wei's declaration and the letter by the Chinese Ministry of Justice on this specific issue, the Court finds that Defendant has demonstrated that producing documents located in the PRC in response to Plaintiff's discovery requests would violate Article 277. Therefore, the Court will proceed to the second part of the inquiry.

## B. Whether Plaintiff is Required to Obtain Documents Located in the PRC Through the Hague Convention.

Defendant must demonstrate that the particular facts of this case, including the sovereign interests at stake, warrant the application of the Hague Convention. The Supreme Court has endorsed the balancing test set forth in the Restatement of Foreign Relations Law of the United States to guide this analysis. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) (citing *Aerospatiale*, 482 U.S. at 544 n.28). Under that test, courts consider the following five factors:

> the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Richmark*, 959 F.2d at 1475 (citing *Aérospatiale,* 482 U.S. at 544 n. 28). These factors are not exhaustive. *Id*. In addition, courts consider the extent and nature of the hardship on the responding party. *Id*.

### 1. First and Second Factors.

The first two factors, the relevance or importance of the discovery requests and the generalized nature of the requests, weigh in favor of requiring compliance with the Hague Convention procedures. "Where the outcome of litigation does not stand or fall on the present discovery order, or where the evidence sought is cumulative of existing evidence, courts have generally been unwilling to override foreign [blocking] laws." *Richmark*, 959 F.2d at 1475 (internal quotation marks and citation omitted). On the other hand, "[w]here the evidence is

4

1 directly relevant, . . . we have found this factor to weigh in favor of disclosure. *Id.*

2 Additionally, "[g]eneralized searches are discouraged." *Id*. Here, Plaintiff's discovery requests are very broad and go beyond what is necessary to litigate the disputed issues in this case. For example, despite the fact that remaining claims concern an agreement made in April 2014, Plaintiff defines the "relevant time period" for its requests for production of documents as January 1, 2010 to the present and defines the relevant agreements to include agreements signed in 2011 and 2013. (Dkt. 132-4.) Additionally, despite the fact that the Court held that Plaintiff only pled facts sufficient to allege that CRRC MA is the *alter ego* of Defendant, Plaintiff defines "CRRC Entities" to include Defendant, CRRC MA, CRRC Sifang America, CRRC Qingdao Sifang, TRC, and CRRC Tangshan and requests documents related to the corporate structure of all of these entities. (*Id.*)

### 2. Third Factor.

The third factor, the location of the evidence, also weighs in favor of the requiring use of Hague Convention procedures to the extent the responsive documents are in the PRC. *Richmark*, 959 F.2d at 1475 ("The fact that all the information to be disclosed . . . are located in a foreign country weighs against disclosure . . .").

### 3. Fourth Factor.

The fourth factor, the availability of alternative means of securing the information, weighs in favor of requiring compliance with the Hague Convention procedures as well. The Ninth Circuit requires that "the alternative means must be 'substantially equivalent' to the requested discovery." *Id.* Here, Plaintiff has propounded discovery requests on Defendant's subsidiary CRCC MA. Plaintiff may be able to obtain a substantial portion of its requested documents from CRCC MA. Moreover, although using the Hague Convention procedures may cause some delay, it is not yet clear whether it would be effective. *See Salt River Project Agric. Improvement & Power Dist. v. Trench France SAS*, 303 F. Supp. 3d 1004, 1008 (D. Ariz. 2018) (finding use of Hague Convention procedures to be a substantially equivalent alternative). However, if Plaintiff is not actually able to obtain documents necessary to litigate its claims, then this factor would shift towards favor of disclosure through the Federal Rules of Civil Procedure.

### 4. Fifth Factor.

The fifth factor, the balancing of national interests, is the most important factor. *Richmark*, 959 F.2d at 1476. Courts "must assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would 'affect important substantive policies or interests' of either the United States or the PRC." *Id*. at 1476 (quoting *Restatement (Third) of Foreign Relations Law* § 442 comment c). The United States has a "substantial" interest in "vindicating the rights of American plaintiffs," *id*. at 1477, and an "overriding interest in the just, speedy, and inexpensive determination of litigation in [its] courts." *Aerospatiale*, 482 U.S. at 542-43 (internal quotation marks and citation omitted). However, this is a generalized interest that would be present in any civil litigation in the United States. Additionally, if Plaintiff is able to obtain documents necessary to litigate its claims, then requiring use of the Hague Convention procedures would not undermine these interests. *Salt River Project*, 303 F. Supp. 3d at 1009 (noting that if the procedures were ultimately ineffective, the court retained the power to order discovery under the Federal Rules of Civil Procedure).

These interests must be weighed against the interests of China. In evaluating the interests of foreign nations, courts look to "expressions of interest by the foreign state, the significance of disclosure in the regulation of the activity in question, and indications of the foreign state's concern for confidentiality prior to the controversy." *Richmark*, 959 F.2d at 1476 (quotation marks and alterations omitted). Here, Defendant only points to Article 277, China's interest in the subject matter of this litigation and how the contract is interpreted, and the current trade war between the United States and China. However, Article 277 is a general civil statue. As the Supreme Court has made clear, a foreign statute barring discovery within its borders "is relevant to the court's particularized comity analysis only to the extent that its terms and its enforcement identify the nature of the sovereign interests in nondisclosure of specific kinds of material." *Aerospatiale*, 482 U.S. 522, 544 n. 29. Moreover, the current trade war as well as China's interest in a favorable interpretation of the contract do not provide a basis for preventing disclosure of documents located in China. Therefore, the Court finds that this factor is neutral at this time. However, if Plaintiff is not able to obtain documents necessary to litigate its claims, the balance

would tip towards weighing in favor of full discovery through the Federal Rules of Civil Procedure. The Court is concerned that an entity funded by the Chinese government is pursuing business in the United States but then seeking and obtaining assistance from the Chinese government to evade discovery that arises out of that business in the United States.

### 5. Additional Factors – Hardship.

Finally, the Court considers the hardship to Defendant if required to provide responses to Plaintiff's discovery requests. Facing criminal prosecution "constitutes a 'weighty excuse' for nonproduction." *Richmark*, 959 F.2d at 1477 (quoting *Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 211 (1958)). Here, Defendant does not present any evidence to show that it is likely to be prosecuted or that any adverse action will occur. It argues that it has no discretion to violate Chinese law given its status as a state-controlled corporation but does not state what consequences it would suffer. (Dkt. 132 (Mot.) at 1.) In light of the absence of any threat of criminal sanctions and the lack of evidence of any history of civil penalties, this factor only weighs slightly in favor of requiring Plaintiff to utilize the Hague Convention procedures.

On balance, the Court finds that the factors weigh in favor of requiring use of the Hague Convention procedures. However, this balancing might shift if Plaintiff is not actually able to obtain documents necessary to litigate its claims through the Hague Convention procedures and through Defendant's subsidiaries.

## C. Producing Documents Accessible by CRRC North America Inc.

The Hague Convention procedures only applies to discovery of materials located in China. With respect to electronically stored documents, the Court finds that such documents are not actually "located" in China. In making this determination, the Court finds useful analysis from courts determining that producing records electronically stored in data centers outside of the United States was not an extraterritorial reach of the Stored Communications Act. As the dissent of the one court which ruled the opposite way pointed out, "electronic data are not stored on disks in the way that books are stored on shelves or files in cabinets. Electronic 'documents' are literally intangible: when we say they are stored on a disk, we mean they are encoded on it as a

pattern." *Matter of Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 855 F.3d 53, 61 (2d Cir. 2017) (Jacobs, J., dissenting). As another Justice reasoned:

> Electronic "documents," however, are different. Their location on a computer server in a foreign country is, in important ways, merely virtual. *See* Orin S. Kerr, *The Next Generation Communications Privacy Act*, 162 U. Pa. L. Rev. 373, 408 (2014) (explaining that "the very idea of online data being located in a particular physical 'place' is becoming rapidly outdated," because computer files can be fragmented and dispersed across many servers). Corporate employees in the United States can review those records, when responding to the "warrant" or subpoena or court order just as they can do in the ordinary course of business, and provide the relevant materials to the demanding government agency, without ever leaving their desks in the United States. The entire process of compliance takes place domestically.

*Matter of Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 829 F.3d 197, 229 (2d Cir. 2016) (Lynch, J., concurring). The vast majority of courts to consider this issue, including those in this District, agreed with these dissenting opinions from the Second Circuit. *See Matter of Search of Content Stored at Premises Controlled by Google Inc.*, 2017 WL 3478809, at \*5 (N.D. Cal. Aug. 14, 2017); *In re Search of Content That is Stored at Premises Controlled by Google*, 2017 WL 1487625, at \*1 (N.D. Cal. Apr. 25, 2017).

The Court agrees with their reasoning and finds that electronic documents are not actually located in China. Therefore, to the extent Defendant or CRRC North America Incorporated can access Defendant's electronically stored documents from computers located in the United States which are responsive to Plaintiff's discovery requests, Defendant is obligated to do so pursuant to the Federal Rules of Civil Procedure. Even if documents are electronically stored on servers located in China, their location is merely virtual. Such an effort by Defendant to obtain electronic documents is not extraterritorial and does not implicate Article 277 of the Chinese Civil Procedure Law.

**D.      Producing Documents Held by Subsidiaries.**

Plaintiff requests documents related to the following subsidiaries of Defendant: CRRC MA, CRRC Sifang America, CRRC Qingdao Sifang, TRC, and CRRC Tangshan. Federal Rule of Civil Procedure 34(a) allows courts to order production of documents or items as long as those

documents or items are in the possession, custody, or control of a party to the litigation. *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999); *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). "Control" is defined as "the legal right to obtain documents on demand." *Int'l Union*, 870 F.2d at 1452. The party seeking production bears the burden of demonstrating *actual* control; proof of theoretical control is insufficient to meet this burden. *Int'l Union*, 870 F.2d at 1454. Defendant proffers that is does not "possess the legal right to obtain CRRC MA's documents 'on demand.'" (Dkt. No. 142 at 3.) At this time, the Court will not order Defendant to demand documents from CRRC MA. Plaintiff should proceed with its third-party discovery against CRRC MA. However, if Plaintiff is unable to obtain sufficient documents from CRRC MA or from Defendant, Plaintiff may pursue discovery to determine whether Defendant has sufficient control over CRRC MA to require Defendant to produce CRRC MA's documents to Plaintiff.

## CONCLUSION

The Court GRANTS Plaintiff's administrative motion to provide additional evidence. (Dkt. 135.) The Court FURTHER ORDERS that the parties must proceed through the Hague Convention to obtain physical documents located in China. However, this Order is without prejudice to the Court revisiting this issue if Plaintiffs do not actually receive documents necessary to litigate its claims. The Court HEREBY SCHEDULES a further Case Management Conference at 1:30 p.m. on February 10, 2020. The parties shall include a detailed update regarding the status of the discovery in their further case management statement.

At the hearing, Defendant argued that some of Plaintiff's discovery requests were overly broad and seek protection under the Federal Rules of Civil Procedure. If the parties have a discovery dispute that they are unable to resolve on their own, they should address it to the Court in a joint letter brief.

**IT IS SO ORDERED**.

Dated: November 19, 2019

_____
SALLIE KIM
United States Magistrate Judge