# LETTER OF REQUEST
# COMMISSION ROGATOIRE

**Hague Convention of 18 March 1970 on the
Taking of Evidence Abroad in Civil or Commercial Matters**
*Convention de La Haye du 18 mars 1970 sur
l'obtention des preuves à l'étranger en matière civile ou commerciale*

| | | |
|---|---|---|
| 1. | **Sender**<br>*Expéditeur* | The Honorable Sallie Kim<br>United States Magistrate Judge<br>United States District Court of the Northern District of California<br>Courtroom C—15th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102<br>United States of America |
| 2. | **Central Authority of the Requested State**<br>*Autorité centrale de l'État requis* | Central Authority of the People's Republic of China<br>Ministry of Justice of China<br>International Legal Cooperation Center (ILCC)<br>33, Pinganli Xidajie<br>Xicheng District<br>Beijing 100035<br>China<br>Tel: +86 10 5560 4537<br>Fax: +86 10 5560 4538<br>Email: vylee319@vip.sina.com |
| 3. | **Person to whom the executed request is to be returned**<br>*Personne à qui les pièces constatant l'exécution de la demande doivent être renvoyées* | Frank Busch<br>Wagstaffe, von Loewenfeldt, Busch & Radwick LLP<br>100 Pine Street, Suite 725<br>San Francisco, CA 94111  USA<br>Tel: (415) 357-8900<br>Busch@wvbrlaw.com |
| 4. | **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**<br>*Indiquer la date limite à laquelle l'autorité requérante désire recevoir la réponse à la commission rogatoire* | |
| | **Date**<br>*Date limite* | As soon as practicable |
| | **Reason for urgency***<br>*Raison de l'urgence* | The requested materials are necessary to assist in the resolution of ongoing litigation. |

**In conformity with Article 3 of the Convention, the undersigned applicant has the honour to submit the following request:**
*En conformité de l'article 3 de la Convention, le requérant soussigné a l'honneur de présenter la demande suivante :*

| | | |
|---|---|---|
| 5. *a* | **Requesting authority (Art. 3(a))**<br>*Autorité requérante (art. 3(a))* | The Honorable Sallie Kim<br>United States Magistrate Judge<br>United States District Court of the Northern District of California<br>Courtroom C—15th Floor<br>450 Golden Gate Ave. |

| | | |
|---|---|---|
| | | San Francisco, CA 94102<br>United States of America |
| b | **To the Competent Authority of (Art. 3(a))**<br>*À l'Autorité compétente de (art. 3(a))* | Central Authority of the People's Republic of China<br>Ministry of Justice of China<br>International Legal Cooperation Center (ILCC)<br>33, Pinganli Xidajie<br>Xicheng District<br>Beijing 100035<br>China<br>Tel: +86 10 5560 4537<br>Fax: +86 10 5560 4538<br>Email: vylee319@vip.sina.com |
| c | **Names of the case and any identifying number**<br>*Nom de l'affaire et numéro d'identification de l'affaire* | Sun Group U.S.A. Harmony City, Inc. v. CRRC Corporation LTD, Case No. 3:17-cv-02192-SK |

| 6. | **Names and addresses of the parties and their representatives (including representatives in the Requested State\*) (Art. 3(b))**<br>*Identité et adresse des parties et de leurs représentants (y compris représentants dans l'État requis) (art. 3(b))* | |
|---|---|---|
| a | **Plaintiff**<br>*Demandeur* | Sun Group U.S.A. Harmony City, Inc.<br>1523 O'Farrell Street<br>San Francisco, CA 94115 |
| | **Representatives**<br>*Représentants* | Andrew J. Mytelka<br>Joseph A.C. Fulcher<br>Joseph Russo<br>J. Scott Andrews<br>Greer, Herz & Adams LLP<br>One Moody Plaza, 18th Floor<br>Galveson, TX 77550 USA<br>Tel: (409) 797-3200<br><br>James M. Wagstaffe<br>Frank Busch<br>Wagstaffe, von Loewenfeldt, Busch & Radwick LLP<br>100 Pine Street, Suite 725<br>San Francisco, CA 94111 USA<br>Tel: (415) 357-8900<br>busch@wvbrlaw.com<br><br>Gregory S. Smith<br>Law Offices of Gregory S. Smith<br>913 East Capitol Street, S.E.<br>Washington, D.C. 20003<br>Tel: (202)460-3381 |
| b | **Defendant**<br>*Défendeur* | CRRC Corporation LTD.<br>No. 16 West 4th – Ring Mid Road,<br>Haidian District, Beijing<br>Zip Code: 100036<br>Tel: +86-10-51862188 |

|   | | |
|---|---|---|
| | **Representatives**<br>*Représentants* | Teresa Michaud<br>Teresa.michaud@bakermckenzie.com<br>Baker & McKenzie LLP<br>1901 Avenue of the Stars, Suite 950<br>Los Angeles CA 90067<br>Tel: (310) 201-4728<br><br>Colin H. Murray<br>Colin.murray@bakermckenzie.com<br>Alexander G. Davis<br>Alexander.davis@bakermckenzie.com<br>Anne M. Kelts<br>Anne.kelts@bakermckenzie.com<br>Baker & McKenzie LLP<br>Two Embarcadero Center, 11th Floor<br>San Francisco, CA 94111-3802<br>Tel: (415) 576-3000 |
| c | **Other parties**<br>*Autres parties* | No third parties are relevant to this request. |
| | **Representatives**<br>*Représentants* | No third parties are relevant to this request. |

|   | | |
|---|---|---|
| **7. a** | **Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (Art. 3(c))**<br>*Nature et objet de l'instance (divorce, filiation, rupture de contrat, responsabilité du fait des produits, etc.) (art. 3(c))* | Plaintiff filed a civil action based upon breach of contract on April 19, 2017 |
| b | **Summary of complaint**<br>*Exposé sommaire de la demande* | This is a breach of contract, commercial action. Defendant CRRC and its predecessors retained Sun Group to provide marketing, consultation, and promotional services that Defendant needed to break into the North American rail market.  In return for Sun Group's services, Defendant promised to pay Sun Group 6% cooperation earnings on those rail contracts, as CRRC's "exclusive" partner.  Sun Group diligently performed its obligations, and indeed was instrumental in opening doors and removing barriers for Defendant and its predecessors to gain entry into the lucrative North American rail market.<br>      Sun Group's assistance allowed Defendant to secure numerous projects and despite Defendant's contractual obligation to pay a cooperation earning of at least 6% on these contracts (for more than $163 million total), Defendant instead has paid Sun Group nothing.<br>      Defendant no claims that Sun Group's long-time and successful work entitles it to no money from Defendant. |
| c | **Summary of defence and counterclaim***<br>*Exposé sommaire de la défense ou demande reconventionnelle* |       Defendant's positions, among others, are that (1) the terms of the agreement are clear that Sun Group agreed to bear its own expenses for all of its activities and was entitled to cooperation |

|   |   |   |   |
|---|---|---|---|
|   |   |   | earnings only if, among other things, defendant won a contract to build high-speed rail cars for the California High-Speed Rail Project, which did not occur; (2) the agreement does not provide Sun Group any exclusive representation rights or rights of first refusal for any rail projects other than building high-speed long distance rolling stock for the California High-Speed Rail Project; and (3) Defendant CRRC Corporation Ltd. Is not as a matter of California law the legal alter ego of U.S.A.-based CRRC-MA Corporation. |
| **d** | **Other necessary information or documents\*** *Autres renseignements ou documents Utiles* | Please see the enclosed Exhibit A. |

| | | |
|---|---|---|
| **8. a** | **Evidence to be obtained or other judicial act to be performed (Art. 3(d))** *Actes d'instruction ou autres actes judiciaires à accomplir (art. 3(d))* | The evidence requested herein by the Requesting Court consists of documents and information from Defendant relating to contracts and projects at issue in this case, its corporate group structure, its relationship to its subsidiaries, and other related matters relevant to the litigation of this action. |
| **b** | **Purpose of the evidence or judicial act sought** *But des actes à accomplir* | The purpose of the requested evidence is for use during pre-trial and in the trial of these matters. The evidence is relevant to the parties' claims and defenses as it will assist the Court in determining whether the contract between Sun Group and Defendant applies to the projects obtained by Defendant, whether Defendant owes cooperation earnings to Sun Group, whether Defendant's subsidiaries are its alter egos, whether Defendant used it subsidiaries in violation of the covenant of good faith and fair dealing, and other issues.<br><br>Therefore, the Requesting Court seeks assistance for this ongoing proceeding via this Letter of Request.<br><br>If any portion of this Request is deemed to be unacceptable under the laws of China please continue to comply with as much of the Request as is legally permissible. |

| | | |
|---|---|---|
| **9.** | **Identity and address of any person to be examined (Art. 3(e))\*** *Identité et adresse des personnes à entendre (art. 3(e))* | Not Applicable for this request. |

| | | |
|---|---|---|
| **10.** | **Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Art. 3(f))\*** *Questions à poser ou faits sur lesquels les personnes susvisées doivent être entendues (art. 3(f))* | Not applicable for this request. |

| 11. | **Documents or other property to be inspected (Art. 3(g))*** <br> *Documents ou objets à examiner (art. 3(g))* | It is requested that, to the full extent allowed under the law, Defendant be required to provide the documents and things described in Exhibit A. |
|---|---|---|
| 12. | **Any requirement that the evidence be given on oath or affirmation and any special form to be used (Art. 3(h))*** <br> *Demande de recevoir la déposition sous serment ou avec affirmation et, le cas échéant, indication de la formule à utiliser (art. 3(h))* | Not applicable for this request. |
| 13. | **Special methods or procedure to be followed (e.g., oral or in writing, verbatim transcript or summary, cross-examination, etc.) (Arts 3(i) and 9)*** <br> *Formes spéciales demandées (déposition orale ou écrite, procès-verbal sommaire ou intégral, "cross-examination", etc.) (art. 3(i) et 9)* | Not applicable for this Request. |
| 14. | **Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Art. 7)*** <br> *Demande de notification de la date et du lieu de l'exécution de la requête, de l'identité et de l'adresse de la ou des personnes à informer (art. 7)* | The Requesting Court respectfully requests that it be informed of the place, date and time for the execution of the Letter of Request. It is requested that this information be sent directly to the parties' legal representatives, as listed above, with a copy to the Requesting Court. |
| 15. | **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Art. 8)*** <br> *Demande d'assistance ou de participation des magistrats de l'autorité requérante à l'exécution de la commission rogatoire (art. 8)* | Not applicable for this request. |
| 16. | **Specification of privilege or duty to refuse to give evidence under the law of the Requesting State (Art. 11(b))*** <br> *Spécification des dispenses ou interdictions de déposer prévues par la loi de l'État requérant (art. 11(b))* | Under the laws of the United States, a witness has a privilege to refuse to provide evidence if the evidence discloses a confidential communication between that witness and an attorney for that witness that was made for the purpose of obtaining legal advice.  United States law also recognizes a privilege against criminal self-incrimination.  Outside the strict area of privilege, certain limited immunities are available that may place restrictions on the giving of evidence, such as the limited protection of documents created as the work product of attorneys during or in anticipation of litigation. |
| 17. | **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by:*** <br> *Les taxes et frais donnant lieu à remboursement en vertu de l'article* | The Requesting Court understands that any fees and costs incurred in the execution of this Letter of Request are reimbursable under the second paragraph of Article 14 or under Article 26 of the Hague Evidence Convention.  These fees and |

| | | |
|---|---|---|
| | *14, alinéa 2 et de l'article 26 seront réglés par :* | costs, if any, will be re-imbursed by Sun Group. Any requests for reimbursement shall be sent to Sun Group's legal representatives, as listed above. |

| | |
|---|---|
| **Date of request**<br>*Date de la requête* | 05 May 2020 |
| **Signature and seal of the requesting authority**<br>*Signature et sceau de l'autorité requérante* | |

*\*Omit if not applicable / Ne remplir qu'en cas de nécessité*

**EXHIBIT A TO HAGUE REQUEST 1**

***Sun Group U.S.A. Harmony City, Inc. v. CRRC Corporation Ltd.*, No. 3:17-cv-02191-SK, U.S. District Court Northern District of California, San Francisco Division**

**INTRODUCTION**

This is a request for documents or other property to be inspected pursuant to Article 3(g) of the *Convention on the Taking of Evidence Abroad in Civil or Commercial Matters*.  The underlying action in U.S. federal court is a breach of contract and breach of implied warranty of good faith and fair dealing action against Defendant, CRRC Corporation Ltd. (中国中车股份有限公司), the successor entity to China CNR Corporation Limited (中国北车股份有限公司) and CSR Corporation Limited, (中国南车股份有限公司).  CRRC Corporation Ltd. (中国中车股份有限公司) was formed as a merger between China CNR Corporation Limited (中国北车股份有限公司) and CSR Corporation Limited, (中国南车股份有限公司) and expressly assumed all existing contracts, nationally and internationally upon its formation on June 1, 2015.  Circumstances surrounding the formation of the various agreements at issue in this matter are highly relevant to the claims asserted by the Plaintiff, as are questions concerning the corporate structure of the Defendant and its subsidiaries/affiliates.  The documentary and electronic evidence requested in this Hague Request 1 are the result of extensive discussions between the counsel for the parties in the captioned litigation and the Defendant has affirmed that it will not object to providing documentary and electronic evidence in its custody and control responsive, to the extent required by the U.S. Federal Rules of Civil Procedure, to each of the requested categories of materials identified herein.

**DEFINITIONS APPLICABLE TO THIS REQUEST DIRECTED TO DEFENDANT**

1.  "CRRC", "YOU" and "YOUR" means CRRC Corporation Ltd. (中国中车股份有限公司), individually, and collectively, including all predecessors (including China CNR Corporation Limited (中国北车股份有限公司) and CSR Corporation Limited (中国南车股份有限公司)), the CRRC AFFILIATES & SUBSIDIARIES, and all directors, officers, agents, representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

2.  "CRRC MA" means CRRC MA Corporation Ltd. individually, and collectively, including without limitation its predecessors (including CNR MA Corporation), and all directors,

1

officers, agents, representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

3. "CRRC SIFANG AMERICA" means CRRC Sifang America Inc. individually, and collectively, including without limitation its predecessors (CSR America, Inc.) and all directors, officers, agents, representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

4. "CRRC QINGDAO SIFANG" means CRRC Qingdao Sifang Co., Ltd. (中车青岛四方机车车辆股份有限公司) individually, and collectively, including without limitation its predecessors, and all directors, officers, agents, representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

5.  "CRC" means CRRC Changchun Railway Vehicles Co., Ltd. (中车长春轨道客车股份有限公司), individually, and collectively, including without limitation its predecessors (such as CNR Changchun Railway Vehicles Co., Ltd. (长春轨道客车股份有限公司), the joint venture partner of China CNR Corporation Limited (中国北车股份有限公司) for the formation of CNR MA Corporation ), and all directors, officers, agents ,representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

6. "TRC" means Tangshan Railway Vehicle Co., Ltd. (唐山轨道客车有限责任公司) individually, and collectively, including without limitation its predecessors, and all directors, officers, agents, representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

7. "CRRC TANGSHAN" means CRRC Tangshan Co., Ltd. (中车唐山机车车辆有限公司) individually, and collectively, including without limitation its predecessors, and all directors, officers, agents, representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

8. The "CRRC AFFILIATES & SUBSIDIARIES" means CRRC MA, CRRC SIFANG AMERICA, CRRC QINGDAO SIFANG, TRC, CRC, and CRRC TANGSHAN.

9. "SUN GROUP" means Sun Group U.S.A. Harmony City, Inc., d/b/a Sun Group U.S.A. (Translated in simplified Chinese characters as "美国太阳集团" or "太阳集团") including its directors, officers, agents, representatives, employees, consultants, attorneys, subsidiaries, and affiliates.

10. The "2011 AGREEMENT" means the November 15, 2011 agreement entered into between TRC and Sun Group entitled "Exclusive Sales Representation Agreement for California High Speed Train Project" and attached as Exhibit 1 to Sun Group's Third Amended Complaint.

11. The "2013 COOPERATION AGREEMENT" means the October 18, 2013 agreement entered into between TRC and Sun Group entitled "Cooperation Agreement for California High Speed Train Project" and attached as Exhibit 2 to Sun Group's Third Amended Complaint.

12. The "2014 COOPERATION AGREEMENT" means the April 26, 2014 agreement entered into between CNR Company Ltd. and Sun Group entitled "Cooperation Agreement" and attached as Exhibit 5 to Sun Group's Third Amended Complaint.

13. The "CRRC/SUN GROUP AGREEMENTS" means the 2011 AGREEMENT, the 2013 COOPERATION AGREEMENT, and the 2014 COOPERATION AGREEMENT.

14. The "CALIFORNIA HIGH SPEED RAIL PROJECT" means the development and construction of California's statewide high-speed rail system.  This definition specifically includes, but is not limited to, other rail systems interconnected with the high-speed rail system or for which high-speed rail funds are utilized.

15. The "LOS ANGELES METRO CONTRACT" means the contract awarded to CRRC MA in 2016 (and any additional contracts awarded thereafter) from the Los Angeles County Metropolitan Transit authority and related to rolling stock.  This definition specifically includes the bidding process related to the contract.

16. The "BOSTON METRO TRAIN CONTRACT" means the contract awarded to CRRC MA in 2014 (and any additional contracts awarded thereafter) from the Massachusetts

Department of Transportation and related to rolling stock.  This definition specifically includes the bidding process related to the contract.

17. The "PHILADELPHIA TRAIN CONTRACT" means the contract awarded to CRRC MA in 2017 (and any additional contracts awarded thereafter) from the Southeastern Pennsylvania Transportation Authority and related to rolling stock.  This definition specifically includes the bidding process related to the contract.

18. The "MONTREAL TRAIN CONTRACT" means the contract awarded to CRRC TANGSHAN in 2017 (and any additional contracts awarded thereafter) from the Agence Metropolitaine de Transport Montreal and related to rolling stock.  This definition specifically includes the bidding process related to the contract.

19. The "CHICAGO METRO TRAIN CONTRACT" means the contract awarded to CRRC SIFANG AMERICA in 2016 (and any additional contracts awarded thereafter) from the Chicago Transit Authority and related to rolling stock.  This definition specifically includes the bidding process related to the contract.

20. The "CRRC TRAIN CONTRACTS" means the LOS ANGELES METRO CONTRACT, the BOSTON METRO TRAIN CONTRACT, the PHILADELPHIA TRAIN CONTRACT, MONTREAL TRAIN CONTRACT, and the CHICAGO METRO TRAIN CONTRACT.

21. "DOCUMENT" is defined broadly to be given the full scope of that term  contemplated in Federal Rule of Civil Procedure 34, and includes all tangible things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a document, all drafts of final documents, all other written, printed, or recorded matter of any kind, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in your actual or constructive possession or control, regardless of the medium on which they are produced, reproduced, or stored (including without limitation, electronically stored information, electronic messages, computer programs and files containing any requested information), and any recording or writing, as

4

these terms are defined in Rule 1001, Federal Rules of Evidence. Any document bearing marks, including without limitation, initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof, is a separate document.

22. "ELECTRONICALLY STORED INFORMATION" or "ESI" means electronic information that is stored in a medium from which it can be retrieved and examined.  It includes, but it not limited to, all electronic files that are electronically stored in an electronic storage medium.

23. "ELECTRONIC FILE" includes, but is not limited to, the following: e-mail messages and files; voice-mail messages and files; text messages and files; deleted files; temporary files; system-history files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; computer-activity logs; metadata.

24. "ELECTRONIC STORAGE" refers to electronic files contained on magnetic, optical, or other storage media, such as hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, integrated-circuit cards (e.g. SIM cards), and flash drives.

25. "RELATES TO", "RELATING TO" and "RELATED TO" mean describing, discussing, concerning, evidencing, reflecting, comprising, illustrating, containing, embodying, constituting, analyzing, stating, identifying, referring to, dealing with, or in any way pertaining to.

26. "COMMUNICATION" means any form of transmittal of information without limitation as to means of transmittal, including documents, meetings, telephone conversations, correspondence, electronic messages or ESI, memoranda, contracts, agreements, and verbal or nonverbal actions intended to or actually conveying information.

27. "SUFFICIENT TO IDENTIFY" means that the documents produced reveal, contain or disclose information with respect to the matter inquired that is sufficiently detailed to provide all of the information sought in the inquiry.

28. The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender as in each case is most appropriate. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

29. Documents referred to herein shall include all portions, or pages of each document referred to and all attachments, exhibits, enclosures, appendices, and supporting documentation, and including, without limitation, originals, copies, drafts, working papers, routing slips, handwritten notes and similar materials (with or without notes or changes therein).

30. These requests are limited only to those documents in the possession, custody, or control of CRRC (as defined herein).  A document is deemed in Your actual or constructive possession, custody or control if it is in the physical possession or custody of CRRC (as defined herein), or if it is accessible on a hard-drive (whether or not it is currently active), network or server.

31. These requests specifically do not request production of any documents that are protected by any applicable privilege recognized under U.S. federal or California state law.

**CATEGORIES OF DOCUMENTS OR OTHER PROPERTY DIRECTED TO DEFENDANT**

32. All communications exchanged between CRRC and Sun Group between January 1, 2010 and April 19, 2017.  These communications are relevant to, among other issues, the interpretation of the agreements at issue in the litigation, the circumstances concerning the parties' dealings, and the relationship between the Defendant and its subsidiary/affiliate companies.

33. All documents created between January 1, 2014 through April 19, 2017 containing internal discussions, or communications with the California High Speed Rail Authority, describing CRRC's understanding of the discrete rail system components of the "California High Speed Rail Project," as that term appears in the 2014 Cooperation Agreement.  These

6

documents are relevant to, among other issues, the interpretation of the agreements at issue in the litigation.

34. All documents created between January 1, 2014 through April 19, 2017 involving CRRC's communications with public rail agencies regarding negotiation of the CRRC TRAIN CONTRACTS (to the extent any such documents exist), documents sufficient to show amounts paid by public rail agencies under the CRRC TRAIN CONTRACTS, and documents sufficient to show whether the work contemplated by the CRRC TRAIN CONTRACTS has been completed.  These documents are relevant to, among other issues, Defendant's representations in connection with project bids, the alleged breaches of the agreements at issue in this litigation, and the relationship between the Defendant and its affiliate/subsidiary companies.

35. All documents dating from January 1, 2010 to April 19, 2017 that reference by name SUN GROUP or Jonathan Sun (加里森.孫) in English or in Chinese (whether in simplified or traditional Chinese characters).  These documents are relevant to, among other issues, the interpretation of the agreements at issue in the litigation, and the circumstances concerning the parties' dealings and business practices.

36. All drafts of the 2014 Cooperation Agreement.  These communications are relevant to, among other issues, the interpretation of the agreements at issue in the litigation, and the circumstances concerning the parties' dealings and business practices.

37. All communications dating from January 1, 2014 to April 19, 2017 describing the April 24-26, 2014 meeting in New York, NY involving Jonathan Sun, Yu Weiping (余卫平), Yu Yanbin (于彦斌), and  Zhang Xin (张鑫).  These communications are relevant to, among other issues, the interpretation of the agreements at issue in the litigation, and the circumstances concerning the parties' dealings and business practices.

38. All communications dating from January 1, 2014 to April 19, 2017 discussing the September 27, 2016 email sent from Zhang Xin to Jonathan Sun with the Subject: "Reply with regard to high speed railway projects in New York, San Francisco and California."

7

These communications are relevant to, among other issues, the alleged breaches of the agreements relevant in this action.

39. Documents sufficient to identify the board of directors and corporate officers for CRRC Corporation Ltd., CRRC MA Corporation Ltd., CRRC Sifang America Inc., TRC, CRC, CRRC Tangshan Co. Ltd., and CRRC Qingdao Sifang Co., Ltd. at all times from January 1, 2014 to April 19, 2017.  These documents are relevant to, among other issues, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

40. Documents sufficient to show the initial capitalization of CRRC Corporation Ltd., CRRC MA Corporation Ltd., CRRC Sifang America Inc., CRRC Tangshan Co. Ltd., TRC, CRC, and CRRC Qingdao Sifang Co., Ltd.  These documents are relevant to, among other issues, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

41. Documents sufficient to identify any financial guarantees dating from January 1, 2014 to April 19, 2017 relating to the CRRC TRAIN CONTRACTS assumed by CRRC in favor of CRRC Sifang America Inc., TRC, CRC, CRRC Tangshan Co. Ltd., and CRRC Qingdao Sifang Co., Ltd. as well as documents dating from January 1, 2014 to April 19, 2017 sufficient to identify any financial guarantees assumed by CRRC in favor of CRRC MA Corporation Ltd.  These documents are relevant to, among other issues, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

42. Documents sufficient to identify any loans or financial guarantees dating from January 1, 2014 to April 19, 2017  provided by CRRC relating to the CRRC TRAIN CONTRACTS to CRRC Sifang America Inc., TRC, CRC, CRRC Tangshan Co. Ltd., and CRRC Qingdao Sifang Co., Ltd., as well as documents sufficient to identify any loans or financial guarantees dating from January 1, 2014 to April 19, 2017  provided by CRRC to CRRC MA Corporation Ltd.  These documents are relevant to, among other issues, the

relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

43. Documents dating from January 1, 2014 to April 19, 2017 sufficient to show whether CRRC Corporation Ltd. or its predecessors has described its relationship with CRRC Sifang America Inc., TRC, CRC, CRRC Tangshan Co. Ltd., CRRC Qingdao Sifang Co., Ltd., or CRRC MA Corporation Ltd. as a joint venture.  These documents are relevant to, among other issues, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

44. Documents dating from January 1, 2014 to April 19, 2017 sufficient to describe the corporate structure and ownership interests of CRRC Corporation Ltd. and its predecessors, CRRC Sifang America Inc., TRC, CRC, CRRC Tangshan Co. Ltd., CRRC Qingdao Sifang Co., Ltd., and CRRC MA Corporation Ltd.  These documents are relevant to, among other issues, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

45. Documents dating from January 1, 2014 to April 19, 2017 sufficient to identify any monetary or asset transfers relating to the CRRC TRAIN CONTRACTS effected by CRRC Corporation Ltd. or its predecessors in favor of CRRC Sifang America Inc., TRC, CRC, CRRC Tangshan Co. Ltd., and CRRC Qingdao Sifang Co., Ltd., as well as non-privileged documents sufficient to identify any monetary or asset transfers effected by CRRC Corporation Ltd. or its predecessors in favor of CRRC MA Corporation Ltd.  These documents are relevant to, among other issues, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

46. Documents sufficient to identify any real property located in the United States owned by CRRC Corporation Ltd. or its predecessors, CRRC Sifang America Inc., TRC, CRC, CRRC Tangshan Co. Ltd., CRRC Qingdao Sifang Co., Ltd., or CRRC MA Corporation Ltd.  These documents are relevant to, among other issues, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

47. All documents dating from January 1, 2014 to April 19, 2017 evidencing CRRC's direct involvement in submitting bids for the CRRC TRAIN CONTRACTS (to the extent such documents exist).  These documents are relevant to, among other issues, the alleged breaches of the agreements relevant in this action, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

48. All finalized board minutes dating from January 1, 2014 to April 19, 2017 describing board proceedings of CRRC Corporation Ltd. or its predecessors, CRRC Sifang America Inc., TRC, CRC, CRRC Tangshan Co. Ltd., CRRC Qingdao Sifang Co., Ltd., and CRRC MA Corporation Ltd that refer to any one of the CRRC TRAIN CONTRACTS or the "California High Speed Rail Project" (as that term appears in the 2014 Cooperation Agreement).  These documents are relevant to, among other issues, the alleged breaches of the agreements relevant in this action, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

49. The Articles of Association and annual business licenses (营业执照) for CRRC Corporation Ltd. for the period from June 1, 2015 to December 31, 2017.  These documents are relevant to, among other issues, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

50. The Articles of Association and annual business licenses (营业执照) for China CNR Corporation Limited for the period from January 1, 2010 to May 31, 2015.  These documents are relevant to, among other issues, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

51. The Articles of Association and annual business licenses (营业执照) for CSR Corporation Limited for the period from January 1, 2010 to May 31, 2015.  These documents are relevant to, among other issues, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

52. The Articles of Association and annual business licenses (营业执照) for CRRC Tangshan Co. Ltd. (中车唐山机车车辆有限公司) for the period from January 1, 2014 to April 19, 2017.  These documents are relevant to, among other issues, the alleged breaches of the agreements relevant in this action, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

53. The Articles of Association and annual business licenses (营业执照) for Tangshan Railway Vehicle Co., Ltd. (唐山轨道客车有限责任公司) for the period from January 1, 2014 to April 19, 2017.  These documents are relevant to, among other issues, the alleged breaches of the agreements relevant in this action, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

54. The Articles of Association and annual business licenses (营业执照) for CRRC Changchun Railway Vehicles Co., Ltd. (中车长春轨道客车股份有限公司) and its predecessor or under its prior name for the period from January 1, 2014 to April 19, 2017. These documents are relevant to, among other issues, the alleged breaches of the agreements relevant in this action, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

55. The Articles of Association and annual business licenses (营业执照) for CRRC Qingdao Sifang Co., Ltd. (中车青岛四方机车车辆股份有限公司) for the period from January 1, 2014 to April 19, 2017.  These documents are relevant to, among other issues, the alleged breaches of the agreements relevant in this action, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

56. The Articles of Incorporation/Association for CRRC MA Corporation and CRRC Sifang America Inc. for the period from January 1, 2014 to April 19, 2017.  These documents are relevant to, among other issues, the alleged breaches of the agreements relevant in this action, the relationship between the Defendant and its affiliate/subsidiary companies and alter ego allegations.

11

57. Documents sufficient to evidence the annual financial performance of CRRC Corporation Ltd. and its predecessors , CRRC Sifang America Inc., TRC, CRRC Tangshan Co. Ltd., CRRC Qingdao Sifang Co., Ltd., and CRRC MA Corporation Ltd.  These documents are relevant to, among other issues, alter ego allegations and questions of adequate capitalization under applicable law.