| | |
|---|---|
| JAMES M. WAGSTAFFE (95535) | ANDREW J. MYTELKA (TX Bar 14767700) |
| wagstaffe@wvbrlaw.com | Lead Counsel |
| FRANK BUSCH (258288) | amytelka@greerherz.com |
| busch@wvbrlaw.com | JOSEPH A.C. FULCHER (TX Bar 07509320) |
| **WAGSTAFFE, VON LOEWENFELDT** | jfulcher@greerherz.com |
| **BUSCH & RADWICK LLP** | JOSEPH RUSSO (TX Bar 24002879) |
| 100 Pine Street, Suite 725 | jrusso@greerherz.com |
| San Francisco, CA 94111 | J. SCOTT ANDREWS (TX Bar 24064823) |
| Telephone:    (415) 357-8900 | jandrews@greerherz.com |
| | **GREER, HERZ & ADAMS, L.L.P.** |
| GREGORY S. SMITH (DC Bar 472802) | One Moody Plaza, 18th Floor |
| gregsmithlaw@verizon.net | Galveston, TX 77550 |
| **Law Offices of Gregory S. Smith** | Telephone:    (409) 797-3200 |
| 913 East Capitol Street, S.E. | Fax:    (866) 422-3266 |
| Washington, D.C. 20003 | *All Admitted Pro Hac Vice* |
| Telephone:    (202) 460-3381 | |
| *Admitted Pro Hac Vice* | |

Attorneys for Plaintiff
SUN GROUP U.S.A. HARMONY CITY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SUN GROUP U.S.A. HARMONY CITY, INC., | No. 3:17-cv-02191-SK |
| Plaintiff, | **JOINT DISCOVERY LETTER** |
| v. | |
| CRRC CORPORATION LTD, Defendant. | **Judge:**    **Magistrate Sallie Kim** |

Pursuant to the Court's Standing Order, the parties attest that they met and conferred telephonically on March 24, 2021 and have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery.

Date:   May 26, 2021          **BAKER & MCKENZIE LLP**

By: /s/
    ALEXANDER G. DAVIS

Date:   May 26, 2021          **GREER, HERZ & ADAMS, L.L.P.**

By: /s/
    ANDREW J. MYTELKA

JOINT DISCOVERY LETTER

I.     **SUMMARY OF UNRESOLVED DISPUTE**

Although discovery is ongoing, and the parties continue to meet-and-confer regarding additional matters, the following issue presently requires the Court's resolution: whether CRRC must collect responsive documents from seventeen additional individual custodians.

II.    **SUN GROUP'S POSITION**

To date, CRRC's document production has fallen far short of its obligations. This paucity of documents, in the context of multiple contracts worth hundreds of millions of dollars, a decade of work, nested subsidiaries, and Sun Group's numerous successes, initially made no sense. CRRC produced very few internal emails, only a handful of draft contracts, and no internal memoranda. But even other documents were sparse, with CRRC identifying in the evidence lists which accompanied their responses to the Hague Request 1 requests no documents *at all* responsive to Requests 36 and 37 (regarding the 2014 Cooperation Agreement), 40-43 (regarding the initial capitalization, financial guarantees, loans, and joint venture relationships of relevant entities), and 45-48 (regarding money transfers, real estate, bid submission, and board minutes). Nearly all the other requests generated fewer than one hundred pages of documents, many substantially fewer, even though the same documents were produced numerous times in response to different requests.[1] This bears no resemblance to the discovery typically seen and expected in American civil cases, or even to the volume of third-party discovery produced by CRRC's U.S. subsidiary, CRRC MA.

A possible explanation for CRRC's deficient production became clear only after Sun Group questioned CRRC's small initial production of documents. Sun Group learned that CRRC, despite being a large multinational corporation, claimed no centralized file or email databases that can be searched, and more importantly that CRRC had sought out responsive documents from only six custodians (four at CRRC, and one each at CRRC Qingdao Sifang and

---

[1] CRRC did not provide their production with Bates-label identification numbers or in their native format. CRRC instead produced documents in .pdf with file names in Chinese. As such, it can be difficult to determine, for example, when particular emails were sent or received.

- 1 -
JOINT DISCOVERY LETTER

CRRC Tangshan).  Even a cursory review of CRRC's initial production makes clear that CRRC was reasonably required to cast a broader net, as its own production made clear that at least seventeen more people were likely to possess responsive documents.  Sun Group has requested that CRRC expand its search to include these custodians, but CRRC has categorically refused to add any of them.

CRRC had an obligation to conduct a diligent search to locate responsive documents. *E.g. A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006); *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 685 (S.D. Fla. 2012) ("the producing party has an obligation to search available systems for the information demanded").  A diligent search generally requires developing a "reasonably comprehensive search strategy." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). Parties "cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents." *Cardenas v. Dorel Juvenile Grp., Inc.*, No. 04-2478-KHV-DJW, 2006 U.S. Dist. LEXIS 37465, at *23, n.26 (D. Kan. June 1, 2006) (quoting *Bratka v Anheuser-Busch Co., Inc.*, 164 F.R.D. 448, 461 (S.D. Ohio 1995)).

Where parties fail to conduct a diligent search for responsive documents, the court may order them and/or their counsel to do so and to certify with specificity the search that was undertaken. *See e.g., Intagio Corp. v. Tiger Oak Publ'ns, Inc.*, No. C-06-3592 PJH (EMC), 2007 U.S. Dist. LEXIS 11735, at *3-4 (N.D. Cal. Feb. 5, 2007)*; Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, No. ED CV 14-1926-JAK (SPx), 2016 U.S. Dist. LEXIS 184932, at *38-39 (C.D. Cal. July 12, 2016). *United States v. Lin*, No. CR-O1-20071 RMW (PVT), 2004 U.S. Dist. LEXIS 31194, at *1-4 (N.D. Cal. Jan. 16, 2004); *see also Cefalu v. Holder*, No. 12-0303 TEH (JSC), 2013 U.S. Dist. LEXIS 113485, at *4-5 (N.D. Cal. Aug. 12, 2013) (where the history of Plaintiff's document production suggested that he may not fully understand his search obligations, the Court granted defendant's motion to compel ordering plaintiff's counsel to ensure that all responsive documents located on plaintiff's personal computer and related electronic devices have been produced).

These standards required much more diligence from CRRC than a collection from only six custodians. Instead, even that collection shows that CRRC should have continued its collection to include:

(1) **Mr. XI Guohua (奚国华)**, identified by counsel for CRRC as the "then President of CRRC";

(2) **Mr. HUANG Liewei** (黄烈威), identified in the production as the Deputy General Manager of CRRC Tangshan Co., Ltd.;

(3) **ZHANG Zhen** (张振), forwarded email strings discussing cooperation between CRRC and Sun Group in 2014 and the lead up to the meetings in New York April 24-26, 2014;

(4) **LU Xiwei** (卢西伟). (lxw6810@163.com), a CRRC representative who sent correspondence concerning the San Mateo County Transit District;

(5) **ZHANG Anying** (张安营) (zhanganying@cqsf.com), a CRRC Qingdao Sifang employee included in several emails concerning the California high speed rail project; including, e.g., an email identified by CRRC as 32-1-1 2014-3-3.

(6) **GUO Yongna** (郭永娜) (guoyongna@cqsf.com), a CRRC Qingdao Sifang employee included in several emails concerning the California high speed rail project;

(7) **LI Yongle** (李永乐) (liyongle@cqsf.com), a CRRC Qingdao Sifang employee included in several emails concerning the California high speed rail project;

(8) **YANG Jianxue** (杨建学) (yjx@cqsf.com), a CRRC Qingdao Sifang employee included in several emails concerning rail projects,

(9) **NI Shengyi** (倪胜义) (nsy@cqsf.com), a CRRC Qingdao Sifang employee copied on an email concerning bidding for rail projects identified by CRRC;

(10) **Dong Min** (董旻) (dongmin@cqsf.com), a CRRC Qingdao Sifang employee included on an email concerning bidding for high speed rail projects in the US;

(11) **Ms. Li Jia** (李佳) (Lijia@csrhw.com.cn), a representative of CSR Corporation Limited and the recipient of a letter from the California high speed rail authority;

(12) **ZHEN Dawei (甄大伟),** Director of Overseas Marketing and Deputy General Manager of TRC who was involved in the 2011 and 2013 Cooperation agreements;

(13) **HOU Zhigang** (侯志刚)-- Legal Representative of CRRC Tangshan. Appearing on 52, 53. Business License of CRRC Tangshan Co., Ltd.";

(14) **BO Jia**, (贾波), a CNR and CNR MA representative residing in China and involved in matters related to this dispute;

(15) **ZHOU Chuanhe** (周传河), a CNR and CNR MA representative residing in China and involved in matters related to this dispute;

(16) **Mr. LI Guangwei (李光伟)**, the overseas sales director of CRRC Tangshan, who accompanied CRRC representatives on the visit to China by California Governor Jerry Brown;

(17) **Mr. ZHANG Lei (张雷)**, the design engineer of CRRC Tangshan, who also accompanied CRRC representatives on the visit to China by California Governor Jerry Brown.

It is remarkable and inexplicable that CRRC did not treat XI Guohua, then President of CRRC, as a custodian. Mr. XI was deeply involved in CRRC's U.S. rail projects, including those in California (he even accompanied the CRRC delegation to California), and he is

mentioned in numerous documents produced in response to Hague Request 1, including a key September 27, 2016 email. Among others, ZHANG Zhen is an employee copied on email strings discussing cooperation between CRRC and Sun Group in the lead up to the key April 24-26, 2014 meetings in New York that led to the 2014 Cooperation Agreement. ZHEN Dawei was involved in the 2011 and 2013 Cooperation Agreements, and CRRC even says he signed the 2013 Agreement. Numerous other employees – none treated as custodians – were included on multiple emails concerning the California high speed rail project and other U.S. rail projects.

Sun Group is entitled to the results of a diligent search for responsive documents. It is clear that no such search has yet been conducted, with CRRC having engaged in ineffective efforts to identify and produce relevant documents. Sun Group respectfully requests that CRRC be ordered to collect responsive documents from each of these seventeen custodians identified above, and produce them without delay. Nevertheless, Sun Group has offered a compromise that requests only thirteen new custodians, excluding custodian numbers 11, 13, 16, and 17. CRRC has offered only a flat refusal.

CRRC suggests below that Sun Group is only concerned with the dearth of responsive documents concerning the 2014 Cooperation Agreement. While the 2014 Cooperation Agreement is of key interest to this dispute, Sun Group's position as to CRRC's discovery non-compliance is much broader. CRRC does not dispute they have produced very few documents (for example, very few emails or internal documents) responsive to any category of requests made in the Hague Request 1. Sun Group contends that CRRC must have more responsive documents in their custody and control, and one reason why CRRC has not produced more documents may be because they only searched the files of six custodians. Surely, CRRC has more than two or three internal emails in their files regarding the years of cooperation with Sun Group. CRRC's statements below regarding, inter alia, the meaning of certain terms used in the 2014 Cooperation Agreement have no relevance to the subject of this joint letter, but, needless to say, Sun Group rejects CRRC's contentions.

### III. CRRC'S POSITION

Despite already having made a diligent search for materials responsive to Sun Group's Hague Requests, and despite having met and conferred for months with Sun Group to provide detailed responses to questions about its document production and collection efforts, **CRRC in no way refuses to perform any additional search for documents**, especially those bearing on the contract interpretation issues centrally at issue in this lawsuit. But as explained below, Sun Group has come nowhere near to satisfying its burden to show that all of the 17 individuals identified above would possess documents responsive to Sun Group's 25 Hague Requests, much less those few requests having to do with the meaning of key terms in the 2014 Cooperation Agreement. Sun Group complains, for example, that CRRC did not produce drafts of the 2014 Cooperation Agreement (Request No. 36). But Sun Group's own allegations are that this contract was negotiated in person over a few days in a New York City hotel room in April 2014. (*See* ECF No. 102 (Third Am. Compl.) ¶¶ 17, 20.) All CRRC personnel allegedly in attendance have already searched for and produced all documents responsive to the Hague Requests.

Sun Group appears to have compiled this new list of 17 individuals simply by circling names found in documents produced to date, without regard to any context, leading to absurd results. Sun Group's demand that CRRC agree to designate *all* 17 (or even 13) as new custodians for *all* Hague Requests amounts to an improper and unreasoned fishing expedition.

CRRC instead proposes that Sun Group provide one written submission that (a) identifies a specific Hague Request; and (b) makes some basic factual showing for why Sun Group believes a particular custodian from whom CRRC has not already collected information may possess information relevant to that Hague Request. Upon receiving such information, CRRC can conduct the appropriate further investigation in order to put a close to this aspect of the discovery process in this case.

### A. Sun Group's Latest Discovery Demand Must Be Viewed In Context

Sun Group demands close to a *quarter billion dollars* in commissions (and interest) from CRRC on the theory that Sun Group *did not participate at all* in successful bids by various operating companies in the CRRC corporate family to build subway and light rail cars for

municipal transit systems in North America.  To support this brazen demand, Sun Group has manufactured a theory that 16 simplified Chinese characters in the 2014 Cooperation Agreement—which the parties have agreed to translate as "priority and non-exclusive strategic partners"—provide it a right of first refusal to participate in and collect 6% success fees on all North American rail contract bids won by any CRRC affiliate or subsidiary, *regardless* of whether CRRC intended to or actually did use any third-party resources in making such bids.

Sun Group unveiled this tortured contract interpretation at the oral argument on the motion to dismiss its Second Amended Complaint, prompting this response by the Court:

> Sun Group argued at the hearing that the right of first refusal meant that CRRC was required to offer Sun Group an opportunity to be a partner on all projects, regardless of whether CRRC intended to or did use a partner. Again, ***if Sun Group can allege, in good faith,*** that the 2014 Cooperation Agreement required CRRC to offer an opportunity to Sun Group to partner with it on all projects in the United States, Mexico and Canada, then Sun Group may state a claim for breach of the implied covenant of good faith and fair dealing to provide Sun Group the right of first refusal. **The Court finds this theory** that CRCC [sic] would enter into a contract that required it to provide a right of first refusal to an outside entity in such a manner that CRCC [sic] could not use its own internal resources **strains credulity**. This interpretation also appears to cancel out the term "non-exclusive" in a manner that renders the language meaningless. But Sun Group is entitled to plead its belief in the interpretation of the 2014 Cooperation Agreement and to prevail, **Sun Group will be required to prove that the parties entered into the 2014 Cooperation Agreement with a mutual understanding of this term**. For purposes of this motion to dismiss, the Court's skepticism about this interpretation, based on facts outside a vaguely worded contract, is irrelevant.

(ECF No. 99, Order on Mot. to Dismiss SAC at 14:21-15:7 (emphasis added).)  The Court is of course exactly right: if CRRC must provide Sun Group a 6% commission on all North American projects regardless of whether or not CRRC uses a third-party bidding agent, then the arrangement is not "non-exclusive" at all, but instead creates an unavoidable obligation by CRRC to work with Sun Group in every instance.  Sun Group takes this position even though the very same paragraph in the 2014 Cooperation Agreement makes clear that it is "*exclusive in nature solely* with respect to the California High Speed Rail Project" to build high-speed railcars to travel between San Diego and Sacramento.

Now, almost 2.5 years after the Court wrote those words, the motion to dismiss stage is long past.  CRRC has searched for and produced the documents responsive to Sun Group's discovery requests, including from all individuals who participated in negotiating the 2014

Cooperation Agreement. There is no evidence—zero—to support a "mutual understanding" by the executing parties of the patently unreasonable interpretation advanced by Sun Group about its supposed contract rights. As a result, the Court's prior skepticism is no longer "irrelevant": this is indeed a meritless lawsuit, and Sun Group's latest demands for further fishing—which, as described below, rest on misunderstandings and speculation—should be rejected accordingly.

> **B.    Sun Group Has Come Nowhere Near To Meeting Its Burden to Compel Document Collection From 17 Additional Individuals**

CRRC performed a diligent search for materials responsive to Sun Group's Hague Requests.[2] In meeting and conferring with Sun Group about its document collection and production, CRRC has stated it is willing to conduct further investigation if Sun Group can provide some guidance about what gaps it believes exist in the production. Sun Group's initial response was an unhelpful tautology: "we don't know what we don't know." Sun Group later admonished CRRC that it had no obligation to "imagine specific documents that might exist."

Recently, in a somewhat more productive turn, Sun Group has indicated it is looking for more documents "regarding the negotiation and execution" of the 2014 Cooperation Agreement. CRRC fully agrees: this evidence is key and relevant to resolving Sun Group's claims. But because every one of those individuals whom Sun Group alleges were involved in negotiating that contract have ***already searched for and produced all responsive materials***, CRRC has asked Sun Group why it believes that any of the 17 individuals would have additional responsive information. Sun Group has been conspicuously silent on this point.

Under these circumstances, CRRC has objected to Sun Group's demand to perform a new document search for *all* 17 individuals currently at issue for *all* 25 of Sun Group's Hague Requests. Sun Group bears the burden here. CRRC asked Sun Group to identify any legal authority supporting the notion that it must agree to designate as a custodian any individual

---

[2] Sun Group complains about the volume of total pages produced, but ignores the fact that many requests seek simply documents "sufficient to show" narrow subjects (*e.g.*, Request Nos. 39-46), while others acknowledge that responsive documents many not exist at all (*e.g.*, Request Nos. 34, 47), and still others ask for documents like business licenses (*e.g.*, Request Nos. 49-56).

appearing for any reason on any document included in a document production.  Unsurprisingly, Sun Group has provided no such authority.  Indeed, as explained below, its list of 17 individuals reveals the folly of such an approach to discovery.

For example, Sun Group has claimed that individuals like Zhang Zhen and Yang Jianxue were "forwarded" or "included in" certain email communications.  But for all such communications identified by Sun Group to date, those individuals were simply included ***in 2020*** as part of CRRC's document collection and production efforts.  The relevant time period for Sun Group's Hague Evidence Convention requests ends as of April 19, 2017.

For Bo Jia and Zhou Chuanhe, Sun Group simply claims, without any further explanation, that these individuals were "involved in matters related to this dispute."  Sun Group has not explained the basis for this contention, nor identified any Hague Requests for which it believes these individuals possess responsive information.

Sun Group similarly justifies its demands to collect information from Zhang Anying, Guo Yongna, and Li Yongle, and Ni Shengyi simply because they were copied on—but did not themselves ever contribute to—communications sent by Ma Qiang, an employee of CRRC Qingdao Sifang who did produce all responsive documents.  But during all times relevant to the contract negotiation and formation issues central to this case, these individuals were employees of CSR Corp., Ltd.—China *Southern* Rail.  The 2014 Cooperation Agreement, by contrast, was with China CNR Corporation Limited—China *Northern* Rail.  Until the 2015 merger creating CRRC, CSR and CNR were direct competitors in the market for rail products.  These individuals therefore cannot logically have any information about mutual understandings of terms in the 2014 Cooperation Agreement negotiated and executed with CNR in April 2014.

Xi Guohua received the litigation hold notice for this lawsuit in May 2017, but *he left CRRC in July 2017* and so did not participate as a custodian in CRRC's 2020 collection efforts.

The foregoing demonstrates that Sun Group simply has not done its homework before coming to this Court to foist an uninformed second guessing of CRRC's document collection and production efforts in this case.  The Court should reject Sun Group's application to compel CRRC to designate all 17 individuals as new custodians for Sun Group's 25 Hague Requests.

- 8 -
JOINT DISCOVERY LETTER

| | |
|---|---|
| Date: May 26, 2021 | **BAKER & McKENZIE LLP** |
| | By: /s/ _____ |
| | ALEXANDER G. DAVIS |
| | Attorneys for Defendant |
| | CRRC CORPORATION LTD. |
| | |
| | Teresa H. Michaud (296329) |
| |   teresa.michaud@bakermckenzie.com |
| | |
| | **BAKER & MCKENZIE LLP** |
| | 1901 Avenue of the Stars, Suite 950 |
| | Los Angeles, California  90067 |
| | Telephone: 310.201.4728 |
| | Facsimile:  310.201.4721 |
| | |
| | Colin H. Murray (159142) |
| |   colin.murray@bakermckenzie.com |
| | Alexander G. Davis (287840) |
| |   alexander.davis@bakermckenzie.com |
| | Anne M. Kelts (298710) |
| |   anne.kelts@bakermckenzie.com |
| | |
| | **BAKER & McKENZIE LLP** |
| | Two Embarcadero Center, 11th Floor |
| | San Francisco, CA  94111-3802 |
| | Telephone: 415.576.3000 |
| | Facsimile:  415.576.3099 |

1  Date:   May 26, 2021                    GREER, HERZ & ADAMS, L.L.P.

3                                           By: /s/
4                                              ANDREW J. MYTELKA
                                               Attorneys for Plaintiff,
5                                              SUN GROUP U.S.A. HARMONY CITY, INC.

6                                              Andrew J. Mytelka (TX Bar 14767700)
                                               Joseph A.C. Fulcher (TX Bar 07509320)
7                                              Joseph Russo (TX Bar 24002879)
                                               J. Scott Andrews (TX Bar 24064823)
8                                              **GREER, HERZ & ADAMS, L.L.P.**
                                               One Moody Plaza, 18th Floor
9                                              Galveston, TX  77550
                                               Telephone:     (409) 797-3200
10                                             Fax:           (866) 422-3266
                                               *All Admitted Pro Hac Vice*

12                                             Gregory S. Smith (DC Bar 472802)
                                               **LAW OFFICES OF GREGORY S. SMITH**
13                                             Law Offices of Gregory S. Smith
                                               913 East Capitol Street, S.E.
14                                             Washington, D.C.  20003
                                               Telephone:     (202) 460-3381
15                                             Facsimile:     (202) 330-5229
                                               *Admitted Pro Hac Vice*

16                                             James M. Wagstaff (95535)
17                                             Frank Busch (258288)
                                               **WAGSTAFFE, VON LOEWENFELDT,**
18                                             **BUSCH & RADWICK LLP**
                                               100 Pine Street, Suite 725
19                                             San Francisco, CA  94111
                                               Telephone: 415.357.8900
20                                             Facsimile:  415.357.8910

**FILER'S ATTESTATION OF CONCURRENCE**

I, Frank Busch, pursuant to Local Rule 5-1(i), attest that I am counsel for Plaintiff Sun Group U.S.A. Harmony City, Inc. As the ECF user and filer of this document, I attest that concurrence in the filing of this document has been obtained from its signatories.

Date:   May 26, 2021                         **WAGSTAFFE, VON LOEWENFELDT,
                                              BUSCH & RADWICK LLP**

                                              By:  /s/_____
                                                   FRANK BUSCH
                                                   Attorney for Plaintiff
                                                   SUN GROUP U.S.A. HARMONY CITY, INC.