# LETTER OF REQUEST
# COMMISSION ROGATOIRE

Hague Convention of 18 March 1970 on the
Taking of Evidence Abroad in Civil or Commercial Matters
*Convention de La Haye du 18 mars 1970 sur
l'obtention des preuves à l'étranger en matière civile ou commerciale*

| 1. | **Sender** *Expéditeur* | The Honorable Sallie Kim<br>United States Magistrate Judge<br>United States District Court of the Northern District of California<br>Courtroom C—15th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102<br>United States of America |
|---|---|---|
| 2. | **Central Authority of the Requested State** *Autorité centrale de l'État requis* | Central Authority of the People's Republic of China<br>Ministry of Justice of China<br>International Legal Cooperation Center (ILCC)<br>33, Pinganli Xidajie<br>Xicheng District<br>Beijing 100035<br>China<br>Tel: +86 10 5560 4537<br>Fax: +86 10 5560 4538<br>Email: ivylee319@vip.sina.com |
| 3. | **Person to whom the executed request is to be returned** *Personne à qui les pièces constatant l'exécution de la demande doivent être renvoyées* | Frank Busch<br>Wagstaffe, von Loewenfeldt, Busch & Radwick LLP<br>100 Pine Street, Suite 725<br>San Francisco, CA 94111  USA<br>Tel: (415) 357-8900<br>Busch@wvbrlaw.com |
| 4. | **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request** *Indiquer la date limite à laquelle l'autorité requérante désire recevoir la réponse à la commission rogatoire* | |
| | **Date** *Date limite* | As soon as practicable |
| | **Reason for urgency\*** *Raison de l'urgence* | The requested materials are necessary to assist in the resolution of ongoing litigation. |

**In conformity with Article 3 of the Convention, the undersigned applicant has the honour to submit the following request:**
*En conformité de l'article 3 de la Convention, le requérant soussigné a l'honneur de présenter la demande suivante :*

| 5. *a* | **Requesting authority (Art. 3(a))** *Autorité requérante (art. 3(a))* | The Honorable Sallie Kim<br>United States Magistrate Judge<br>United States District Court of the Northern District of California<br>Courtroom C—15th Floor<br>450 Golden Gate Ave. |
|---|---|---|

| | | |
|---|---|---|
| | | San Francisco, CA 94102<br>United States of America |
| b | **To the Competent Authority of (Art. 3(a))**<br>*À l'Autorité compétente de (art. 3(a))* | Central Authority of the People's Republic of China<br>Ministry of Justice of China<br>International Legal Cooperation Center (ILCC)<br>33, Pinganli Xidajie<br>Xicheng District<br>Beijing 100035<br>China<br>Tel: +86 10 5560 4537<br>Fax: +86 10 5560 4538<br>Email: vylee319@vip.sina.com |
| c | **Names of the case and any identifying number**<br>*Nom de l'affaire et numéro d'identification de l'affaire* | Sun Group U.S.A. Harmony City, Inc. v. CRRC Corporation LTD, Case No. 3:17-cv-02191-SK |

| 6. | **Names and addresses of the parties and their representatives (including representatives in the Requested State*) (Art. 3(b))**<br>*Identité et adresse des parties et de leurs représentants (y compris représentants dans l'État requis) (art. 3(b))* | |
|---|---|---|
| a | **Plaintiff**<br>*Demandeur* | Sun Group U.S.A. Harmony City, Inc.<br>1523 O'Farrell Street<br>San Francisco, CA 94115 |
| | **Representatives**<br>*Représentants* | Andrew J. Mytelka<br>Joseph A.C. Fulcher<br>Joseph Russo<br>J. Scott Andrews<br>Greer, Herz & Adams LLP<br>One Moody Plaza, 18th Floor<br>Galveson, TX 77550 USA<br>Tel: (409) 797-3200<br><br>James M. Wagstaffe<br>Frank Busch<br>Wagstaffe, von Loewenfeldt, Busch & Radwick LLP<br>100 Pine Street, Suite 725<br>San Francisco, CA 94111 USA<br>Tel: (415) 357-8900<br>busch@wvbrlaw.com<br><br>Gregory S. Smith<br>Law Offices of Gregory S. Smith<br>913 East Capitol Street, S.E.<br>Washington, D.C. 20003<br>Tel: (202)460-3381 |
| b | **Defendant**<br>*Défendeur* | CRRC Corporation LTD.<br>No. 16 West 4th – Ring Mid Road,<br>Haidian District, Beijing<br>Zip Code: 100036<br>Tel: +86-10-51862188 |

| | | |
|---|---|---|
| | **Representatives**<br>*Représentants* | Teresa Michaud<br>Teresa.michaud@bakermckenzie.com<br>Baker & McKenzie LLP<br>1901 Avenue of the Stars, Suite 950<br>Los Angeles CA 90067<br>Tel: (310) 201-4728<br><br>Colin H. Murray<br>Colin.murray@bakermckenzie.com<br>Alexander G. Davis<br>Alexander.davis@bakermckenzie.com<br>Anne M. Kelts<br>Anne.kelts@bakermckenzie.com<br>Baker & McKenzie LLP<br>Two Embarcadero Center, 11th Floor<br>San Francisco, CA 94111-3802<br>Tel: (415) 576-3000 |
| c | **Other parties**<br>*Autres parties* | No third parties are relevant to this request. |
| | **Representatives**<br>*Représentants* | No third parties are relevant to this request. |

| | | |
|---|---|---|
| 7. a | **Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (Art. 3(c))**<br>*Nature et objet de l'instance (divorce, filiation, rupture de contrat, responsabilité du fait des produits, etc.) (art. 3(c))* | Plaintiff filed a civil action based upon breach of contract on April 19, 2017 |
| b | **Summary of complaint**<br>*Exposé sommaire de la demande* | This is a breach of contract, commercial action. Defendant CRRC and its predecessors retained Sun Group to provide marketing, consultation, and promotional services that Defendant needed to break into the North American rail market.  In return for Sun Group's services, Defendant promised to pay Sun Group 6% cooperation earnings on those rail contracts, as CRRC's exclusive/priority partner.  Sun Group diligently performed its obligations, and indeed was instrumental in opening doors and removing barriers for Defendant and its predecessors to gain entry into the lucrative North American rail market.<br>     Sun Group's assistance allowed Defendant to secure numerous projects and despite Defendant's contractual obligation to pay a cooperation earning of at least 6% on these contracts (for more than $163 million total), Defendant instead has paid Sun Group nothing.<br>     Defendant now claims that Sun Group's long-time and successful work entitles it to no money from Defendant. |
| c | **Summary of defence and counterclaim***<br>*Exposé sommaire de la défense ou demande reconventionnelle* |      Defendant's positions, among others, are that (1) the terms of the agreement are clear that Sun Group agreed to bear its own expenses for all of its activities and was entitled to cooperation |

| | | |
|---|---|---|
| | | earnings only if, among other things, defendant won a contract to build high-speed rail cars for the California High-Speed Rail Project, which did not occur; (2) the agreement does not provide Sun Group any exclusive representation rights or rights of first refusal for any rail projects other than building high-speed long distance rolling stock for the California High-Speed Rail Project; and (3) Defendant CRRC Corporation Ltd. Is not as a matter of California law the legal alter ego of U.S.A.-based CRRC-MA Corporation. |
| d | **Other necessary information or documents*** <br> *Autres renseignements ou documents Utiles* | Please see the enclosed Exhibit A. |

| | | |
|---|---|---|
| 8. a | **Evidence to be obtained or other judicial act to be performed (Art. 3(d))** <br> *Actes d'instruction ou autres actes judiciaires à accomplir (art. 3(d))* | The evidence requested herein by the Requesting Court consists of sworn oral testimony by way of deposition from Defendant's corporate representative relating to contracts and projects at issue in this case, its corporate group structure, its relationship to its subsidiaries, and other related matters relevant to the litigation of this action. |
| b | **Purpose of the evidence or judicial act sought** <br> *But des actes à accomplir* | The purpose of the requested evidence (sworn deposition testimony) is for use during pre-trial and in the trial of these matters.  The evidence is relevant to the parties' claims and defenses as it will assist the Court in determining whether the contract between Sun Group and Defendant applies to the projects obtained by Defendant, whether Defendant owes cooperation earnings to Sun Group, whether Defendant's subsidiaries are its alter egos, whether Defendant used it subsidiaries in violation of the covenant of good faith and fair dealing, and other issues. <br><br> Therefore, the Requesting Court seeks assistance for this ongoing proceeding via this Letter of Request. <br><br> If any portion of this Request is deemed to be unacceptable under the laws of China please advise which portions are unacceptable and please comply with as much of the Request as is legally permissible. |

| | | |
|---|---|---|
| 9. | **Identity and address of any person to be examined (Art. 3(e))*** <br> *Identité et adresse des personnes à entendre (art. 3(e))* | CRRC's designated corporate representative. |

| | | |
|---|---|---|
| 10. | **Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Art. 3(f))*** <br> *Questions à poser ou faits sur lesquels les personnes susvisées doivent être entendues (art. 3(f))* | The subject matter on which Defendant's witness will be examined are described within the topics attached hereto in Exhibit A. |

| | | |
|---|---|---|
| 11. | **Documents or other property to be inspected (Art. 3(g))\*** *Documents ou objets à examiner (art. 3(g))* | Not applicable for this request. |
| 12. | **Any requirement that the evidence be given on oath or affirmation and any special form to be used (Art. 3(h))\*** *Demande de recevoir la déposition sous serment ou avec affirmation et, le cas échéant, indication de la formule à utiliser (art. 3(h))* | The Requesting Court respectfully requests that prior to the beginning of testimony, the witness be administered an oath swearing that the oral testimony given will be the truth, the whole truth, and nothing but the truth. |
| 13. | **Special methods or procedure to be followed (e.g., oral or in writing, verbatim transcript or summary, cross-examination, etc.) (Arts 3(i) and 9)\*** *Formes spéciales demandées (déposition orale ou écrite, procès-verbal sommaire ou intégral, "cross-examination", etc.) (art. 3(i) et 9)* | The Requesting Court respectfully requests that the Chinese court conduct the deposition according to Plaintiff's preferred format: (1) performed orally in a question/answer format by counsel and witness after opening questions for each topic are asked by the PRC Judge; (2) Plaintiff's counsel be allowed to appear and ask follow up questions in English via a video-conference platform with a time frame of at least 8 hours with an interpreter for the deposition; (3) deposition of the witness is taken under sworn oath to testify truthfully; (4), a verbatim full transcript be transcribed of the deposition and the deposition be video recorded; if video recording is not acceptable that Plaintiff's counsel be allowed to record the deposition through the selected remote video-conference platform (5) Exhibits are allowed to be used and Plaintiff's counsel is allowed to ask questions related to the exhibits; (6) Defendant's witness must prepare for the subject matter of the deposition topics pursuant to Federal Rule of Civil Procedure Rule 30(b)(6). |
| 14. | **Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Art. 7)\*** *Demande de notification de la date et du lieu de l'exécution de la requête, de l'identité et de l'adresse de la ou des personnes à informer (art. 7)* | The Requesting Court respectfully requests that it be informed of the place, date and time for the execution of the Letter of Request. It is requested that this information be sent directly to the parties' legal counsel, as listed above, with a copy to the Requesting Court. |
| 15. | **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Art. 8)\*** *Demande d'assistance ou de participation des magistrats de l'autorité requérante à l'exécution de la commission rogatoire (art. 8)* | Not applicable for this request. |

| | | |
|---|---|---|
| 16. | **Specification of privilege or duty to refuse to give evidence under the law of the Requesting State (Art. 11(b))*** <br> *Spécification des dispenses ou interdictions de déposer prévues par la loi de l'État requérant (art. 11(b))* | Under the laws of the United States, a witness has a privilege to refuse to provide evidence if the evidence discloses a confidential communication between that witness and an attorney for that witness that was made for the purpose of obtaining legal advice.  United States law also recognizes a privilege against criminal self-incrimination. |
| 17. | **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by:*** <br> *Les taxes et frais donnant lieu à remboursement en vertu de l'article 14, alinéa 2 et de l'article 26 seront réglés par :* | The Requesting Court understands that any fees and costs incurred in the execution of this Letter of Request are reimbursable under the second paragraph of Article 14 or under Article 26 of the Hague Evidence Convention.  These fees and costs, if any, will be re-imbursed by Sun Group.  Any requests for reimbursement shall be sent to Sun Group's legal representatives, as listed above. |

| | |
|---|---|
| **Date of request** <br> *Date de la requête* | 05 November 2021 |
| **Signature and seal of the requesting authority** <br> *Signature et sceau de l'autorité requérante* | *Sallie Kim* <br> U.S. Magistrate Judge Sallie Kim  |

*\*Omit if not applicable / Ne remplir qu'en cas de nécessité*

# EXHIBIT A TO HAGUE REQUEST 2

*Sun Group U.S.A. Harmony City, Inc. v. CRRC Corporation Ltd.*, No. 3:17-cv-02191-SK, U.S. District Court Northern District of California, San Francisco Division

**INTRODUCTION**

This is a request for an oral deposition to be taken under oath of a representative of CRRC Corporation Ltd. (中国中车股份有限公司) that can testify on behalf of CRRC Corporation Ltd. (中国中车股份有限公司) with respect to the subject matter described herein pursuant to Article 3 of the *Convention on the Taking of Evidence Abroad in Civil or Commercial Matters*. The underlying action in U.S. federal court is a breach of contract and breach of implied warranty of good faith and fair dealing action against Defendant, CRRC Corporation Ltd. (中国中车股份有限公司), the successor entity to China CNR Corporation Limited (中国北车股份有限公司) and CSR Corporation Limited, (中国南车股份有限公司). CRRC Corporation Ltd. (中国中车股份有限公司) was formed as a merger between China CNR Corporation Limited (中国北车股份有限公司) and CSR Corporation Limited, (中国南车股份有限公司) and expressly assumed all existing contracts, nationally and internationally upon its formation on June 1, 2015. Circumstances surrounding the formation of the various agreements at issue in this matter are highly relevant to the claims asserted by the Plaintiff, as are questions concerning the corporate structure of the Defendant and its subsidiaries/affiliates. The sworn deposition testimony requested in this Hague Request 2 is the result of extensive discussions between the counsel for the parties in the captioned litigation and the Defendant has affirmed that it will not object to providing sworn oral testimony in its custody and control responsive, to the extent required by the U.S. Federal Rules of Civil Procedure, to each of the requested subject matter topics identified herein.

**DEFINITIONS APPLICABLE TO THIS REQUEST DIRECTED TO DEFENDANT**

1. "CRRC", "YOU" and "YOUR" means CRRC Corporation Ltd. (中国中车股份有限公司), individually, and collectively, including all predecessors (including China CNR Corporation Limited (中国北车股份有限公司) and CSR Corporation Limited (中国南车股份有限公司)), and all directors, officers, agents, representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

2. "CRRC MA" means CRRC MA Corporation Ltd. individually, and collectively, including without limitation its predecessors (including CNR MA Corporation), and all directors,

1

officers, agents, representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

3. "CRRC SIFANG AMERICA" means CRRC Sifang America Inc. individually, and collectively, including without limitation its predecessors (CSR America, Inc.) and all directors, officers, agents, representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

4. "CRRC QINGDAO SIFANG" means CRRC Qingdao Sifang Co., Ltd. (中车青岛四方机车车辆股份有限公司) individually, and collectively, including without limitation its predecessors, and all directors, officers, agents, representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

5. "CRC" means CRRC Changchun Railway Vehicles Co., Ltd. (中车长春轨道客车股份有限公司), individually, and collectively, including without limitation its predecessors (such as CNR Changchun Railway Vehicles Co., Ltd. (长春轨道客车股份有限公司), the joint venture partner of China CNR Corporation Limited (中国北车股份有限公司) for the formation of CNR MA Corporation ), and all directors, officers, agents ,representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

6. "TRC" means Tangshan Railway Vehicle Co., Ltd. (唐山轨道客车有限责任公司) individually, and collectively, including without limitation its predecessors, and all directors, officers, agents, representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

7. "CRRC TANGSHAN" means CRRC Tangshan Co., Ltd. (中车唐山机车车辆有限公司) individually, and collectively, including without limitation its predecessors, and all directors, officers, agents, representatives, employees, consultants, attorneys, and other persons acting or purporting to act on its behalf.

8. The "CRRC AFFILIATES & SUBSIDIARIES" means CRRC MA, CRRC SIFANG AMERICA, CRRC QINGDAO SIFANG, TRC, CRC, and CRRC TANGSHAN.

9. "SUN GROUP" means Sun Group U.S.A. Harmony City, Inc., d/b/a Sun Group U.S.A. (Translated in simplified Chinese characters as "美国太阳集团" or "太阳集团") including its directors, officers, agents, representatives, employees, consultants, attorneys, subsidiaries, and affiliates.

10. The "2011 AGREEMENT" means the November 15, 2011 agreement entered into between TRC and Sun Group entitled "Exclusive Sales Representation Agreement for California High Speed Train Project" and attached as Exhibit 1 to Sun Group's Third Amended Complaint.

11. The "2013 COOPERATION AGREEMENT" means the October 18, 2013 agreement entered into between TRC and Sun Group entitled "Cooperation Agreement for California High Speed Train Project" and attached as Exhibit 2 to Sun Group's Third Amended Complaint.

12. The "2014 COOPERATION AGREEMENT" means the April 26, 2014 agreement entered into between CNR Company Ltd. and Sun Group entitled "Cooperation Agreement" and attached as Exhibit 5 to Sun Group's Third Amended Complaint.

13. The "CRRC/SUN GROUP AGREEMENTS" means the 2011 AGREEMENT, the 2013 COOPERATION AGREEMENT, and the 2014 COOPERATION AGREEMENT.

14. The "CALIFORNIA HIGH SPEED RAIL PROJECT" means the development and construction of California's statewide high-speed rail system. This definition specifically includes, but is not limited to, other rail systems interconnected with the high-speed rail system or for which high-speed rail funds are utilized.

15. The "LOS ANGELES METRO CONTRACT" means the contract awarded to CRRC MA in 2016 (and any additional contracts awarded thereafter) from the Los Angeles County Metropolitan Transit authority and related to rolling stock. This definition specifically includes the bidding process related to the contract.

16. The "BOSTON METRO TRAIN CONTRACT" means the contract awarded to CRRC MA in 2014 (and any additional contracts awarded thereafter) from the Massachusetts

Department of Transportation and related to rolling stock. This definition specifically includes the bidding process related to the contract.

17. The "PHILADELPHIA TRAIN CONTRACT" means the contract awarded to CRRC MA in 2017 (and any additional contracts awarded thereafter) from the Southeastern Pennsylvania Transportation Authority and related to rolling stock. This definition specifically includes the bidding process related to the contract.

18. The "MONTREAL TRAIN CONTRACT" means the contract awarded to CRRC TANGSHAN in 2017 (and any additional contracts awarded thereafter) from the Agence Metropolitaine de Transport Montreal and related to rolling stock. This definition specifically includes the bidding process related to the contract.

19. The "CHICAGO METRO TRAIN CONTRACT" means the contract awarded to CRRC SIFANG AMERICA in 2016 (and any additional contracts awarded thereafter) from the Chicago Transit Authority and related to rolling stock. This definition specifically includes the bidding process related to the contract.

20. The "CRRC TRAIN CONTRACTS" means the LOS ANGELES METRO CONTRACT, the BOSTON METRO TRAIN CONTRACT, the PHILADELPHIA TRAIN CONTRACT, MONTREAL TRAIN CONTRACT, and the CHICAGO METRO TRAIN CONTRACT.

21. "DOCUMENT" is defined broadly to be given the full scope of that term contemplated in Federal Rule of Civil Procedure 34, and includes all tangible things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a document, all drafts of final documents, all other written, printed, or recorded matter of any kind, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in your actual or constructive possession or control, regardless of the medium on which they are produced, reproduced, or stored (including without limitation, electronically stored information, electronic messages, computer programs and files containing any requested information), and any recording or writing, as

these terms are defined in Rule 1001, Federal Rules of Evidence. Any document bearing marks, including without limitation, initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof, is a separate document.

22. "ELECTRONICALLY STORED INFORMATION" or "ESI" means electronic information that is stored in a medium from which it can be retrieved and examined. It includes, but it not limited to, all electronic files that are electronically stored in an electronic storage medium.

23. "ELECTRONIC FILE" includes, but is not limited to, the following: e-mail messages and files; voice-mail messages and files; text messages and files; deleted files; temporary files; system-history files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; computer-activity logs; metadata.

24. "ELECTRONIC STORAGE" refers to electronic files contained on magnetic, optical, or other storage media, such as hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, integrated-circuit cards (e.g. SIM cards), and flash drives.

25. "RELATES TO", "RELATING TO" and "RELATED TO" mean describing, discussing, concerning, evidencing, reflecting, comprising, illustrating, containing, embodying, constituting, analyzing, stating, identifying, referring to, dealing with, or in any way pertaining to.

26. "COMMUNICATION" means any form of transmittal of information without limitation as to means of transmittal, including documents, meetings, telephone conversations, correspondence, electronic messages or ESI, memoranda, contracts, agreements, and verbal or nonverbal actions intended to or actually conveying information.

**SUBJECT MATTER TOPICS OF INQUIRY**

1. The allegations contained in SUN GROUP's Third Amended Complaint that were not dismissed by the U.S. Court's April 18, 2019 Order Granting in Part and Denying in Part CRRC's Motion to Dismiss.

2. The factual bases for the defenses and denials alleged in YOUR answer to this lawsuit.

3. The corporate history, ownership (including ownership stake in the CRRC entities referred to in the Third Amended Complaint), structure and organizational chart of CRRC.

4. Contracts, interactions, and COMMUNICATIONS during years 2010-2013 between CRRC and/or TRC and SUN GROUP, including any related DOCUMENTS.

5. Dr. Yu Weiping's March 16, 2010 letter to Jonathan Sun of SUN GROUP, and its meaning as understood by CRRC.

6. Any evaluations by CRRC of the benefits SUN GROUP's provided to CRRC, either individually or collectively over the years.

7. CRRC's efforts, directly or indirectly, to enter and expand within North American rail markets, including all companies with which CRRC claims it partnered with in such efforts.

8. The 2011 AGREEMENT, including, but not limited to:  The negotiation of, terms used in, people involved in negotiating, drafting, or implementing, drafts of, and/or any COMMUNICATIONS or DOCUMENTS relating to the 2011 AGREEMENT.

9. The 2013 COOPERATION AGREEMENT, including, but not limited to:  The negotiation of, terms used in, people involved in negotiating, drafting, or implementing, drafts of, and/or any COMMUNICATIONS or DOCUMENTS relating to the 2013 COOPERATION AGREEMENT..

10. The 2014 COOPERATION AGREEMENT, including, but not limited to:  The negotiation of, terms used in, people involved in negotiating, drafting, or implementing, drafts of, and/or any COMMUNICATIONS or DOCUMENTS relating to the 2014 COOPERATION AGREEMENT.

11. The meetings held in New York, NY on or about April 24-26, 2014, including, but not limited to, any discussions between SUN GROUP and CRRC.

12. Whether CRRC maintains that any of its subsidiaries or joint ventures were its "partners" in its efforts to enter and expand within North American rail markets, or whether the involvement of those subsidiaries or joint ventures in the North American rail markets represented CRRC utilizing its "resources as an advantage" under the 2014 COOPERATION AGREEMENT.

13. Yu Weiping's conversations with Jonathan Sun in year 2014 about SUN GROUP assisting CRRC in advancing the interests and/or bidding efforts of its subsidiary, CRRC MA, in its efforts to win the BOSTON METRO TRAIN CONTRACT.

14. All events surrounding the CRRC delegation sent to San Francisco on or about May 11-12, 2014 at the invitation of SUN GROUP, including all CRRC representatives who attended various events that took place, and comments made by CRRC President Xi Guohua at these events organized by SUN GROUP.

15. Information concerning the decision to create and incorporate CRRC MA as an entity inside the United States, its officers and directors, its initial capital and how that was sufficient to the BOSTON METRO TRAIN CONTRACT, any financial guarantees and/or loans made by CRRC on behalf of or to assist CRRC MA in its MBTA bidding, and any transfers of assets or liabilities between CRRC MA and CRRC, in 2014 or later.

16. The names and titles of corporate officers or directors of CRRC who also served as corporate officers or directors of CRRC MA between January 2014 and December 2017.

17. Any filings, submissions, and/or COMMUNICATIONS sent by CRRC to the MBTA, and any meetings or COMMUNICATIONS any official at CRRC held with any public official involved in the MBTA project in 2014 or later.

18. CRRC's awareness, involvement or facilitation of efforts by CRRC MA to win the "BOSTON METRO TRAIN CONTRACT", and all information concerning how and why CRRC itself publicly claimed credit, on its Social Responsibility Report or otherwise, for being awarded the "BOSTON METRO TRAIN CONTRACT".

19. Whether CRRC assumed CNR's obligations under the 2014 Cooperation Agreement when CNR and CSR merged to become CRRC.

20. Whether CRRC considered establishing a facility in Vallejo, CA in 2015, and CRRC Vice President Yu Weiping's announcement in September 2015 that CRRC's subsidiary's new facility in Springfield, Massachusetts would serve as CRRC's U.S. headquarters for seeking additional U.S. business, with CRRC expected to double its overseas sales, and the U.S. described as a "huge market".

21. CRRC's awareness, involvement or facilitation of efforts by CRRC MA to win the PHILADELPHIA TRAIN CONTRACT, and all information concerning how and why CRRC itself publicly claimed credit, on its Social Responsibility Report or otherwise, for being awarded the PHILADELPHIA TRAIN CONTRACT.

22. All circumstances surrounding CRRC Director Zhang Xin's September 27, 2016 email sent to Jonathan Sun of SUN GROUP, including why this email was sent, whether anyone else was involved in reviewing this email or making the decisions expressed therein, as well as the meaning of its terms, including but not limited to who was CRRC's unnamed "partner" on the New York project, who was the "US company" referenced, and who were "our cooperation partners."

23. CRRC's awareness, involvement or facilitation of efforts by CRRC MA to win the LOS ANGELES METRO CONTRACT, and all information concerning how and why CRRC itself

publicly claimed credit, on its Social Responsibility Report or otherwise, for being awarded the LOS ANGELES METRO CONTRACT.

24. CRRC's awareness, involvement or facilitation of efforts by CRRC SIFANG AMERICA to win the CHICAGO METRO TRAIN CONTRACT, and all information concerning how and why CRRC itself publicly claimed credit, on its Social Responsibility Report or otherwise, for being awarded the CHICAGO METRO TRAIN CONTRACT.

25. CRRC's awareness, involvement or facilitation of efforts by CRRC TANGSHAN to win the MONTREAL TRAIN CONTRACT, and all information concerning how and why CRRC itself publicly claimed credit, on its Social Responsibility Report or otherwise, for being awarded the MONTREAL TRAIN CONTRACT.

26. Any direct or indirect involvement by CRRC in submitting bids for any of the CRRC TRAIN CONTRACTS.

27. All COMMUNICATIONS and/or meetings between or among CRRC and SUN GROUP regarding the CALIFORNIA HIGH SPEED RAIL PROJECT.

28. CRRC's bidding efforts, whether directly or indirectly, related to the CRRC TRAIN CONTRACTS.

29. All payments received by CRRC directly and/or indirectly, from the CRRC TRAIN CONTRACTS.

30. All COMMUNICATIONS by CRRC with any public agencies regarding the CRRC TRAIN CONTRACTS.

31. All COMMUNICATIONS within CRRC referencing Jonathan Sun or SUN GROUP.

32. Any and all drafts of the 2014 COOPERATION AGREEMENT.

33. The initial capitalization of CRRC MA.

34. CRRC's joint ventures involved with submitting bids for the CRRC TRAIN CONTRACTS.

35. CRRC's ownership interests in the CRRC entities identified in the Third Amended Complaint.

36. Monetary or asset transfers related to any of the CRRC TRAIN CONTRACTS, including whether and to what extent CRRC has received or will receive direct or indirect financial benefits from the CRRC TRAIN CONTRACTS.

37. Any real property or other assets owned in the United States by CRRC, including but not limited to any real property or assets held by any joint venture in which CRRC is a participant.

38. Any real property or other assets owned in the United States by CRRC MA.

39. Any loans or financial guarantees provided by CRRC to the CRRC entities identified in the Third Amended Complaint related to the CRRC TRAIN CONTRACTS.

40. CRRC's process for preserving and/or collecting information (including ESI), COMMUNICATIONS, and/or DOCUMENTS related to this lawsuit, including but not limited to, people involved in collecting materials responsive to Hague Request 1 and the methodologies employed for preserving and collecting responsive materials..

41. Materials produced in response to Hague Request 1, including, but not limited to, the substance of any COMMUNICATION or DOCUMENT produced, the identity of the sender/recipient/copied individual on a piece of electronic mail, and/or the date the email was sent or received.

42. The process and specific means utilized by YOU to collect the ESI considered relevant to the above captioned matter

43. The process and specific means utilized by YOU to process the ESI considered relevant to the above captioned matter for privilege/responsiveness/relevance review.

44. The process and specific means utilized by YOU to collect the ESI considered responsive to Plaintiff's Hague Requests in the above captioned matter.